CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
DEBORAH SCHWARTZ, State Bar No. 208934
dschwartz@bakerlp.com
BAKER DOLINKO & SCHWARTZ, P.C.
220 Montgomery Street, Suite 1094
San Francisco, CA 94104
Telephone: (415) 810-9486

Attorneys for Plaintiff
ANDREA HULL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA HULL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>EPIC SYSTEMS CORPORATION, a Wisconsin corporation; BOOST, INC., a Wisconsin corporation,<br><br>Defendants. | Case No. 4:26-cv-07702-AMO<br><br>**DECLARATION OF CHRIS BAKER IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: Thursday, January 7, 2027<br>Time: 2:00 p.m.<br>Courtroom: 5, 2nd Floor, 1301 Clay Street, Oakland<br>Judge: Hon. Araceli Martínez-Olguín<br><br>Action Filed: July 24, 2026<br>Trial Date: None set |

My name is Chris Baker.

1. I am an attorney admitted to practice before this Court and a shareholder of Baker Dolinko & Schwartz, P.C., counsel of record for Plaintiff Andrea Hull. I have personal knowledge of the facts stated in this declaration.

2. Attached as Exhibit 1 is a true and correct copy of a letter dated September 14, 2026 from Amy O. Bruchs of Michael Best & Friedrich LLP, counsel for Defendants Epic Systems Corporation and Boost, Inc., to me. I received it by email on September 14, 2026.

Counsel for the parties held the conference required by Federal Rule of Civil Procedure 26(f) on October 2, 2026.

3. Attached as Exhibit 2 is a true and correct copy of the email dated July 31, 2026 from Andrea Hull to me, forwarding the email she received that day from Vanessa Lory of Epic, which in turn includes the September 30, 2025 email from Ms. Lory. My firm filed the complaint in this case on July 24, 2026. We filed a PAGA notice on Ms. Hull's behalf on June 10, 2026.

4. Attached as Exhibit 3 is a true and correct copy of an article published May 14, 2026 by HIT Consultant summarizing the KLAS Research report "US Acute Care EHR Market Share 2026," which reports that Epic holds approximately 43.7 percent of U.S. acute-care hospitals and 56.9 percent of acute-care beds. I obtained this information from https://hitconsultant.net/2026/05/14/klas-2026-ehr-market-share-report/ on September 29, 2026. The information in this article is consistent with, and supportive of, Ms. Hull's understanding.

5. Attached as Exhibit 4 are true and correct copies of Epic's UserWeb Terms of Use, last updated July 14, 2025, and Epic's UserWeb account-registration page, each as printed from Epic's public website on September 29, 2026 by my office. The Terms of Use contain no "cooling off" or "waiting period" provision and no exclusion of former Epic employees.

6. Attached as Exhibit 5 is a true and correct copy of the notice my office submitted to the California Labor and Workforce Development Agency on June 10, 2026 pursuant to Labor Code section 2699.3, together with the LWDA's filing confirmation and filing-fee receipt of the same date. More than 65 days have passed since that notice. My office has received no notice from the LWDA of an intention to investigate.

7. Epic has a significant California footprint. Attached as Exhibit 6 are true and correct copies of twenty publicly available web pages and documents, numbered 1 through 20 in the order described below, which my office captured on September 29, 2026. Except as noted, each was captured by opening the page in a web browser and saving the entire page as displayed; the address of the page and the time of capture appear in the header of each sheet. No. 14 is a document in PDF form that I downloaded from the address shown. The captured pages are

reproduced in grayscale to reduce the size of the file. Nothing else in any item has been altered. The items are:

(a) Epic's own website (Nos. 1–3, pages 1–15): No. 1, Epic's "About" page (epic.com/about), which states that more than 325 million patients have a current electronic record in Epic and describes the settings in which its software is used; No. 2, Epic's "Care Everywhere" page, describing its record-exchange network (30 million charts exchanged daily; live in 11 countries and 100 percent of the United States); and No. 3, Epic's "Health System Community" page, which states that the majority of U.S. News & World Report's top-ranked hospitals and medical schools use Epic and lists Epic-community institutions including the University of California, San Francisco, UCLA, UC San Diego, and Stanford.

