# EXHIBIT 8

Employee Name: Andrea Hull

# EPIC SYSTEMS CORPORATION
# Employment Agreement

This document is a contract between you, a present or prospective employee of Epic Systems Corporation ("Epic"), and Epic.

Epic is in the highly competitive business of creating and marketing computer software for the health care industry throughout the United States and elsewhere. The provisions of this agreement are important in Epic's efforts to maintain its competitive position and to provide quality products and services to its licensees and customers.

## 1. Contract

The provisions of this agreement are, in effect, promises you, the employee, make to Epic in consideration for entering or continuing in the employment of Epic. This agreement does not, however, include a promise of perpetual or continuing employment by Epic. All of Epic's employees are "at will" employees which means that the relationship is freely entered into by both parties and that either Epic or you, the employee, may terminate the relationship at any time, with or without cause, and with or without notice. While either you or Epic may terminate the employment relationship at any time, you are expected to provide adequate notice to Epic prior to resignation so that Epic has time to ensure proper transition of your job responsibilities. Adequate notice and the consequences of failing to provide adequate notice are described in Epic's policies and procedures book as it is modified from time to time. In the event of termination of this employment by either you or Epic, and regardless of the reason, the provisions of paragraphs 2, 3, 4, 6, 7, 9 and 11 of this agreement shall survive the termination of employment, i.e., shall remain in effect. No person, except for the president of Epic, has the authority to enter into an agreement for employment of you on other than an "at will" basis, and even the president may only do so in writing signed by her. You should not rely on any statement by anyone to the contrary.

By signing this agreement, you agree that you will devote your full business and professional time and energies to Epic and will neither accept nor conduct any other business or professional activities while employed by Epic.

## 2. Confidentiality

Trade Secret and Confidential Information. In order to conduct its business operations, Epic must maintain in secret certain trade secrets and proprietary information. During this Agreement and thereafter, You agree to maintain in confidence these trade secrets and proprietary information and to use the information or secrets only as needed in your role for Epic and only for the proper business of Epic. These trade secrets and proprietary information include, by way of example, customer and prospect lists and identities; Epic sales strategies and sales strategies for any Epic prospect; software, software systems or details of software including computer coding in any form, methods or operation, user interfaces, details of operation or functionality, details of reports, details of screens, structure and sequence of functionality and programs, software structural design such as programming points and the Epic pyramid, system deficiencies; programming techniques; user and program documentation; development history of any software system; internal discussions or strategies relating to competitors; information regarding discussions with consultants or information from consultants; financial information about Epic, its employees or its customers; identities and talents of specific Epic employees; company records; pricing information, pricing details and strategies; and other sensitive information relating to the business of Epic which has been identified by Epic as confidential. For purposes of clarity, similar information of third parties that is in Epic's possession under

an obligation of confidentiality also constitutes proprietary confidential information that you must maintain in confidence and use only in your role for Epic and only for the proper business of Epic.

Customer Information and Personal Health Information. Because of the nature of the computer software systems created by Epic and the need to maintain them, Epic employees may have access to the confidential and highly personal medical record or health information regarding the patients of Epic's customers or regarding account holders of Lucy, Epic's web-based personal health record. Some of Epic's customers may be geographically close (even in Madison), and it is possible that employees may have access to personal health information about persons with whom they are personally acquainted. It is a high priority of Epic, and an important company policy, that all such data regarding any patients of any customers and any Lucy account holders be maintained in the utmost confidence. Disclosure or use of any such information about any patient of any customer of Epic or about any Lucy account holder outside of your employment duties is absolutely forbidden and would be extremely injurious to Epic, its customers, and Epic's reputation in the health care community and would be a gross violation of personal confidential information. You not only agree to maintain such information in the utmost confidence and use the information only in your employment duties, you also are hereby given notice that violation of this covenant not only will result in immediate termination without notice or severance, but, furthermore, if you make any unauthorized disclosure of any confidential information regarding any patient or Lucy account holder or business data of any customer, you will expose yourself to the risk of legal liability for which you will not be defended by Epic. To the extent permitted by law, we may seek indemnification by you.

## 3. Inventions & Work Product

While an employee of Epic, you may be assigned to create works of authorship such as computer programs, product documentation, advertising or promotional materials, or other forms of written, graphic, or creative work. All such works of authorship while you are employed by Epic (regardless of whether or not they were created during or outside of normal business hours) shall be considered works for hire of Epic under the federal copyright laws and the sole and complete property of Epic if (i) they are generated in conjunction with work assigned to you while you are employed by Epic, (ii) they are generated using or in the physical facilities of Epic, or (iii) they are created, generated or copied onto any computer or portion thereof which is the property of Epic.

