MICHAEL BEST & FRIEDRICH LLP
David Szwarcsztejn, Cal. Bar No. 272371
david.szwarcsztejn@michaelbest.com
11812 San Vicente Blvd., Suite 380
Los Angeles, CA 90049
Telephone: 424.299.8900
Facsimile: 877.398.5240

Attorneys for Defendants
EPIC SYSTEMS CORPORATION and
BOOST, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREA HULL,

Plaintiff,

v.

EPIC SYSTEMS CORPORATION and BOOST, INC.,

Defendants.

Case No. 4:26-cv-07702-AMO

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Hearing Date: January 7, 2027
Hearing Time: 2:00 p.m.
Courtroom: 5

Judge: Honorable Araceli Martínez-Olguín

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. STATEMENT OF ISSUES .......... 1

(1) Whether the Court should compel Hull to arbitrate her claims, including her individual PAGA claims, pursuant to her Mutual Arbitration Agreement with Epic. .......... 1

(2) Whether the Court should stay the proceedings, including Hull's representative PAGA claims, pending completion of the arbitration. .......... 1

III. STATEMENT OF RELEVANT FACTS .......... 1

A. Factual Background .......... 1

B. Procedural History .......... 3

IV. LEGAL ARGUMENT .......... 4

A. Hull's Claims Are Subject to the FAA. .......... 4

B. This Court Should Compel Hull's Individual Claims to Binding Arbitration. .......... 5

1. A Valid Agreement to Arbitrate Exists. .......... 6

2. The Arbitrator, Not the Court, Must Decide Arbitrability. .......... 6

3. The Dispute is Within the Scope of the Arbitration Agreement. .......... 7

4. Hull Has Declined to Arbitrate Her Claims. .......... 8

C. Hull Must Arbitrate Her Claims on an Individual Basis. .......... 9

D. Hull's Individual PAGA Claims Are Also Subject to Arbitration. .......... 10

E. The Remainder of the Action, Including Hull's Representative PAGA Claims, Must Be Stayed Pending Arbitration. .......... 11

V. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adolph v. Uber Techs., Inc.*,
14 Cal. 5th 1104 (2023) .......... 11

*Arias v. Sup. Ct.*,
46 Cal. 4th 969 (2009) .......... 9

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
785 F.3d 1320 (9th Cir. 2015) .......... 6, 8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 5, 9

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......... 6, 7

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) .......... 7

*Chamber of Com. v. Bonta*,
62 F.4th 473 (9th Cir. 2023) .......... 5, 6

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......... 5, 8, 9

*Cir. City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) .......... 5

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) .......... 5

*Cocom v. ABM Aviation, Inc.*,
179 F.4th 1168 (9th Cir. 2026) .......... 8

*Davis v. Shiekh Shoes, LLC*,
84 Cal. App. 5th 956 (2022) .......... 5

*EEOC v. Luce, Forward, Hamilton & Scripps*,
345 F.3d 742 (9th Cir. 2003) (en banc) .......... 8

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .......... 9

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) .......... 10

*Iskanian v. CLS Transp. L.A., LLC*,
59 Cal. 4th 348 (2014) .................... 9

*Johnson v. Lowe's Home Ctrs., LLC*,
93 F.4th 459 (9th Cir. 2024) .................... 11

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) .................... 9

*Lexecon Ind. V. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998) .................... 11

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017) .................... 10

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .................... 5

*Ortega v. UnitedHealth Grp., Inc.*,
2024 WL 4495817 (N.D. Cal. Oct. 15, 2024) .................... 11

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .................... 7

*Rocha v. U-Haul Co. of Cal.*,
88 Cal. App. 5th 65 (2023) .................... 11

*Sandler v. Modernizing Med., Inc.*,
170 F.4th 1209 (9th Cir. 2026) .................... 7

*Santana v. Studebaker Health Care Ctr., LLC*,
120 Cal. App. 5th 1 (2026) .................... 9

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .................... 1, 11

*Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) .................... 4

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) .................... 8

*Tiri v. Lucky Chances, Inc.*,
226 Cal. App. 4th 231 (2014) .................... 7