(b) Trade press reporting Epic's market share (No. 4, pages 16–23): healthsystemCIO.com, "Acute Care EHR Market Share 2026: Epic Up, Oracle Down" (May 14, 2026), reporting the KLAS Research 2026 findings that Epic holds 43.7 percent of U.S. acute-care hospitals and 56.9 percent of beds.

(c) University of California and other public health systems in California (Nos. 5–14, pages 24–57): No. 5, UCSF Health Informatics, "What's a Go-Live? How EHR Upgrades Work," describing the upgrade of APeX, UCSF's version of Epic; No. 6, UC Tech News (University of California Office of the President), "UC Davis Health Goes for the Gold with Epic," stating that Epic is the electronic health record system used by all five UC Health organizations; No. 7, the UCLA Clinical & Translational Science Institute's "Epic" page; No. 8, UC San Diego Health's health-information-exchange page, which states that UC San Diego Health participates in Epic's Care Everywhere; No. 9, an August 20, 2019 press release of the San Francisco Department of Public Health and Zuckerberg San Francisco General Hospital on the Department's go-live on Epic; No. 10, an October 11, 2019 Alameda Health System press release on its launch of Epic; No. 11, Contra Costa Health's MyChart patient-portal page; No. 12, Santa Clara Valley Medical Center's page on requesting access to its EpicCare Link system; No. 13, Becker's Hospital Review, "Riverside University Health launches $53 million Epic EHR" (August 4, 2016); and No. 14, the June 10, 2026 letter from the Director of the Los Angeles County Department of

Health Services to the County Board of Supervisors giving notice of the Department's intent to negotiate sole-source agreements with Epic Systems Corporation and Epic Hosting, LLC.

(d) Private health systems in California, and Abbott (Nos. 15–20, pages 58–103): No. 15, Becker's Hospital Review, "Kaiser Permanente consolidates 12 EHRs to 2" (November 18, 2025), reporting that Kaiser merged twelve instances of its Epic EHR into two, for Northern and Southern California; No. 16, Sutter Health's "My Health Online" page, which bears Epic's MyChart license notice; No. 17, the Stanford Medicine Research Data Repository page on Stanford's electronic health record, stating that Stanford Health Care and Stanford Medicine Children's Health run two independent instances of Epic; No. 18, John Muir Health's MyChart FAQ page; No. 19, an August 31, 2026 Adventist Health press release announcing that Epic is live at its 27 hospitals and more than 440 clinics in California, Oregon, and Hawaii; and No. 20, Abbott's April 29, 2025 news release (via PR Newswire) on the integration of FreeStyle Libre data into Epic's electronic health record through Epic's Aura platform.

8. Epic's contracts with several of its customers are public records. Attached as Exhibits 7 through 11 are true and correct copies of five such contracts, each of which was downloaded on September 24, 2026, from the public website identified below, without any login or credential, and none of which has been altered. The posted copies are the versions the public bodies attached to their agenda materials; each of the California copies is either marked as a draft or shows blank signature blocks, and two are redacted at Epic's request.

(a) Exhibit 7 is the License, Support, and Hosting Agreement between the City and County of San Francisco and Epic City Government, LLC, dated October 17, 2017 (City Contract ID 1000008047), as posted by the San Francisco Board of Supervisors as an attachment to File No. 171135 (Resolution No. 430-17, enacted December 8, 2017), retrieved from https://sfgov.legistar.com/View.ashx?M=F&ID=5521106&GUID=7703D711-A5E4-4C61-B5B3-D847C4F6F84A. Section 87 ("Non-Solicitation") appears at page 33 of the agreement (page 40 of the 474-page PDF). It states in part: "Contractor and its employees typically enter into agreements under Wisconsin law in which the employees generally promise that they will not work for customers for twelve (12) months after the termination of their employment with

Contractor," and "Contractor may choose not to work with or provide training for any former Contractor employee employed by City or working with City as an employee of a consultant hired by City if such employee is hired less than 12 months after the date of the termination of such former employee's employment with Contractor." "Contractor" is Epic City Government, LLC.