While an employee of Epic you may also, in the course of your duties at Epic, make patentable inventions. You agree to promptly notify Epic of any such inventions and to execute any such documents as Epic may reasonably request so as to transfer title to such inventions to Epic and permit the filing and prosecution of any patent application in the U.S. or in foreign countries on such inventions.

## 4. Covenant Not To Compete

In the course of your duties at Epic, you may have frequent contact and interaction with the customers of Epic, and the relationships between Epic and its customers are significant assets of Epic which have been developed through substantial investment of time, effort, and expense. Also in the course of your duties at Epic, you will have access to information about Epic's technology, products, plans and strategies, and will gain unique skills, insights, and experience in the highly competitive market in which Epic competes, all of which are very valuable to Epic and all of which would be of potential value to Epic's competitors. The covenant that follows is an effort to protect Epic's legitimate interests in the particular knowledge of Epic's products and procedures gained by its employees and to protect Epic's competitive position in its market, and is made by you in consideration for your present or future employment at Epic and the chance to develop these skills, knowledge and expertise.

While employed by Epic, you will not service or contact, in a business context, either directly or indirectly, any customer of Epic, except in the course of performing your duties at Epic. In addition, for a period of one year after your termination at Epic (whether initiated by you or by Epic), the following restrictions shall apply:

(a) You will not be employed by, assist, have an ownership interest in (other than the ownership of less than 1 percent of a publicly-held company), or serve as an officer, partner, or director, or consultant to, any direct competitor of Epic in the products Epic markets to the health care industry. This provision shall not restrict you as to employment, assistance, or service in connection with products not marketed in competition with Epic. Direct competitors are those companies listed on the attached Exhibit A and their affiliated companies, which list Epic may amend from time to time while you are employed with Epic. Such amendment will be effective upon notice to you of the change. Epic may not add any new names to Exhibit A unless the company's products compete directly with Epic products and have been considered as alternative vendors to Epic for comparable systems, as determined by appearance with Epic on prospective customer "short-lists" more than once during the preceding two years.

(b) You will not contact any customer or active prospective customer of Epic with whom you have had contact during your last two (2) years of employment by Epic, for the purpose of either (a) attempting to sell them products competitive with Epic, or (b) attempting to dissuade them from doing business with Epic.

(c) You will not establish or aid others in establishing any new business enterprise or a new area of business for an old business enterprise which develops or markets one or more products which are directly competitive with the products of Epic.

By signing this agreement, you also agree with Epic that the restraints imposed by this covenant are reasonable under the circumstances and will still permit you to find acceptable other employment in the event that you should leave Epic.

## 5. No Existing Contracts

By signing this agreement, you represent to Epic that one of the following is true, as indicated by your checkmark below:

☑ You <u>are not</u> a party to any confidentiality agreement, non-compete agreement, intellectual property rights agreement, employment agreement or other agreement or provision with any other employer or entity, that will or might impact your employment by Epic.

☐ You <u>are</u> a party to one or more confidentiality agreement, non-compete agreement, intellectual property rights agreement, employment agreement or other agreement or provision that will or might impact your employment by Epic. You have attached a copy of all such agreements and provisions to this employment agreement.

The purpose of this representation is to inform Epic of any agreement or provision that might in any way restrict the scope of or otherwise affect your employment at Epic. If there is any such agreement that you do not disclose, this may affect your eligibility for employment at Epic.

## 6. Non-interference with Employees

During your employment with Epic and for a period of two years after the termination of your employment (whether initiated by you or by Epic), you will not attempt to persuade or influence any then-existing employee to terminate his or her employment with Epic.

## 7. Employment with Customers, Consultants and Cooperative Partners

Epic expends substantial time, money and effort on the training of its new employees. In addition, as an Epic employee, you have access to Epic's customer lists and are in a position to establish relationships with Epic customers and the consulting firms and cooperative partners with whom Epic has close business relationships. Therefore, until one year after the termination of your employment (whether initiated by you or by Epic), you will not, without first obtaining the written consent of an Epic Human Resources Director, be employed by, assist, or serve as an officer, partner, or director, or consultant to, any employer who was a primary consultant or cooperative partner included on Exhibit B or was a customer or prospective customer (based on sales activities by Epic) of Epic while you were employed by Epic, except to the extent that your employment or other association with such customer does not relate in any way to software (e.g., the design, development, sale, implementation, support, training or other activity involving software). Epic may add new primary consultants and cooperative partners to Exhibit B from time to time if Epic has worked closely with the new consulting firm or cooperative partner in connection with the development of Epic products, the provision of services for existing customers or bidding on projects for prospective customers. Epic's customers, cooperative partners and primary consultants may also contractually agree not to employ you for a certain period of time after your employment with Epic ends.