*Tuufuli v. W. Coast Dental Admin. Servs., LLC*,
117 Cal. App. 5th 1048 (2026), *review granted*, 585 P.3d 785 (2026) .................... 5

*Victrola 89, LLC v. Jaman Props. 8 LLC*,
46 Cal. App. 5th 337 (2020) .................... 5

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022) .......... 9, 10

*Volt Info. Scis., Inc. v. Bd. of Trs.*,
489 U.S. 468 (1989) .......... 4

**STATUTES**

9 U.S.C. § 1 .......... 5

9 U.S.C. § 2 .......... 4, 5

9 U.S.C. § 3 .......... 1, 11, 12

9 U.S.C. § 4 .......... 1, 9

28 U.S.C. §§ 2201–2202 .......... 4

Cal. Bus. & Prof. Code § 16600 .......... 4

Cal. Bus. & Prof. Code § 16600.1 .......... 4

Cal. Bus. & Prof. Code § 16600.5 .......... 4

Cal. Bus. & Prof. Code § 17200 .......... 4, 9

Cal. Civ. Code § 1550 .......... 6

Cal. Civ. Code § 1605 .......... 6

Cal. Lab. Code § 232 .......... 4

Cal. Lab. Code § 232.5 .......... 4

Cal. Lab. Code § 432.5 .......... 4

Cal. Lab. Code § 925 .......... 4

Cal. Lab. Code § 1102.5 .......... 4

Cal. Lab. Code § 1197.5 .......... 4

Cal. Lab. Code § 2698 .......... 1

Cal. Lab. Code § 2699(c)(1) .......... 12

Cal. Lab. Code § 2699(u) .......... 12

Cal. Lab. Code § 2699.3(a)(2)(A) .......... 3

Cal. Lab. Code § 2870-2872 .......... 4

Cal. Lab. Code Private Attorneys General Act of 2004 ........ passim

Federal Arbitration Act ........ passim

Unfair Competition Law ........ 9

Defendants Epic Systems Corporation ("Epic") and Boost, Inc. ("Boost"), a wholly owned subsidiary of Epic (collectively, "Defendants"), by and through their counsel, submit this brief in support of their Motion to Compel Arbitration and Stay Proceedings, brought under Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3–4. This Motion is supported by the attached declaration of Jennifer Peterson ("Peterson Decl.").

## I. INTRODUCTION

Plaintiff Andrea Hull ("Hull"), a former Epic and Boost employee, has filed this lawsuit against Defendants in derogation of her contractual promise to arbitrate. Her operative complaint makes claims related to her former employment with Defendants and challenges the restrictive covenants in her employment agreements with them. (*See generally* Dkt. 13, First Am. Compl. ("FAC").) Hull openly acknowledges that on June 19, 2025, she signed a Mutual Arbitration Agreement with Epic (the "Arbitration Agreement"). (*Id.*, ¶¶ 40, 41.) That Arbitration Agreement requires arbitration of covered claims relating to or arising out of Hull's employment with Epic or Boost and is governed by the FAA. Because Hull's claims relate to or arise out of her Epic and Boost employment relationship and agreements, the Court should compel arbitration of her individual claims, including her individual Cal. Lab. Code Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698 *et seq.* ("PAGA") claims, and stay the remainder of this action, including the representative PAGA claims, under 9 U.S.C. § 3 and *Smith v. Spizzirri*, 601 U.S. 472, 478–79 (2024).

## II. STATEMENT OF ISSUES

(1) Whether the Court should compel Hull to arbitrate her claims, including her individual PAGA claims, pursuant to her Mutual Arbitration Agreement with Epic.

(2) Whether the Court should stay the proceedings, including Hull's representative PAGA claims, pending completion of the arbitration.