(b) Exhibit 8 is the License and Support Agreement between the County of San Mateo and Epic Systems Corporation, as posted by the San Mateo County Board of Supervisors as an attachment to File No. 22-951 (Board meeting of December 6, 2022), retrieved from https://webapi.legistar.com/v1/sanmateocounty/matters/90571/attachments/304035/file. Section 17(g) ("Restriction on Offers of Employment") provides that Epic and the County "will not solicit, discuss prospective employment with, or hire (directly as employees or indirectly) any employee of the other party, except with the other party's prior written consent," during the employee's employment "and for twelve (12) months following such employment, and only to employees who have worked on the development, implementation, or maintenance of Epic software," and that "Epic may choose not to work with or train former Epic staff hired in violation of this Subsection." Section 9(e) ("Third Party Assistance") conditions any consultant's access to Epic's software on "a written agreement between the third party and Epic."

(c) Exhibit 9 is the License and Support Agreement between the County of San Bernardino (Arrowhead Regional Medical Center) and Epic Systems Corporation, County Agreement No. 19-557, as posted by the San Bernardino County Board of Supervisors as an attachment to File No. 758 (Board meeting of August 6, 2019, Item No. 9), retrieved from https://webapi.legistar.com/v1/sanbernardino/matters/1776/attachments/1366/file. Section 19(g) ("Restriction on Offers of Employment") is in substance the same as Section 17(g) of Exhibit 8. The County's contract coversheet for this agreement, posted with it, states that Epic "asserts that certain parts of this contract are its trade secret information" and that "only the redacted version of the contract may be publicly released" (capitalization omitted). The County's staff report describes the document as "Epic's License and Support Agreement," which "is its standard commercial license as negotiated by ARMC."

(d) Exhibit 10 is the Hosting Services Agreement between the County of San Bernardino (Arrowhead Regional Medical Center) and Epic Hosting, LLC, County Agreement No. 20-282, as posted by the Board of Supervisors as an attachment to File No. 2180 (Board meeting of May 19, 2020, Item No. 19), retrieved from https://webapi.legistar.com/v1/sanbernardino/matters/68645/attachments/20779/file. Section 12 ("Restriction on Offers of Employment") contains the twelve-month no-solicitation and no-hire term and provides that "Epic may choose not to work with or provide training for any former Epic employee employed by You or working with You as an employee of a consultant hired by You if such employee is hired less than twelve (12) months after the date of termination of such former employee's employment with Epic."

(e) Exhibit 11 is the License and Support Agreement between AHS Management Company, Inc. (Ardent Health) and Epic Systems Corporation, filed with the Securities and Exchange Commission as Exhibit 10.17 to the Form S-1/A of Ardent Health Partners, LLC, filed March 6, 2019 (Accession No. 0001193125-19-065643), retrieved from https://www.sec.gov/Archives/edgar/data/1756655/000119312519065643/d717537dex1017.htm. Confidential portions are omitted and marked "[***]" in the filed version. Section 11(d) ("Third Party Assistance") provides that the customer "will not permit such third party to have access to the Program Property or other Epic Confidential Information unless such third party and any of its employees who have access have in place at the time of such access an agreement with Epic that at a minimum provides that such third party and employees will not develop, design or enhance or assist any other person or entity in developing, designing or enhancing any software that has or is intended to have a similar purpose to or overlapping functionality with, or that competes with or is intended to compete with, any software offered by Epic now or in the future, and that such third party will not hire current or recent employees of Epic customers who were involved in an active install for that customer or hire current or recent Epic employees." Section 21(h) ("Restriction on Offers of Employment") contains the twelve-month no-solicitation and no-hire term and the "Epic may choose not to work with or provide training for any former Epic employee" sentence quoted in subparagraph (d). The same agreement was re-filed on June 21, 2024 as Exhibit 10.30

to Ardent Health Partners, LLC's Form S-1 (Accession No. 0001193125-24-165883), with the words "Epic may" in Section 21(h) additionally redacted.

9. Ms. Hull asks the Court, in the accompanying memorandum, to take judicial notice of the existence and terms of Exhibits 7 through 11 as records of public bodies and filings with the Securities and Exchange Commission.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 3, 2026, at San Francisco, California.

Chris Baker