## 8. Return of Property

By signing this agreement, you agree that you will, upon termination of employment at Epic, surrender all of the following:

(1) written material or documentation regarding Epic software, programs, techniques, methodologies, procedures, policies, source code, listings, working papers, customer lists, financial information, and information related to the foregoing, including any responses to proposals, training material, sales material, manuals, and checklists.

(2) any physical embodiments of information that is proprietary to Epic, such as tapes, diskettes, photographs, slides, and so forth.

(3) any personal property of Epic, such as hardware (PCs, modems, printers, etc.), software owned by Epic, books purchased by Epic, magazines purchased by Epic, subscriptions purchased by Epic, and other property of Epic.

## 9. Stockholder Restrictions/Stock Repurchase Option

In the event that you are employed by or providing assistance to any direct competitor on Exhibit A (as may be amended) or consultant or cooperative partner of Epic set forth on Exhibit B (as may be amended), Epic shall have the right, but not the obligation, to repurchase any Epic stock you own. This option to repurchase can be exercised at any time. The repurchase price shall be determined in accordance with the formula most recently used by Epic to value the worth of the shares of its stock. In addition, during any period of time that you are employed by or providing assistance to any direct competitor as set forth on

Exhibit A (as may be amended) or consultant or cooperative partner of Epic set forth on Exhibit B (as may be amended), you agree to forfeit any stockholder rights you might otherwise have to any information that could be used by that direct competitor or consultant to Epic's competitive detriment.

## 10. Maximum Commuting Distance / Tobacco-Free Policy

You understand and agree that it is a condition of your employment that you live within forty-five minutes commuting distance to your Epic work location for the entire period of your employment with Epic.

Tobacco use is not permitted anywhere on Epic property. This extends to all Epic buildings, grounds (parking lots, lawns, in cars) and includes all rental properties. Epic employees are not permitted to use tobacco at company events or during trips when in public places, including restaurants, the healthcare facility and grounds, etc. During such trips and events Epic employees should not be seen using tobacco, nor should they smell of smoke.

## 11. Irreparable Harm

You understand and acknowledge that Epic believes that breach of this agreement will result in irreparable and continuing damage to Epic for which money damages may not provide adequate relief. Accordingly, if you breach this agreement, you agree that Epic may seek and obtain injunctive relief to enforce the provisions of this agreement, and that nothing here shall prevent or inhibit Epic from seeking any other remedies available to it as well. Further, if Epic is successful in any action to enforce this agreement, you agree that Epic shall be entitled to recover its actual attorneys' fees and costs for such action.

## 12. Miscellaneous

By signing this agreement, you not only agree to its terms, but also warrant that you are not under any obligation, contractual or otherwise, which is in conflict with its terms.

This agreement is to be interpreted in accordance with the laws of the State of Wisconsin.

If any provision of this agreement is found to be invalid or unenforceable as written, the agreement shall be construed, to the extent possible, so as to render that provision enforceable, and if it cannot be so construed, its invalidity or unenforceability shall not affect the validity or enforceability of any other provisions of this agreement.

| **Employee** | **Epic Systems Corporation** |
|---|---|
| Signed: Andrea Hull | By: [signature] |
| Name: Andrea Hull | Title: HR |
| Date: 9/5/14 | Date: 10/6/14 |

# Exhibit A

## Epic Competitors

Allscripts/Eclipsys/Misys
athenahealth
Cerner
eClinicalWorks
GE Healthcare
InterSystems/TrakHealth
McKesson
Microsoft (healthcare area)
Meditech/LSS
NextGen/QCSI
Siemens

This list includes not only the competitors listed above, but also their parent companies and affiliates. Affiliates are companies that are partially or wholly owned by the above companies (subsidiaries), joint ventures involving these companies, companies resulting from a merger involving or with these companies, and companies that gain control of the above companies through the purchase of stock or assets. A company is considered to be an affiliate of a competitor whether the transaction creating the affiliate is pending or completed.