## III. STATEMENT OF RELEVANT FACTS

### A. Factual Background

Epic and Boost are privately held Wisconsin corporations headquartered in Verona, Wisconsin. (Peterson Decl., ¶ 3; *see also* FAC, ¶ 21.) Epic is a healthcare software company that

develops and licenses proprietary electronic health records software used by hospitals, health systems, medical groups, retail clinics, and others throughout the United States, including all 50 states, and around the world. (Peterson Decl., ¶ 3; *see also* FAC, ¶¶ 22, 23.) Boost is a wholly owned subsidiary of Epic offering consulting services and staff augmentation on Epic's software to customers throughout the United States. (*Id.*) Boost employees are assigned to Epic's customers throughout the United States. (*Id.*)

Hull was employed by Epic or one of its subsidiaries, including Boost, from October 6, 2014, through March 9, 2026. (Peterson Decl., ¶ 4; *see also* FAC, ¶¶ 6, 37, 38.) For the first 3.4 years of her employment, she was employed by and performed services for Epic at Epic's headquarters in Verona, Wisconsin. (Peterson Decl., ¶ 4; *see also* FAC, ¶ 37.) In the course of her employment for Epic, she also traveled to a number of different states to work with Epic's customers. (Peterson Decl., ¶ 4.) She transferred to Boost in April 2018, where she worked in Colorado. (Peterson Decl., ¶ 4; *see also* FAC, ¶ 37.) She then worked for Epic in Norway and England through Epic's subsidiary, EpicCorps International, Inc., from February 2021 until or about the end of June or beginning of July 2025 before transferring back to employment with Boost, when she again relocated, this time to California. (Peterson Decl., ¶ 4; *see also* FAC, ¶¶ 37, 41, 56.)

In anticipation of and as a condition of her transfer to Boost in 2025, Hull signed the Arbitration Agreement on June 19, 2025, by DocuSign. (Peterson Decl., ¶ 5, Ex. A; *see also* Dkt. 18, Hull Declaration ("Hull Decl."), ¶ 30 ("On or around June 19, 2025, . . . I signed by DocuSign a . . . Mutual Arbitration Agreement . . . . A true and correct copy of the complete DocuSign packet as I signed it is attached as Exhibit 2").)

In the Arbitration Agreement, Epic and Hull agreed that:

- Hull and Epic and its related and affiliated companies (including Boost) shall use binding arbitration, instead of going to court, for any "Covered Claims", which are, unless expressly excluded by the Arbitration Agreement, any claims "that arise or have arisen between [them] that relate to or arise out of [Hull's] employment or the termination of [Hull's] employment…" (Peterson Decl., Ex. A, § I.)

- arbitration is the exclusive forum for Covered Claims and that both sides waive a judicial or jury trial for those claims. (*Id.*)
- the arbitrator is authorized to award the same damages and other relief available in court under applicable law. (*Id.*)
- Covered Claims must be arbitrated only on an individual basis, and that they waive the right to participate in any class, collective or representative proceeding. (*Id.* § II.)
- any claims that cannot be required to be arbitrated as a matter of law are excluded from the definition of Covered Claims. (*Id.* § IV.)
- the Employment Arbitration Rules & Mediation Procedures of the American Arbitration Association ("AAA") effective at the time of the claim filing will apply to the arbitration. (*Id.* § VI.)
- generally, if any provision of the Arbitration Agreement is determined to be unenforceable, the unenforceable provision is severed and the remainder of the agreement is not affected. (*Id.* § XI.)
- the Arbitration Agreement is made pursuant to and governed by the FAA and the laws of the State of Wisconsin. (*Id.* § XII.)

**B. Procedural History**

On June 10, 2026, Hull sent a PAGA notice to the California Labor and Workforce Development Agency, asserting "the facts and theories supporting her claims, including that Epic's employment restraints violate California law." (FAC, ¶ 9.) Hull filed her first Complaint in this action, sans any PAGA claim, on July 24, 2026. (Dkt. 1.) Under Cal. Lab. Code § 2699.3(a)(2)(A), Hull could have filed an amended complaint with PAGA claims 65 calendar days after the date of her PAGA notice (or on August 15, 2026); however, she waited until October 3, 2026, to amend her complaint to include PAGA claims. (FAC, ¶¶ 107-126.)