## Exhibit B
## Epic Consultants and Cooperative Partners

Accenture
ACS, a Xerox Company
Beacon Partners
CSC
Dell
Deloitte
Encore Health Resources
IBM Healthcare
KPMG
Multicare Consulting Services
Optum
PriceWaterhouse Coopers
SAIC (including MaxIT and Vitalize)
Virtelligence

This list includes not only the entities listed above, but also their parent companies and affiliates. Affiliates are companies that are partially or wholly owned by the above companies (subsidiaries), joint ventures involving these companies, companies resulting from a merger involving with these companies, and companies that gain control of the above companies through the purchase of stock or assets. A company is considered to be an affiliate of such entity whether the transaction creating the affiliate is pending or completed.

## MUTUAL ARBITRATION AGREEMENT REGARDING WAGES AND HOURS

Agreement to Arbitrate. Epic Systems Corporation ("Epic") and I agree to use binding arbitration, instead of going to court, for any "covered claims" that arise or have arisen between me and Epic, its related and affiliated companies, and/or any current or former employee of Epic or a related or affiliated company. **I understand that acceptance of employment with Epic is deemed to be acceptance of this Agreement to Arbitrate.**

"Covered claims" are any statutory or common law legal claims, asserted or unasserted, alleging the underpayment or overpayment of wages, expenses, loans, reimbursements, bonuses, commissions, advances, or any element of compensation, based on claims of eligibility for overtime, on-the-clock, off-the-clock or other uncompensated hours worked claims, timing or amount of pay at separation, improper deductions of pay or paid-time-off, fee disputes, travel time claims, meal or rest period claims, overpayment claims, claims of failure to reimburse or repay loans or advances, claims over improper or inaccurate pay statements, or any other claimed violation of wage-and-hour practices or procedures under local, state or federal statutory or common law.

**I understand and agree that arbitration is the only litigation forum for resolving covered claims, and that both Epic and I are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration.**

The Arbitrator shall have the authority to award the same damages and other relief that would have been available in court pursuant to applicable law. The arbitrator shall follow the rules of law of the state which is the employee's principal place of work, any applicable Federal law, and the rules as stated in this Agreement. The arbitrator shall have the authority to grant any remedy or relief that the arbitrator deems just and equitable and which is authorized by and consistent with applicable law, including applicable statutory or other limitations on damages.

Waiver of Class and Collective Claims. I also agree that covered claims will be arbitrated only on an individual basis, and that both Epic and I waive the right to participate in or receive money or any other relief from any class, collective, or representative proceeding. No party may bring a claim on behalf of other individuals, and any arbitrator hearing my claim may not: (i) combine more than one individual's claim or claims into a single case; (ii) participate in or facilitate notification of others of potential claims; or (iii) arbitrate any form of a class, collective, or representative proceeding.

At Will Employment Unchanged by this Agreement. Nothing in this agreement changes or in any manner modifies my relationship with Epic of employment-at-will.

Claims not Covered by this Agreement. Covered claims under this agreement do not include claims alleging discrimination, harassment, or retaliation. Also excluded from this agreement are any claims that cannot be required to be arbitrated as a matter of law. I also understand that I am not barred from filing a claim or charge with a governmental administrative agency, such as the National Labor Relations Board or Equal Employment Opportunity Commission, or from filing a workers' compensation or unemployment compensation claim with respect to covered claims, though I am giving up the opportunity to recover monetary amounts from any such governmental agency related claim (e.g., NLRB or EEOC) and would instead be able to pursue a claim for monetary amounts through arbitration. I also understand that if a third party seeks to have Epic garnish my wages, I may be subject to third-party garnishment proceedings in court, even though such a dispute concerns my wages.

Right to Representation. Both Epic and I shall have the right to be represented by an attorney in arbitration. Neither side is entitled to its attorneys' fees except as provided for by applicable law.

How to File for Arbitration. To file a demand for arbitration:

1. The party desiring to pursue a legal dispute must prepare a written demand setting forth the claim(s). Epic will pay its own filing fees. If I initiate the arbitration, I will pay the lesser of the American Arbitration Association's then-current filing fee (as of this date, $200), or the then-current filing fee applicable in state court.