The FAC asserts eight claims that relate to or arise out of Hull's former employment with Defendants and challenges the restrictive covenants in her (and other employees') employment agreements, hiring constraints in Epic customer contracts, and Epic's administration of UserWeb credentials and conference access for her and recent former employees. Claims for Relief one

through four assert individual claims, while Claims five through eight assert individual and representative PAGA claims. (*See generally* FAC, ¶¶ 86–126). Specifically, Hull alleges individual claims for: violations of the Cal. Bus. & Prof. Code §§ 16600, 16600.1, and 16600.5, based on the restrictive covenants in Hull's own employment agreements (FAC, ¶¶ 86–91, First Claim for Relief) and on the hiring provisions in Epic's contracts with its customers and partners *(Id.,* ¶¶ 92–95, Second Claim for Relief); unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.* based on the same conduct (FAC, ¶¶ 96–103, Third Claim for Relief); and declaratory relief under 28 U.S.C. §§ 2201–2202 that Epic's employment restraints violate California law (FAC, ¶¶ 104–06, Fourth Claim for Relief). Hull asserts four claims—added by amendment—for civil penalties and injunctive relief under PAGA, alleging violations of Lab. Code §§ 432.5, 232, 232.5, 1102.5, 1197.5, 2870–2872, 925, and 2698 *et seq*. (FAC, ¶¶ 107–126, Fifth, Sixth, Seventh, and Eighth Claims for Relief). Hull purports to bring the PAGA claims "on behalf of herself, the State of California, and other aggrieved current and former employees" (FAC, ¶ 19), meaning they include both Hull's individual claims and representative claims.

Hull's first four claims and her individual PAGA claims are covered under the Arbitration Agreement. By filing this action rather than proceeding in arbitration, Hull has declined to arbitrate the dispute. Defendants now seek an order compelling arbitration of all Hull's individual claims in accordance with the Arbitration Agreement and staying the action pending completion of arbitration.

## IV. LEGAL ARGUMENT

### A. Hull's Claims Are Subject to the FAA.

Hull's claims are subject to the FAA. The FAA requires the enforcement of arbitration agreements and provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Courts must "give effect to the contractual rights and expectations of the parties" and agreements to arbitrate must be enforced according to their terms. *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989)).

Here, the Arbitration Agreement is covered by the FAA. First, the Agreement expressly

states that it "is made pursuant to, and shall be governed under, the Federal Arbitration Act (the "FAA")." (Peterson Decl., Ex. A, § XII.) This suffices to bring it within the purview of the FAA. *Tuufuli v. W. Coast Dental Admin. Servs., LLC*, 117 Cal. App. 5th 1048, 1054 (2026) ("We agree with the trial court that the FAA governs the arbitration agreement…because the parties agreed that it would."), *review granted,* 585 P.3d 785 (2026); *Davis v. Shiekh Shoes, LLC*, 84 Cal. App. 5th 956, 963 (2022) (same); *Victrola 89, LLC v. Jaman Props. 8 LLC*, 46 Cal. App.5th 337, 348 (2020).

Second, the Agreement unquestionably affects interstate commerce because Epic's and Boost's business activities regularly and consistently involve interstate commerce. 9 U.S.C. §§ 1-2. The FAA's term "involving commerce" is interpreted as the "broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc*., 539 U.S. 52, 56–57 (2003). Epic and Boost engage in business throughout the United States and the world, and Hull's employment involved working with Epic's customers across the United States and the world. (Peterson Decl., ¶¶ 3,4; *see also* FAC, ¶¶ 22, 23, 35-37.) Such activities undeniably involve interstate commerce and the FAA applies.

### B. This Court Should Compel Hull's Individual Claims to Binding Arbitration.

Section 2 of the FAA makes a written arbitration provision in a contract involving commerce "valid, irrevocable, and enforceable" except on generally applicable contract grounds. 9 U.S.C. § 2. The FAA reflects both a federal policy favoring arbitration and the principle that arbitration is a matter of contract. *Chamber of Com. v. Bonta*, 62 F.4th 473, 483 (9th Cir. 2023); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA applies to employment contracts outside the transportation-worker exemption. *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 118–19 (2001).