2. The employment dispute resolution rules of the American Arbitration Association ("AAA") effective at the time of my filing will apply. The current version of the rules can be found on pages 15-31 here: https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004362&revision=latestreleased. These rules are modified by the terms of this Agreement, including the following:

    a. Epic will pay the arbitrator's fees and the arbitration filing and administrative fees, less my initial payment for the applicable filing fee;
    b. Epic and I will each have the opportunity to "rank" our preference for the appointed arbitrator from a list of nine proposed arbitrators and the AAA will then appoint the arbitrator;
    c. The arbitrator shall have the authority to issue an award or partial award without conducting a hearing on the grounds that there is no claim on which relief can be granted or that there is no genuine issue of material fact to resolve at a hearing, consistent with Rules 12 and 56 of the Federal Rules of Civil Procedure ("FRCP");
    d. Each party shall be entitled to only one interrogatory limited to the identification of potential witnesses, in a form consistent with Rule 33 of the FRCP;
    e. Each party shall be entitled to only 25 requests for production of documents, in a form consistent with Rule 34 of the FRCP;
    f. Each party shall be entitled a maximum of two (2) eight-hour days of depositions of witnesses in a form consistent with Rule 30 of the FRCP;
    g. The arbitrator shall decide all disputes related to discovery and to the agreed limits on discovery and may allow additional discovery upon a showing of substantial need by either party or upon a showing of an inability to pursue or defend certain claims without such additional discovery;
    h. The arbitrator must issue a decision in writing, setting forth in summary form the reasons for the arbitrator's determination and the legal basis therefor; and
    i. The arbitrator's authority shall be limited to deciding the case submitted by the parties to the arbitration. Therefore, no decision by any arbitrator shall serve as precedent in other arbitrations except in a dispute between the same parties, in which case it could be used to preclude the same claim from being re-arbitrated.

Settlement. I may settle any dispute with the company at any time without involvement of the arbitrator.

Modifications and Amendments. I understand and agree that Epic may change or terminate this agreement after giving me 90 days written or electronic notice. Any change or termination will not apply to a pending claim.

Savings Clause & Conformity Clause. If any provision of this agreement is determined to be unenforceable or in conflict with a mandatory provision of applicable law, it shall be construed to incorporate any mandatory provision, and/or the unenforceable or conflicting provision shall be automatically severed and the remainder of the agreement shall not be affected. Provided, however, that if the Waiver of Class and Collective Claims is found to be unenforceable, then any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims.

Controlling Law. I agree that this agreement is made pursuant to and shall be governed under the Federal Arbitration Act.

**Employee**

Signed: Andrea Hull

Name: Andrea Hull

Date: 9/5/14

**Epic Systems Corporation**

Signed: Bjorklund

Name: Jamie Bjorklund

Date: 10/6/04

# EPIC EMPLOYEE DATA CONFIDENTIALITY POLICY

Epic Systems Corporation ("Epic") sells and supports computer software specifically intended for use by medical facilities. As a result of their responsibilities in the creation, maintenance and support of computer software for such medical facilities, employees of Epic may be in positions in which they have access to confidential data regarding the patients of medical facilities that are Epic customers or regarding account holders of Lucy, Epic's web-based personal health record. It is a highest priority of Epic, and an important company policy, that all data regarding any patients of any customers and any Lucy account holders be kept in the utmost confidence. Particularly since some of the customers of Epic may be in close geographical proximity to Epic it is possible that an employee of Epic may have access to highly sensitive personal information about persons with whom they are personally acquainted. Any such information must be treated in utmost confidence, and as ordinary computer data, and must not be used for purposes other than that which is absolutely required for the fulfillment of the employee's obligations and duties at Epic. Disclosure or use of any confidential information about any patient of any customer of Epic or about any Lucy account holder outside of the employment duties of an employee by Epic is absolutely forbidden and would be extremely injurious to Epic, its customers, and Epic's reputation in the health care community. Therefore, by accepting or continuing in the employment of Epic each Epic employee personally agrees never to disclose such information to anyone other than (i) other employees of Epic who require such information in order to perform their job responsibilities, or (ii) those to whom it is required to disclose such information during the employee's normal conduct of professional employment responsibilities for Epic. As an employee of Epic, you agree and understand that you will in no way use such information other than in your employment obligations. You also understand that if this policy is violated, your status as an employee of Epic will be terminated immediately and without further notice. Furthermore, if you should wrongfully disclose any confidential information of any patient or Lucy account holder, you will expose yourself to the risk of liability for which you will not be defended by Epic. To the extent permitted by law, we may seek indemnification by you.

By signing this below, you acknowledge that you have read and understood the intent and terms of this policy, and accept this policy as a condition of your accepting or continuing in employment with Epic.

Employee Signature: Andrea Hull

Print Full Name: Andrea Hull

Date: 9/5/14