On a motion to compel arbitration, the Court determines whether a valid agreement to arbitrate exists and whether the agreement encompasses the dispute. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). State-law contract principles govern formation, while the FAA requires courts to place arbitration agreements on equal footing with other contracts. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Any

generally applicable defense must target contract formation or enforceability rather than arbitration. *Bonta*, 62 F.4th at 480–82.

**1. A Valid Agreement to Arbitrate Exists.**

Under California law[1], contract formation requires parties capable of contracting, consent, a lawful object, and sufficient consideration. Cal. Civ. Code § 1550. A signature is objective evidence of assent, and the Ninth Circuit enforces employment arbitration agreements when the employee receives express notice and agrees to the policy. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1325–26 (9th Cir. 2015).

Hull cannot credibly dispute assent. Her FAC alleges that, on June 19, 2025, she signed the Arbitration Agreement with Epic as part of her Boost transfer paperwork (FAC, ¶ 40), and repeats that assertion in her October 4, 2026, sworn declaration filed in this action. (Dkt. 18, Hull Decl., ¶ 30.) Hull's Amended Complaint expressly identifies the Mutual Arbitration Agreement, alleges that she signed it with Epic, and treats Epic and Boost as an integrated enterprise or joint employers. (FAC, ¶¶ 23, 25, 40.)

The Arbitration Agreement is supported by consideration. Hull accepted and continued in the Boost employment relationship governed by the Arbitration Agreement. *See* Cal. Civ. Code § 1605. Moreover, the FAA preempts state rules that single out or inhibit formation of arbitration agreements. *Bonta*, 62 F.4th at 480–82.

Accordingly, a valid and enforceable agreement to arbitrate exists.

**2. The Arbitrator, Not the Court, Must Decide Arbitrability.**

Although a court ordinarily decides gateway questions of arbitrability, parties may delegate those questions to the arbitrator if their agreement does so clearly and unmistakably. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Once a valid delegation exists, the court's role is limited to deciding whether an arbitration agreement was formed and whether the delegation provision itself is specifically challenged. The arbitrator decides disputes concerning the arbitration

[1] The Arbitration Agreement states that it is governed by the FAA and Wisconsin law. (Peterson Decl., Ex. A, § XII.) Hull asserts that the Wisconsin choice of law is voidable at her election. (FAC, ¶ 49.) While Defendants disagree and reserve the right to assert that Wisconsin law governs the agreement (to the extent not preempted by the FAA), for purposes of this Motion only, Defendants use California law to establish that the Arbitration Agreement was validly formed and enforceable.

agreement's interpretation, applicability, scope, validity, and enforceability. *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029–30 (9th Cir. 2022).

The Ninth Circuit recognizes that incorporation of arbitral rules that empower the arbitrator to decide jurisdiction—including the AAA or JAMS rules—constitutes clear and unmistakable evidence of delegation. *Brennan*, 796 F.3d at 1130; *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480-81 (9th Cir. 2024). California law is the same: where an employment agreement clearly delegates enforceability questions, the trial court lacks authority to decide challenges directed at the arbitration agreement as a whole. *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 236, 242–45 (2014).

Here, the Arbitration Agreement incorporates the AAA rules, which is a clear and unmistakable delegation of disputes as to arbitrability to the arbitrator. (Peterson Decl., Ex. A, § VI, 2.) Rule 7(a) of the AAA Employment Arbitration Rules authorizes the arbitrator to decide objections concerning the existence, scope, or validity of the arbitration agreement and the arbitrability of any claim. (*See* Request for Judicial Notice in Support of Defendants' Motion to Compel Arbitration ("RJN"), Ex. A [AAA Rules].) That incorporation is sufficient under *Brennan*, 796 F.3d at 1130–31.

Hull's anticipated objections concern the scope and enforceability of arbitration—whether her statutory claims and requests for declaratory or public injunctive relief are covered, and whether California law limits enforcement. Those are precisely the gateway questions the parties delegated. Recent Ninth Circuit authority confirms that incorporation of arbitration rules (in that case, the JAMS rules) unmistakably delegates validity and enforceability questions to the arbitrator and that a general severability clause does not negate that delegation. *Sandler v. Modernizing Med., Inc.*, 170 F.4th 1209, 1212–13 (9th Cir. 2026). The Court therefore should enforce the delegation, compel arbitration, and leave all disputes on scope, validity, and enforceability of the Arbitration Agreement—and the arbitrability of Hull's claims and requested remedies—to the arbitrator.

**3. The Dispute is Within the Scope of the Arbitration Agreement.**

The scope inquiry turns on the Arbitration Agreement's text. Where an arbitration clause is broad, disputes touching matters covered by the contract are generally arbitrable unless the

agreement expressly excludes them. *Chiron*, 207 F.3d at 1131. The Ninth Circuit likewise enforces clauses limited to employment-related claims according to their terms. *Cocom v. ABM Aviation, Inc.*, 179 F.4th 1168, 1175–77 (9th Cir. 2026).

Hull's claims fall within the Arbitration Agreement's coverage because they relate to or arise out of her employment with Epic and Boost, the employment agreements she signed in connection with that employment, Defendants' alleged post-employment enforcement conduct, and rights she claims as a former employee. The FAC's requested declarations likewise concern other agreements signed during employment (e.g., the Employee Data Confidentiality Policy and Mutual Arbitration Agreement) and related post-employment practices. (*See* FAC, ¶¶ 40, 86-95.)

Further, the Arbitration Agreement covers Hull's claims against both Epic and Boost. The Agreement states: "Epic Systems Corporation, together with its related and affiliated companies or successors, (collectively "Epic") and I agree . . . ." (Peterson Decl., Ex. A, § I.) Boost is a wholly owned subsidiary of Epic and is therefore a party to the Agreement. (Peterson Decl. ¶ 5.) Thus, both Epic and Boost are parties to the agreement with Hull. (*See also* FAC, ¶ 23.)

Hull's statutory and declaratory claims are arbitrable unless Congress or the agreement provides otherwise. *See Ashbey*, 785 F.3d at 1325–26; *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 747–53 (9th Cir. 2003) (en banc). Her belated request for injunctive relief does not by itself remove the dispute from arbitration because the Arbitration Agreement authorizes the arbitrator to award relief available under applicable law. Whether any request qualifies as nonwaivable public injunctive relief, and whether any such request is severable, should be addressed under the agreement's terms and controlling California law. *See Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1087–88 (9th Cir. 2020). Thus, Hull's claims, excluding her representative PAGA claims, should be referred to arbitration.[2]

**4. Hull Has Declined to Arbitrate Her Claims.**

Hull filed this federal action without initiating arbitration. That filing presents a controversy

[2] While not a focal point of this Motion, Defendants note that Plaintiff lacks standing with respect to large portions of her claims, including her requests for injunctive relief. Defendants intend to raise their challenges to Plaintiff's standing in due course in the appropriate venue(s), including in the arbitration with respect to arbitrable claims and before this Court with respect to non-arbitrable claims or matters.

subject to the Arbitration Agreement and permits Defendants to seek an order compelling arbitration under 9 U.S.C. § 4. See *Chiron*, 207 F.3d at 1130.

**C. Hull Must Arbitrate Her Claims on an Individual Basis.**

Hull agreed to resolve covered claims through individual arbitration rather than class or representative proceedings. (Peterson Decl., Ex. A, §§ I, II.)[3] Yet Hull's First through Fourth Claims seek declaratory and injunctive relief extending beyond her own employment, and her motion for preliminary injunction confirms that she seeks relief on behalf of consultants, partners, other employees, and out-of-state customers. (*See* FAC, ¶¶ 86–106; Dkt. 16 at 3.) The FAA requires courts to enforce such waivers according to their terms, including in the employment context. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502, 524–25 (2018); *Concepcion*, 563 U.S. at 344–52. Nor may Hull be compelled into class or representative arbitration absent the parties' affirmative contractual consent, which the Arbitration Agreement expressly withholds. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184–86 (2019). California law is in accord. *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 360–66 (2014) (enforcing class waiver in employment arbitration agreement), *abrogated in part on other grounds by Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022); *Santana v. Studebaker Health Care Ctr., LLC*, 120 Cal. App. 5th 1, 16 (2026) (class and collective action waivers requiring arbitration of employee's individual claims enforceable where FAA governs arbitration agreement).

Hull cannot evade the waiver by characterizing her requests as claims under the Unfair Competition Law. A private plaintiff who seeks relief on behalf of others under Bus. & Prof. Code § 17200 must satisfy class-action requirements, *Arias v. Sup. Ct.*, 46 Cal. 4th 969, 980 (2009), and Hull has waived the right to proceed on that basis. Nor does Hull seek nonwaivable public

---

[3] Specifically, the waiver states: "Waiver of Class and Collective Claims. I also agree that Covered Claims will be arbitrated only on an individual basis, and that both Epic and I waive the right to participate in or receive money or any other relief from any class, collective, or representative proceeding. No party may bring a Covered Claim on behalf of other individuals, and any arbitrator hearing my Covered Claim may not: (i) participate in or facilitate notification of others of potential Covered Claims; (ii) arbitrate any form of a class, collective, or representative proceeding; or (iii) without the consent of all the parties, combine more than one individual's Covered Claim(s) into a single case." (Peterson Decl., Ex. A, § II.)

injunctive relief. Relief directed at Epic's contracts with its own current and former employees and customers primarily benefits a defined group, not the general public, and therefore is private injunctive relief that may be waived and arbitrated. *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541–49 (9th Cir. 2021) (citing *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017)).

In all events, consistent with the incorporated Rule 7(a) of the AAA rules, these questions are for the arbitrator in the first instance. To the extent the Court reaches them, however, it should compel Hull to arbitrate her First through Fourth Claims on an individual basis only and strike or stay any request for relief on behalf of other employees or non-parties.

**D. Hull's Individual PAGA Claims Are Also Subject to Arbitration.**

The individual arbitration requirement likewise extends to Hull's PAGA claim. Hull's Fifth through Eighth Claims for Relief assert PAGA claims on behalf of herself, the State of California, and other aggrieved current and former employees. (FAC, ¶ 19.) The Arbitration Agreement requires her individual claims to be resolved through arbitration. In *Viking River*, the Supreme Court held that the FAA preempts California law to the extent it precludes parties from agreeing to arbitrate PAGA claims on an individual basis. 596 U.S. at 660–62. The Court recognized that PAGA claims have two components: (1) an "individual" component consisting of claims arising from violations personally suffered by the plaintiff, and (2) a "representative" component consisting of claims arising from violations suffered by other employees. *Id.* at 648–49. The Court held that the FAA requires courts to enforce agreements to arbitrate the individual PAGA component according to their terms. *Id.* at 660–62.

Here, the Arbitration Agreement requires that disputes be resolved by individual arbitration rather than representative or class proceedings. (Peterson Decl., Ex. A, §§ I-II.) Under *Viking River*, that agreement must be enforced with respect to Hull's individual PAGA claims—those arising from Labor Code violations she personally experienced as an employee of Epic and Boost. *See* 596 U.S. at 660–62. The Court should compel Hull to arbitrate her individual PAGA claims for alleged violations of the Labor Code.

Defendants anticipate that Hull may argue that the Class Waiver in Section II of the Arbitration Agreement improperly requires Hull to waive her right to bring representative PAGA

claims on behalf of others. This argument fails for two reasons. First, the Arbitration Agreement's definition of Covered Claims excludes representative PAGA claims on behalf of others in the first place, by stating that "[E]xcluded from this agreement are any claims that cannot be required to be arbitrated as a matter of law." (Peterson Decl., Ex. A, § IV.) Second, even in absence of this exclusion, the Arbitration Agreement contains a severability clause. (Peterson Decl., Ex. A, § XI.) The Ninth Circuit has recognized that in such circumstances, the appropriate remedy is to sever the waivers of representative PAGA claims or of public injunctive relief. *Johnson v. Lowe's Home Ctrs., LLC*, 93 F.4th 459, 464 (9th Cir. 2024) (affirming order severing waiver of representative PAGA claims, compelling arbitration of individual PAGA claim, and staying representative PAGA claims); *see also Ortega v. UnitedHealth Grp., Inc.*, No. 23-cv-05596, 2024 WL 4495817, at *8 (N.D. Cal. Oct. 15, 2024) (ordering arbitration of individual PAGA claims and staying representative PAGA claims, after severing representative PAGA waiver).

### E. The Remainder of the Action, Including Hull's Representative PAGA Claims, Must Be Stayed Pending Arbitration.

Under the FAA, a stay of the remaining non-arbitrable litigation is mandatory. Section 3 of the FAA provides that, when "any issue" in a suit is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. The use of the word "shall" in this statute "creates an obligation impervious to judicial discretion." *Smith*, 601 U.S. at 476 (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)). According to the FAA and the Supreme Court's ruling in *Smith*, upon receipt of an application to arbitration, the Court must stay the above captioned action and compel arbitration. *Smith*, 601 U.S. at 478-79.

This includes Hull's representative PAGA claims. As the California Supreme Court has recognized, the remaining non-individual PAGA claims are properly stayed pending completion of the arbitration. *See Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104, 1123–24 (2023); *Ortega,* 2024 WL 4495817, at *8–9 (ordering arbitration of all individual claims including individual PAGA claims, dismissing class claims, and staying representative PAGA claims under *Adolph*).

Significantly, if Hull fails to prove a Labor Code violation in her individual arbitration, she would no longer have standing to proceed with the representative PAGA claims in court. *See Rocha v. U-Haul Co. of Cal.*, 88 Cal. App. 5th 65, 76-77, 80-82 (2023) (arbitrator's finding of no Labor Code violations precluded the plaintiffs' PAGA standing because they could not qualify as "aggrieved employees" and were barred from re-litigating that issue in court). Further, Hull can only pursue the same PAGA violations she personally suffered. *See* Cal. Lab. Code §§ 2699(c)(1), 2699(u). Hence, a stay should be ordered to allow an arbitrator to adjudicate Hull's claims.

Accordingly, Defendants request the Court stay these proceedings pending resolution of the instant Motion and completion of the arbitration.

**V. CONCLUSION**

For these reasons, Defendants respectfully request that the Court grant their Motion, enforce the parties' delegation of arbitrability questions to the arbitrator, compel Hull's individual claims to arbitration—including her individual PAGA claims—in accordance with the Arbitration Agreement, and stay this action under 9 U.S.C. § 3 pending completion of arbitration. The arbitrator should decide all disputes concerning the Arbitration Agreement's interpretation, applicability, scope, validity, and enforceability, including whether Hull's claims and requested remedies are arbitrable. In the alternative, if the Court concludes that any discrete issue was not delegated or that Hull retains standing to pursue representative PAGA claims in court notwithstanding arbitration of her individual claims, Defendants request that the Court compel arbitration of all delegated and arbitrable issues and claims and stay the balance of the action pending arbitration.

Dated: October 30, 2026

**MICHAEL BEST & FRIEDRICH LLP**

By: */s/David Szwarcsztejn*
David Szwarcsztejn

Attorneys for Defendants
EPIC SYSTEMS CORPORATION and
BOOST, INC.

CERTIFICATION OF LEAD TRIAL COUNSEL RE: ARTIFICIAL INTELLIGENCE

Pursuant to Section H.4 of the Court's Standing Order for Civil Cases Before District Judge Araceli Martínez-Olguín, I, David Szwarcsztejn, lead trial counsel for Defendants Epic Systems Corporation and Boost, Inc., certify that: (1) I have personally verified the accuracy of the contents of this submission, and (2) counsel is maintaining records of prompts and inquiries submitted to generative artificial intelligence tools in connection with this matter.

Dated: October 30, 2026

**MICHAEL BEST & FRIEDRICH LLP**

By: */s/David Szwarcsztejn*
David Szwarcsztejn

Attorneys for Defendants
EPIC SYSTEMS CORPORATION and
BOOST, INC.