MICHAEL BEST & FRIEDRICH LLP
David Szwarcsztejn, Cal. Bar No. 272371
david.szwarcsztejn@michaelbest.com
11812 San Vicente Blvd., Suite 380
Los Angeles, CA 90049
Telephone: 424.299.8900
Facsimile: 877.398.5240

Attorneys for Defendants
EPIC SYSTEMS CORPORATION and
BOOST, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA HULL,<br><br>Plaintiff,<br><br>v.<br><br>EPIC SYSTEMS CORPORATION and BOOST, INC.,<br><br>Defendants. | Case No. 4:26-cv-07702-AMO<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: January 7, 2027<br>Hearing Time: 2:00 p.m.<br>Courtroom: 5<br><br>Honorable Araceli Martínez-Olguín |

## TABLE OF CONTENTS


I. INTRODUCTION. ....1

II. STATEMENT OF ISSUES AS REQUIRED BY L.R. 7-4. ....2

III. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY. ....2

IV. LEGAL STANDARD. ....4

V. LEGAL ARGUMENT. ....5

A. Hull Is Unlikely to Succeed on the Merits of Her Non-PAGA Claims. ....5

1. Hull Lacks Standing to Seek Injunctive Relief for Herself. ....5

2. Epic's Written Commitments Moot Hull's Individual Request. ....8

3. Hull Cannot Obtain Relief for Other Epic Employees, All California Workers, or All California Employers. ....9

4. Contracts to Which Hull Is Not a Party Do Not Restrain Her. ....14

5. Hull Has Not Shown That Epic's Confidentiality Covenant Is Void. ....14

6. Hull Has an Adequate Remedy at Law, Which Forecloses Equitable Relief on Her UCL Claim. ....15

B. Hull Cannot Establish a Likelihood of Success on Her PAGA Claims. ....16

1. Hull's Individual PAGA Claim for Injunctive Relief is Moot. ....16

2. Section 16600 Cannot Serve as a PAGA Predicate. ....17

3. Epic's Customer Agreements Do Not Support a Labor Code Violation. ....17

4. Hull's Remaining PAGA Predicates Are Deficient On Their Face. ....18

5. Hull's Definition of "Aggrieved Employees" Exceeds the Statute. ....18

6. Hull's LWDA Notice Does Not Support the Representative Relief She Seeks. ....20

7. Hull Offers No Evidence Regarding the Agreements of, or Alleged Harm to, Any Other Employees. ....21

C. Hull Cannot Establish Irreparable Harm. ....21

1. All Alleged Harms Have Been Remedied. ....22

2. Any Residual Harm Is Economic and Compensable by

Damages......22

3. Hull's Delay Confirms There is No Emergency......23

D. The Balance of Equities Favors Defendants......23

E. The Public Interest Does Not Support an Injunction......24

F. Hull's Request for Judicial Notice and a Nominal Bond Should be Denied......25

VI. CONCLUSION......25

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*,
96 F.3d 1390 (Fed. Cir. 1996)....................24

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013)....................8

*Am. Encore v. Fontes*,
152 F.4th 1097 (9th Cir. 2025) ....................6, 7

*Am. Passage Media Corp. v. Cass Comm'ns, Inc.*,
750 F.2d 1470 (9th Cir. 1985) ....................21

*Amato v. Abbott Labs.*,
2026 WL 2725660 (C.D. Cal. Sep. 14, 2026)....................22

*Application Grp. v. Hunter Grp.*,
61 Cal. App. 4th 881 (1998) ....................11

*Arias v. Super. Ct.*,
46 Cal. 4th 969 (2009) ....................10, 13

*Battle v. Taylor James, LLC*,
607 F. Supp. 3d 1025 (C.D. Cal. 2022) ....................15

*Beebe v. Mobility, Inc.*,
2008 WL 474391 (S.D. Cal. Feb. 20, 2008)....................17

*Boardman v. Pac. Seafood Grp.*,
822 F.3d 1011 (9th Cir. 2016) ....................5, 22

*Bresgal v. Brock*,
843 F.2d 1163 (9th Cir. 1987) ....................11

*Brown v. Ralphs Grocery Co.*,
28 Cal. App. 5th 824 (2018) ....................21

*Brown v. TGS Mgmt. Co.*,
57 Cal. App. 5th 303 (2020) ....................15

*Brown ex rel. K.M.K. v. Wash. Interscholastic Activities Assn.*,
2026 WL 2891827 (9th Cir. Sept. 25, 2026) ....................5

*Califano v. Yamasaki*,
442 U.S. 682 (1979)....................11, 12

*Clifford v. Quest Software Inc.*,
38 Cal. App. 5th 745 (2019) ....................12

*Concord Music Grp., Inc. v. Anthropic PBC*,
772 F. Supp. 3d 1131 (N.D. Cal. 2025) ....................22, 24

*Diamond Multimedia Sys., Inc. v. Super. Ct.*,
19 Cal. 4th 1036 (1999) ....................19

*Doe v. Google, Inc.*,
54 Cal. App. 5th 948 (2020) ....................15

*Easyriders v. Hannigan*,
92 F.3d 1486 (9th Cir. 1996) ....................14

*Ehret v. Uber Techs., Inc.*,
68 F. Supp. 3d 1121 (N.D. Cal. 2014) ....................14

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ....................10

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) ....................11

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ....................10

*FBI v. Fikre*,
601 U.S. 234 (2024) ....................8, 9

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ....................7

*Fleming v. Matco Tools Corp.*,
2021 WL 4945190 (N.D. Cal. July 9, 2021) ....................17

*Fox Broad. Co. v. Dish Network LLC*,
747 F.3d 1060 (9th Cir. 2014) ....................22

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ....................8

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) (en banc) ....................5, 15

*Guar. Tr. Co. v. York*,
326 U.S. 99 (1945) ....................12, 16

*Gunther v. Alaska Airlines, Inc.*,
72 Cal. App. 5th 334 (2021) ....................19

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) ....................15, 16

*Hamilton v. Juul Labs*,
2020 WL 5500377 (N.D. Cal. Sep. 11, 2020) ....................17

*Hangarter v. Provident Life and Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ....................10

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*,
736 F.3d 1239 (9th Cir. 2013) ....................22

*Huynh v. Quora, Inc.*,
508 F. Supp. 3d 633 (N.D. Cal. 2020) ....................15

*Ibarra v. Chuy & Sons Labor, Inc.*,
102 Cal. App. 5th 874 (2024) ....................20

*Inari Med., Inc. v. Imperative Care, Inc.*,
806 F. Supp. 3d 937 (N.D. Cal. 2025) ....................21, 22

*Khan v. Coinbase, Inc.*,
115 Cal. App. 5th 518 (2025) ....................12

*Khan v. Dunn-Edwards Corp.*,
19 Cal. App. 5th 804 (2018) ....................20

*Kim v. Reins Int'l Cal., Inc.*,
9 Cal. 5th 73 (2020) ....................16

*Kolani v. Gluska*,
64 Cal. App. 4th 402 (1998) ....................11

*L.A. Press Club v. Noem*,
171 F.4th 1179 (9th Cir. 2026) ....................5, 24

*LaCour v. Marshalls of Cal., LLC*,
94 Cal. App. 5th 1172 (2023) ....................20

*League of Women Voters of Ariz. v. Reagan*,
2018 WL 4467891 (D. Ariz. Sep. 18, 2018) ....................24

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................7

*Luminate Home Loans, Inc. v. Better Mortg. Co.*,
2026 WL 102686 (S.D. Cal. Jan. 14, 2026)....................17

*Maldonado v. Fast Auto Loans, Inc.*,
60 Cal. App. 5th 710 (2021)....................12

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017)....................12

*Mejia v. DACM Inc.*,
54 Cal. App. 5th 691 (2020)....................12

*Mejia v. Merchants Bldg. Maint., LLC*,
38 Cal. App. 5th 723 (2019)....................13

*Murthy v. Missouri*,
603 U.S. 43 (2024)....................6

*O'Connor v. Uber Techs., Inc.*,
58 F. Supp. 3d 989 (N.D. Cal. 2014)....................19

*Oakland Trib., Inc. v. Chron. Publ'g Co.*,
762 F.2d 1374 (9th Cir. 1985)....................23

*Palmer v. Stassinos*,
419 F. Supp. 2d 1151 (N.D. Cal. 2005)....................10

*Ramsey v. Comcast Cable Commc'ns, LLC*,
99 Cal. App. 5th 197 (2023)....................12

*Ree v. Zappos.com, Inc.*,
888 F.3d 1020 (9th Cir. 2018)....................6

*Robinson v. U-Haul Co. of Cal.*,
4 Cal. App. 5th 304 (2016)....................8

*Rosebrock v. Mathis*,
745 F.3d 963 (9th Cir. 2014)....................8

*Ruiz v. Bradford Exch., Ltd.*,
153 F.4th 907 (9th Cir. 2025)....................15

*Sampson v. Murray*,
415 U.S. 61 (1974)....................23

*Scott v. Donald*,
165 U.S. 107 (1897)....................11

*Sierra Forest Legacy v. Rey*,
577 F.3d 1015 (9th Cir. 2009) ........................................................................................5

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........................................................................12, 15, 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)........................................................................................7, 16

*Stanley v. Univ. of S. Cal.*,
13 F.3d 1313 (9th Cir. 1994) ........................................................................................5

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) ........................................................................................14

*Thomas v. Cnty. of L.A.*,
978 F.2d 504 (9th Cir. 1992) ........................................................................................11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................6, 9, 11, 16

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)........................................................................11, 12, 24

*Uribe v. Crown Bldg. Maint. Co.*,
70 Cal. App. 5th 986 (2021) ........................................................................................20

*Wal–Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)........................................................................................10

*Watkins v. MGA Ent., Inc.*,
550 F. Supp. 3d 815 (N.D. Cal. 2021) ........................................................................15

*Winter v. Natural Res. Def. Council*,
555 U.S. 7 (2008)........................................................................................4, 5, 9

*ZB, N.A. v. Super. Ct.*,
8 Cal. 5th 175 (2019) ........................................................................................13

*Zepeda v. INS*,
753 F.2d 719 (9th Cir. 1983) ........................................................................9, 11, 24

**STATUTES**

Cal. Bus. & Prof. Code § 16600 ........................................................................4, 9, 16, 17

Cal. Bus. & Prof. Code § 16600.1 ........................................................................9, 17, 19

Cal. Bus. & Prof. Code § 16600.5 ........................................................................15, 16, 17, 23

Cal. Bus. & Prof. Code § 17200 ....................4, 9

Cal. Civ. Code § 1668....................18

Cal. Civ. Code § 3426....................15, 23

Cal. Civ. Code § 3513....................18

Cal. Lab. Code § 232 ....................4, 18

Cal. Lab. Code § 232.5 ....................4, 18

Cal. Lab. Code § 432.5 .................... *passim*

Cal. Lab. Code § 925 ....................4

Cal. Lab. Code § 1102.5 ....................4

Cal. Lab. Code § 1197.5 ....................4, 18

Cal. Lab. Code § 2698 ....................3, 4

Cal. Lab. Code § 2699 ....................13, 17, 18, 21

Cal. Lab. Code § 2699.3 ....................4

Cal. Lab. Code § 2870-2872....................4

Cal. Lab. Code § 2870 ....................18

**OTHER AUTHORITIES**

California Assembly Bill 1076 ....................3

Fed. R. Civ. P. 19....................24

Fed. R. Civ. P. 65....................13, 24

Webster's Third New International Dictionary of the English Language Unabridged 1819 (Philip Babcock Gove ed., 2002)....................15

# I. INTRODUCTION.[1]

Andrea Hull's Motion for Preliminary Injunction (the "Motion") seeks extraordinary relief without an imminent injury to prevent. As to Hull herself, the restrictions she challenges have already been eliminated and there is no threat of any additional irreparable harm. As to everyone else, she seeks sweeping relief on claims she lacks standing or statutory authority to pursue, on a record that contains no evidence of imminent harm. The Motion fails at every step of the preliminary-injunction analysis.

Hull nonetheless asks the Court to enter an injunction to protect not only herself, but also (1) "any person residing, working, or seeking employment" in California, virtually or in person; (2) any employer headquartered or incorporated in California; and (3) any foreign employer doing business in California. (Dkt. 13, First Am. Compl. ("FAC") ¶ 19; Dkt. 16 at 21–23.) That request would extend California law far beyond the parties, this controversy and, in significant respects, California itself.

Hull needs no injunction. Epic fully complies with California law. Over ten months before Hull filed this suit, Epic notified Hull, as it did every employee living in California, that the noncompete provisions in their employment agreements are void and inapplicable while they reside in California. In September 2026, Epic also waived any restraints on Hull's employment with her current employer, an Epic customer, arising from Epic's license agreement with that customer. On October 1, 2026, before Hull filed this Motion, Epic waived any such restriction as to every Epic customer in California. Hull continues to reside in California and remains employed by her California-based employer without restriction. There is nothing left for an injunction to remedy and no imminent harm, as Hull's six-month delay in seeking injunctive relief confirms.

Hull fares no better in purporting to seek preliminary injunctive relief on behalf of others. As a threshold matter, her four non-PAGA claims cannot support third-party relief because her own claims are moot, and she otherwise lacks Article III standing to assert others' rights. Her PAGA theories, in turn, suffer from additional glaring defects. They rely on a Business and Professions Code provision and customer contracts rather than Labor Code violations; sweep beyond PAGA's

[1] Defendants submit this opposition subject to, and without waiver of, their right to compel arbitration, which is the subject of their concurrently filed Motion to Compel Arbitration and Stay Proceedings. (*See generally* Dkt. 29–32.)

definition of an "aggrieved employee"; exceed the scope of Hull's notice to the Labor and Workforce Development Agency ("LWDA"); and rest on no evidence concerning any other employee's agreement.

Finally, Hull's employment claims are subject to the Mutual Arbitration Agreement she signed with Epic, (*see generally* Dkt. 29–32), which permits resort to court only for "emergency or temporary injunctive relief," after which the parties "are required to submit the dispute to arbitration." (Dkt. 31-1, § IV.) Hull cannot use a belated request for temporary relief to obtain the complete merits ruling she agreed would occur in arbitration. The Court should deny the Motion or, at minimum, hold it in abeyance pending resolution of Defendants' Motion to Compel Arbitration and Stay Proceedings.

## II. STATEMENT OF ISSUES AS REQUIRED BY L.R. 7-4.

(1) Whether a preliminary injunction should issue with respect to Hull's own contracts with Epic;

(2) Whether Hull can appropriately seek a preliminary injunction on behalf of (a) the State and other aggrieved employees, (b) any person residing, working, or seeking employment in California virtually or in person; (c) any employer headquartered or incorporated in California; and (d) any foreign employer doing business in California; and

(3) The appropriate scope of any such preliminary injunction.

## III. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY.

Epic is a Wisconsin healthcare software company that develops and licenses proprietary electronic health records software to customers throughout the United States and around the world. (FAC, ¶¶ 22, 23; *see also* Dkt. 31 ("1st Peterson Decl. ), ¶ 3.) Boost, a wholly owned Epic subsidiary, provides consulting services and staff augmentation on Epic's software to customers nationwide, including to some customers in California. (*Id.*) Epic and its subsidiaries have more than 15,000 employees, most of whom of Epic live within forty-five minutes of, and are based at, Epic's campus in Verona, Wisconsin. (Peterson Decl. filed herewith ("2nd Peterson Decl."), ¶ 3.)

Hull worked for Epic or a subsidiary from October 6, 2014, through March 9, 2026: for the first 10.8 years in Wisconsin, Colorado, Norway, and England, and for the last seven months in a Boost role in California. (1st Peterson Decl., ¶ 4; *see also* FAC, ¶¶ 6, 37, 38, 41, 56.) As a condition

of that Boost transfer, Hull signed a Boost Employment Agreement by DocuSign on June 19, 2025[2] containing covenants not to compete in Section 4, which may be waived by "written exception from an Epic HR director." (Dkt. 18, Hull Decl., ¶¶ 30–31; Dkt. 18-2, § 4.)

On September 30, 2025—ten months before this action was filed—Epic notified Hull that because of California Assembly Bill 1076, the noncompete provisions in her employment and stock agreements "are void and will not apply to you as long as you live in California." (2nd Peterson Decl., ¶ 4, Ex. A.) This message was consistent with a written exception contemplated in the employment agreement. Between June and September 30, 2025, Epic sent this same email to every Boost or Epic employee working and living in California, fewer than 60 such employees (or less than 4/1000 of Epic's employee base). (*Id.*) Epic therefore conveyed to Hull and the other employees to whom it sent the notification that Epic deemed void the restrictions in the covenant not to compete section of the Employment Agreement. (*Id.* ¶ 5.) Epic's records show that the notification was sent to Hull, and there is no indication that she ever inquired about whether, or to what extent, the email applied to her employment agreement. (*Id.* ¶¶ 4–6)

Hull resigned from Boost on March 9, 2026, and on March 23 began work at Abbott Diabetes Care ("Abbott"), an Epic customer in California, in a role involving Epic software. (Hull Decl., ¶¶ 2, 36–37.) She claims that in late March 2026, Epic's UserWeb Support services denied her application for UserWeb access and that, on April 7, 2026, an Abbott program manager informed her that she "should not be working on Epic direct, related work for 12 months." (*Id.* ¶¶ 40–41.)

On June 10, 2026, Hull sent the LWDA a notice under the Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698 *et seq.* ("PAGA"), asserting individual and representative claims for alleged Labor Code violations, including that Epic's employment agreements violated the Code. (FAC, ¶ 9.)

From the time that she contends that her activities at Abbott were restricted due to Epic's noncompete restrictions, Hull waited four months to file her original July 24, 2026, complaint, alleging four individual claims: (1) that the restrictive covenants in her employment agreements

[2] Hull also signed the Arbitration Agreement, the terms of which are addressed in Defendants' Brief in Support of Motion to Compel Arbitration and Stay Proceedings. (Dkt. 30, at 8–9.)

violate Cal. Bus. & Prof. Code §§ 16600-16600.5; (2) that the hiring restrictions in Epic's customer license agreements violate the same provisions; (3) that the restrictions in Epic's employment and customer agreements, the limits on her Abbott opportunities, and the denial of UserWeb access, violated Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL"); and (4) for a declaration that Epic's employment restraints violate California law. (Dkt. 1, Compl., ¶¶ 64–83.) Her original complaint did not include the PAGA claims from the June 10th LWDA notice.

On July 31, 2026, Epic sent additional emails to the employees who were sent emails in 2025, including Hull, clarifying that the void noncompete provisions include those in agreements with any Epic subsidiary, including Boost, and that "[t]his was always Epic's intention." (2nd Peterson Decl., ¶ 7, Ex. A.)

On September 14, 2026, Epic advised Abbott that Epic did not object to UserWeb access for Hull and waived any restriction on Hull's employment with Abbott under their license agreement. (*Id.*, ¶ 8, Ex. B.) Hull concedes that on September 18, her Abbott manager said he would involve her in Epic-related work, and that Epic approved her UserWeb access on September 28. (Hull Decl. ¶ 55.)

On October 1, 2026, Epic informed Hull that Epic and its subsidiaries waived any no-hire, waiting-period, or other license-agreement restriction on her employment with any Epic customer in California; that she could share the email with any such customer; and that Epic would not deny UserWeb access based on the waived restrictions. (2nd Peterson Decl., ¶ 9, Ex. C.)

Although she could have added her PAGA claims as early as August 15, 2026, sixty-five days after she submitted her LWDA notice (Cal. Lab. Code § 2699.3(a)(2)(A)), she again delayed more than six weeks before filing her first amended complaint on October 3, 2026, in which she added four PAGA claims for alleged violations of Lab. Code §§ 432.5, 232, 232.5, 925, 1102.5, 1197.5, 2870–2872, and 2698 *et seq.*, brought "on behalf of herself, the State of California, and other aggrieved current and former employees." (FAC, ¶¶ 19, 107–126.) She filed the Motion the next day.

## IV. LEGAL STANDARD.

Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555

U.S. 7, 22 (2008) (vacating injunction). The plaintiff must establish that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Id.* at 20.

"The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (quoting *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009)). An injunction that "goes well beyond simply maintaining the status quo" is a "mandatory injunction" and "is particularly disfavored." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal citations omitted)).

Because much of what Hull seeks is mandatory—orders requiring Epic to send notices, withdraw statements, and alter its contracts with non-parties (*see* FAC, ¶ 102; Dkt. 16 at 21–23)—she must show "that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Id.* (emphasis in original). Such relief is not granted unless extreme or very serious damage will result, and not in doubtful cases. *Brown ex rel. K.M.K. v. Wash. Interscholastic Activities Assn.*, __ F.4th __, 2026 WL 2891827, at *1 (9th Cir. Sep. 25, 2026), *appeal filed*, No. 26A458 (U.S. Oct. 6, 2026).

## V. LEGAL ARGUMENT.

Hull cannot satisfy any of the *Winter* factors. *Winter*, 555 U.S. at 20. For the reasons explained below, she is unlikely to succeed on her non-PAGA claims (Section V.A) or her PAGA claims (Section V.B), and she fails to establish irreparable harm (Section V.C), favorable equities (Section V.D), or that the public interest supports an injunction (Section V.E). Her requests for judicial notice and a nominal bond should also be denied (Section V.F).

### A. Hull Is Unlikely to Succeed on the Merits of Her Non-PAGA Claims.

The Court should deny the Motion as to the First through Fourth Causes of Action at the outset, without reaching the remaining *Winter* factors, because Hull has not shown a likelihood of success on the merits. *Garcia*, 786 F.3d at 740.

#### 1. Hull Lacks Standing to Seek Injunctive Relief for Herself.

A plaintiff's "first hurdle on likelihood of success on the merits is standing." *L.A. Press Club*

*v. Noem*, 171 F.4th 1179, 1187 (9th Cir. 2026). At this stage, she must make a "clear showing" that she is likely to establish (1) an injury in fact, (2) fairly traceable to the defendant's challenged conduct, (3) that is likely to be redressed by a favorable decision. *Am. Encore v. Fontes*, 152 F.4th 1097, 1110 (9th Cir. 2025). "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). For prospective relief, the threatened injury must be "certainly impending," or there must be a "substantial risk that the harm will occur," *Id.* at 1111 (quoting *Ree v. Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018)), supported by evidence that the defendant's wrongful behavior "w[ould] *likely* occur or continue." *Id.* at 1111–12 (quoting *Murthy v. Missouri*, 603 U.S. 43, 69 (2024)) (emphasis in original). Hull fails each element.

First, Hull makes no clear showing of actual or imminent injury. Her asserted injuries lie in the past: that she chose not to apply to Epic customers and consultants during her winter 2025–26 job search (Hull Decl. ¶¶ 33–35), that Epic denied her UserWeb access in March 2026, and that Abbott then limited her Epic-facing duties. (FAC, ¶¶ 54, 57–63.) But "past injuries are relevant only for their predictive value." *Am. Encore*, 152 F.4th at 1112 (quoting *Murthy*, 603 U.S. at 59). And the record forecloses any prediction of recurrence: Epic has repeatedly confirmed in writing that Hull's noncompete provisions are void while she lives in California; waived every Abbott license-agreement restriction as to her and approved her UserWeb access on September 28, 2026; and waived any license-agreement restriction on her employment with any Epic customer in California. (2nd Peterson Decl. ¶¶ 4–9, Ex. A–C.) Epic has not threatened Hull with future restrictions; quite the opposite, it has disavowed, in writing, the very restrictions on which her claim rests. Indeed, Hull nowhere claims that she applied for, and was rejected from, any position after Epic's waivers.

What remains is speculation—a chain in which "too many hypothetical wrongs must occur" to create a substantial risk of harm, *Am. Encore*, 152 F.4th at 1113—that an unidentified prospective employer will want to hire her; that it is an Epic customer, consultant, or partner outside Epic's waivers; that the employer will invoke a provision Epic has not enforced against her; and that Epic will repudiate its written commitments voiding her post-employment restraints. Hull identifies no such employer to which she has applied, much less been rejected. (*See* Hull Decl. ¶¶ 33–34.)

Hull's theory that she is injured by restraints in *other people's* contracts—former coworkers' agreements and Epic's nationwide customer, consultant, and partner[3] agreements—also fails the particularization requirement. An injury must affect the plaintiff in a personal and individual way. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Her "distorted market," in which "[e]very former colleague is bound" and every employer "holds an Epic contract," is an industry-wide grievance, not a personal harm. (Dkt. 16, Inj. Mot., at 13–14, 22.) And the mere existence of contract terms Hull believes void, untethered to any actual or imminent enforcement against her, is the type of bare statutory violation, divorced from concrete harm, that *Spokeo* holds insufficient. 578 U.S. at 341.

Second, Hull fails to show that any future injury "likely…will be caused by the defendant." *Am. Encore*, 152 F.4th at 1110 (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024)); *Spokeo*, 578 U.S. at 338. Her theory depends on the independent choices of unidentified third parties—prospective employers that might disregard Epic's waivers or whose "recruiting software" might screen out her résumé. (FAC, ¶ 76; Dkt. 16, at 13–14, 18.) She offers no evidence that any employer has acted, or will act, on any Epic restriction since the waivers. Such an injury is not fairly traceable to Epic. *See Am. Encore*, 152 F.4th at 1111.

Finally, Hull fails to show that her injury "likely would be redressed by the requested judicial relief." *Am. Encore*, 152 F.4th at 1110 (quoting *All. for Hippocratic Med.*, 602 U.S. at 380). Epic has already done everything an injunction could do for her individually: declared her noncompete provisions void, waived customer no-hire and waiting-period provisions as to her, and granted her UserWeb access. The rest of her requested relief—barring enforcement of any "employment restraint" against everyone living, working, or seeking work in California and every employer doing business there (Dkt. 16 at 2; FAC, ¶ 102)—would redress no injury personal to her. Relief that "no more directly and tangibly benefits [the plaintiff] than it does the public at large" does not present an Article III case or controversy. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–74 (1992).

Absent standing, Hull cannot show a likelihood of success on her non-PAGA claims, for herself or for others, and her Motion fails without further inquiry.

[3] For that matter, Hull has not introduced any consultant or partner agreements, which makes this entire argument underdeveloped.

### 2. Epic's Written Commitments Moot Hull's Individual Request.

A defendant's voluntary cessation of the challenged conduct on a preliminary injunction motion moots the dispute if the defendant shows the conduct cannot reasonably be expected to recur. *Rosebrock v. Mathis*, 745 F.3d 963, 970 (9th Cir. 2014); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Hull's request for individual relief is moot because Epic voided her noncompete provisions ten months before this action was filed and waived any customer-agreement restriction as to her. To remove any doubt, Epic repeats what it has already told Hull and hereby stipulates that while she remains in California: (i) the noncompete provisions in Section 4 of Hull's Epic and Boost agreements are void and will not be enforced against her, and (ii) Epic waives, and will not enforce, any no-hire, waiting-period, or similar provision in any customer agreement as to Hull.

A covenant that is "unconditional and irrevocable," that reaches beyond the plaintiff's own agreements, and that covers future as well as past conduct satisfies even the "formidable burden" of the voluntary-cessation doctrine. *See Already*, 568 U.S. at 91, 93 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). It then becomes "incumbent on [the plaintiff] to indicate that it engages in or has sufficiently concrete plans to engage in activities" not covered. *Already*, 568 U.S. at 94. Epic's commitments—which run to Hull and to every California customer that might employ her—meet that standard, and Hull identifies no concrete plan to seek work outside their scope. (Hull Decl. ¶¶ 33–34.) Nor can her fallback theory—that others may act on conjecture—establish concrete Article III injury.

Hull's reliance on *Robinson v. U-Haul Co. of Cal.*, 4 Cal. App. 5th 304 (2016), is misplaced. (Dkt. 16 at 15.) That state-court decision affirmed a *permanent* injunction against persistent anticompetitive conduct and rejected mootness under California's public-interest exception—a state-law doctrine that does not govern Article III mootness. *Robinson*, 4 Cal. App. 5th at 316–17. The court's concern was that U-Haul, offering only an individual exception and a counsel declaration, had not legally bound itself to a violation-free future. *Id.* Epic has done precisely that through the stipulation above, so *Robinson* confirms that recurrence cannot reasonably be expected.

*FBI v. Fikre*, 601 U.S. 234 (2024), is likewise inapposite. The government's declaration there

addressed only past conduct and left open relisting the plaintiff for similar future conduct. *Id.* at 242–44. Epic's commitments waive the restrictions prospectively for as long as Hull lives in California. *Fikre* also arose on a motion to dismiss with the burden on the defendant; here, Hull, as movant, must make a clear showing of likely future injury. *Winter*, 555 U.S. at 22.

Nor do the pre-waiver communications Hull labels "enforcement mechanisms" (Dkt. 16 at 17–18) supply a live injury. Each—the March 2026 annex update and Departure FAQ, the departure acknowledgment form, the April 28, 2026, HR email, the UserWeb denial, and the Abbott communications—predated Epic's September 14 letter and October 1 waiver. (Hull Decl. ¶¶ 39–44, 55, 66, Exs. 4–6, 11–12, 14; Dkt. 17-1.) Hull identifies no post-October 1 conduct by Epic asserting any restraint against her. And her characterization of the October 1 email as a "permission slip" (Dkt. 16 at 20–21) is answered by Epic's stipulation, above. *Cf. Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983) (burden of compliance falls on the enjoined party).

Hull's remaining objections—that the waivers do not reach her confidentiality covenant, Epic's consultants and partners, out-of-state customers, or other employees' agreements—fail for the reasons in Sections V.A.3–V.A.5 and V.B, *infra*. Hull cannot show a clear, immediate need for a mandatory preliminary injunction.

### 3. Hull Cannot Obtain Relief for Other Epic Employees, All California Workers, or All California Employers.

Hull's request to extend relief to Epic's other employees, every California worker, and California and foreign employers fails because she lacks standing to seek relief for others, federal courts may not issue universal injunctions, state public-injunction doctrine cannot enlarge that authority, and the requested relief is too indefinite to enforce.

#### (a) Hull Lacks Standing to Seek Relief for Others.

Even if Hull had standing for herself, she would need to establish it separately for others, because standing "is not dispensed in gross" and must be shown "for each claim" and "each form of relief." *TransUnion*, 594 U.S. at 431.

Hull's First through Fourth Causes of Action seek relief on behalf of others under Cal. Bus. & Prof. Code §§ 16600, 16600.1, and 16600.5 and §17200 *et seq.*, asking the Court to bar

enforcement of the challenged provisions against anyone living, working, or seeking work in California and any employer based or doing business there, and attacking Epic's alleged policy of imposing restraints on all other employees. (FAC, ¶¶ 89–90, 95, and 102, Prayer for Relief ¶ 2.) But Hull does not plead a class action. Having elected not to plead class claims, she cannot obtain class-wide injunctive relief. Further, the California Supreme Court has held that any representative action under the UCL must meet class action prerequisites. *Arias v. Super. Ct.*, 46 Cal. 4th 969, 980 (2009); *Palmer v. Stassinos*, 419 F. Supp. 2d 1151, 1154 (N.D. Cal. 2005) (Post-2004, the UCL "allows representative actions for injunctive relief only if a claimant meets the section's standing requirements and the class being represented meets the California class action lawsuit standards").

Moreover, as a former employee, Hull lacks Article III standing to challenge Defendants' employment practices. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011) ("plaintiffs no longer employed by [a defendant] lack standing to seek injunctive or declaratory relief against its employment practices"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011); *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1021–22 (9th Cir. 2004).

Finally, the enforceable class and collective action waiver in her Arbitration Agreement ***bars*** class relief. (1st Peterson Decl., Ex. A, § II.) The Federal Arbitration Act ("FAA") requires courts to enforce such waivers according to their terms, including in the employment context. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502, 524–25 (2018).

Hull likewise lacks standing on her theory that restraints on *other people*—colleagues who might refer her, references who might vouch for her, and customers who might hire her[4]—shrink the market for her skills. (Hull Decl. ¶¶ 59–65.) As shown *supra* Section V.A.1, that injury is not particularized, and she concedes it does not depend on any restraint that still applies to her: "[h]er own restraints could be waived tomorrow and the market would be the same market." (Dkt. 16 at 22.) It also rests on her prediction that former colleagues "will not put their own standing with Epic at risk" by recruiting her. (Hull Decl. ¶ 60.) That generalized, attenuated effect is not a concrete and particularized injury redressable by an injunction directed at other people's contracts. *See*

[4] The speculative nature of the assertion that customers may not want to hire her is shown by Abbott's hiring of her almost immediately after she left Boost.

*TransUnion*, 594 U.S. at 431.

**(b) Federal Courts May Not Issue the Universal Relief Hull Seeks.**

Even if Hull had standing, a federal court may grant only relief "necessary to provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). "[T]he question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id.* at 852 (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). That rule is not new: courts have long limited such decrees to "the parties named as plaintiff and defendants in the bill." *Id.* at 843 (quoting *Scott v. Donald*, 165 U.S. 107, 115–17 (1897)). Hull's insistence that relief must reach "the people around her" (Dkt. 16 at 22) is exactly the argument *CASA* rejects.

Hull's principal scope authorities confirm the rule. (Dkt. 16 at 20–22.) *Easyriders v. Hannigan* recognized that "injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification," and approved statewide relief only after final judgment on a "fully defined record" establishing "clear" ongoing wrongful conduct. 92 F.3d 1486, 1500–02 (9th Cir. 1996) (quoting *Thomas v. Cnty. of L.A.*, 978 F.2d 504, 509 (9th Cir. 1992)). *Bresgal v. Brock*, 843 F.2d 1163 (9th Cir. 1987), involved a final declaratory judgment and expressly distinguished preliminary injunctions: "[w]here relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown." *Id.* at 1169–71 (distinguishing *Zepeda*, 753 F.2d at 727–28 & n.1, as limited to the preliminary-injunction context). Here, the Motion is preliminary, there has been no merits adjudication, and relief can be structured individually.

Hull's other scope cases are further afield. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023), affirmed a *permanent* injunction after a bench trial in which a competitor proved injury from a rule Apple actively enforced against every developer; here there has been no trial, Hull is not Epic's competitor, and Epic has disavowed the restrictions as to her. *Application Grp. v. Hunter Grp.*, 61 Cal. App. 4th 881 (1998), was a declaratory-judgment action by an employer that had itself hired the restricted consultant, not a preliminary injunction obtained by one employee for an entire labor market. *Kolani v. Gluska*, 64 Cal. App. 4th 402 (1998), addressed whether an employer could enforce

a void covenant; its observation that many employees honor such clauses without consulting counsel does not license a federal court to adjudicate the contract rights of thousands of non-parties. And *Califano*, 442 U.S. 682, on which Hull relies for "complete relief," is the authority on which *CASA* rests in limiting relief to "the plaintiffs before the court." *CASA*, 606 U.S. at 852.

**(c) Hull Cannot Save Her Non-PAGA Claims By Casting Them as Claims for Public-Injunctive Relief.**

Hull's reliance on *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), and California public-injunction practice does not change this analysis. (Dkt. 16 at 14.) That a state may authorize its own courts to grant broader equitable relief "cannot remove th[at] fetter[] from the federal courts." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840–42 (9th Cir. 2020) (quoting *Guar. Tr. Co. v. York*, 326 U.S. 99, 105–06 (1945)); *see CASA*, 606 U.S. at 851–52. And *McGill* would not apply on its own terms. Relief aimed at "an individual plaintiff—or . . . a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 754 (2019) (quoting *McGill*, 2 Cal. 5th at 955). The current and former employees allegedly subject to the "same" agreements are similarly situated to Hull.

California authorities confirm that Hull seeks private relief. Public injunctive relief "is not limited to the plaintiff or a defined group, but is oriented to and for the benefit of the public at large." *Khan v. Coinbase, Inc.*, 115 Cal. App. 5th 518, 527 (2025). Relief with "the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief"; it resolves a private dispute and benefits the public, if at all, only incidentally. *Ramsey v. Comcast Cable Commc'ns, LLC*, 99 Cal. App. 5th 197, 204–05 (2023) (quoting *McGill*, 2 Cal. 5th at 955). The public-injunction cases each involved an open-ended class of current and future consumers. *See Mejia v. DACM Inc.*, 54 Cal. App. 5th 691, 702–04 (2020) (barring dealership from violating financial-disclosure law in future customer transactions); *Maldonado v. Fast Auto Loans, Inc.*, 60 Cal. App. 5th 710, 720–22 (2021) (barring ongoing unlawful lending practices); *Ramsey*, 99 Cal. App. 5th at 212 (barring deceptive conduct benefiting current and future subscribers); *Coinbase*, 115 Cal. App. 5th at 527 (barring practices misleading members of the public who buy, sell, or convert digital currency). Hull's requested relief,

by contrast, targets Epic's own agreements and the defined group of current and former employees, customers, and business partners who are parties to them—persons similarly situated to Hull or in privity with Epic, not the consuming public.

Nor can Hull recast that relief as public through PAGA. Although no court appears to have addressed public injunctive relief in a PAGA case, courts distinguish the two: "a plaintiff who brings a single PAGA claim always acts in one capacity—as the proxy or agent of the state," and a PAGA action is "fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *Mejia v. Merchants Bldg. Maint., LLC*, 38 Cal. App. 5th 723, 740 (2019) (quoting *Arias*, 46 Cal. 4th at 986), *disapproved of on other grounds by ZB, N.A. v. Super. Ct.*, 8 Cal. 5th 175, 196 n.8 (2019). PAGA's injunctive remedy is governed by its own terms, which limit relief to "other current or former employees against whom a violation of the same provision was committed." Cal. Lab. Code § 2699(k)(1). Any PAGA relief must satisfy those limits, *see infra* Section V.B, and cannot expand her UCL claim into a public injunction.

**(d) Hull's Requested Relief Is Too Indefinite to Enforce.**

Hull's request is also too indefinite to enforce: it does not define "employment restraint," who is "seeking employment . . . on a virtual . . . basis" in California, or which "foreign employer[s] doing business in California" are covered. (Dkt. 16 at 21–23.) *See* Fed. R. Civ. P. 65(d)(1). Rather than seek a provision-specific injunction, Hull treats noncompete clauses, non-solicitation provisions, confidentiality covenants, UserWeb access, customer-license terms, and unspecified other provisions as a single "wrap-around" restraint, then asks the Court to bar its enforcement against vast categories of persons and businesses. But the statute does not void every employment-related confidentiality, information-use, customer, or business-to-business provision on its face; it voids a contract only "to that extent" that it restrains lawful professional, trade, or business activity. That inquiry cannot be resolved by attaching a single label to materially different terms.

The defect is especially significant because the Motion would govern agreements involving absent customers, consultants, partners, employees, and prospective employers. Hull has not shown that every covered provision is void, that every agreement is being enforced against her, or that every covered person or business is situated as she is—and her own papers acknowledge Epic's

confirmation, waivers, and approval of her UserWeb access. She therefore has not shown that the law and facts clearly favor the categorical, mandatory injunction she requests; at minimum, its scope and effect present substantial, unanswered factual and legal questions.

**4. Contracts to Which Hull Is Not a Party Do Not Restrain Her.**

The customer, consultant, and out-of-state provisions Hull attacks fail for additional reasons.

*First*, Hull has not applied to the employers she says are foreclosed. Indeed, she "did not pursue" health-system positions and "did not apply" to consulting firms. (Hull Decl. ¶¶ 33–34.) And Epic has now waived any California customer no-hire or waiting-period restriction as to her. (*Id.* ¶ 66, Ex. 14.)

*Second*, Hull has not shown that California law reaches agreements between Epic and out-of-state customers governing non-California work; her theory that she might someday serve such customers remotely from Concord is hypothetical. (Hull Decl. ¶ 66.) Applying California law to contracts between non-California parties concerning non-California work also raises serious extraterritoriality concerns, as California presumes that the Legislature did not intend a statute to operate outside the state unless that intention is clearly expressed or reasonably inferred from the statute's language, purpose, subject matter, or history. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011); *see Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1130–31 (N.D. Cal. 2014) (describing the "strong presumption against the extra-territorial application of California law"). Section 16600.5(a) does not resolve the question: it renders unenforceable contracts already "void under this chapter" and does not purport to void agreements between an out-of-state vendor and out-of-state customers concerning out-of-state work. Hull identifies no such agreement invoked against her, no out-of-state customer to which she has applied, and no concrete plan to serve one. A theory resting on that hypothetical, and on an unsettled extension of California law beyond its borders, cannot supply the clear showing required for preliminary relief.

**5. Hull Has Not Shown That Epic's Confidentiality Covenant Is Void.**

Hull's challenge to the confidentiality covenant—her so-called "forever restraints" (Dkt. 16 at 16–17)—lacks merit. Section 2 of the Boost Employment Agreement protects "trade secrets and proprietary information," including source code, system design, pricing, and customer data. (Dkt. 18-

2, § 2.) California continues to protect trade secrets. *See* Cal. Civ. Code § 3426 *et seq*. The authorities Hull invokes addressed provisions that, as alleged or proven, operated as de facto noncompetes or barred employees from disclosing wages or unlawful conduct[5]; neither decided that an employer's protection of confidential business information is void on its face. *See Doe v. Google, Inc.*, 54 Cal. App. 5th 948 (2020) (pleading-stage ruling); *Brown v. TGS Mgmt. Co.*, 57 Cal. App. 5th 303 (2020). Whether any particular term of Section 2 sweeps beyond protectable information is a provision-specific question, and Hull offers no evidence that Epic has ever invoked Section 2 to restrict her employment, her recruiting, or her discussion of wages or working conditions. (*See* Hull Decl. ¶¶ 59–65.) That is not the clear showing mandatory relief requires. *Garcia*, 786 F.3d at 740.

**6. Hull Has an Adequate Remedy at Law, Which Forecloses Equitable Relief on Her UCL Claim.**

Hull's UCL claim fails at the threshold: she has an adequate remedy at law under section 16600.5(e), and because the Ninth Circuit has held this objection waivable, Defendants raise that objection now to preserve it. *Ruiz v. Bradford Exch., Ltd.*, 153 F.4th 907, 915–16 (9th Cir. 2025), *cert. denied,* 146 S. Ct. 2605 (2026). In a diversity action, "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply" to UCL claims. *Sonner*, 971 F.3d at 844. A plaintiff with an adequate legal remedy cannot invoke equitable jurisdiction even if she has chosen not to pursue it. *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312–13 (9th Cir. 2022). Courts in this District and elsewhere accordingly apply *Sonner* to UCL claims for injunctive relief. *See Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 837–38 (N.D. Cal. 2021) (dismissing UCL claims for injunction and restitution; collecting cases holding that *Sonner* does not create an exception for injunctions as opposed to other forms of equitable relief); *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) (dismissing UCL claim seeking injunctive relief where the potential harm may be remedied by money damages); *Battle v. Taylor James, LLC*,

[5] "Proprietary" is unambiguous and means "of, relating to, or characteristic of an owner." *See* Webster's Third New International Dictionary of the English Language Unabridged 1819 (Philip Babcock Gove ed., 2002). It clearly does not cover things like an employee's wages or working conditions, which are not information owned by Epic.

607 F. Supp. 3d 1025, 1052 (C.D. Cal. 2022) ("[T]he logic of *Sonner* [applies] to claims for injunctive relief, another equitable remedy.").

The same principle governs Hull's request for an injunction under Section 16600.5(e), which supplies Hull's legal remedy: "the recovery of actual damages," plus mandatory attorney's fees. Cal. Bus. & Prof. Code § 16600.5(e)(1)–(2). Hull alleges lost compensation, benefits, and professional opportunities—precisely the harms a damages award compensates—and the First Amended Complaint does not plead that this remedy is inadequate. (FAC, ¶ 101.) That the Legislature authorized injunctive relief in that statute does not relieve Hull of the federal requirement, because a state's authorization of equitable relief "cannot remove th[at] fetter[] from the federal courts." *Sonner*, 971 F.3d at 843–44 (quoting *York*, 326 U.S. at 105–06). Hull, who seeks the same compensation for the same lost opportunities through damages and fees, has not explained "how the same amount of money for the exact same harm is inadequate or incomplete." *Id.* at 844.

The UCL claim therefore cannot support a preliminary injunction, and any dismissal on this ground would be without prejudice. *Guzman*, 49 F.4th at 1313–15.

### B. Hull Cannot Establish a Likelihood of Success on Her PAGA Claims.

#### 1. Hull's Individual PAGA Claim for Injunctive Relief is Moot.

As explained *supra* Section V.A.2, Hull's individual request for injunctive relief is moot; because her individual PAGA claim rests on the same theories, it is likewise moot. (Dkts. 17-1, 18-7, 18-14.) The provisions she challenges have been voided or waived as to her.

Hull invokes *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 84 (2020), for the proposition that PAGA standing turns on "the fact of the violation," so Epic cannot moot a representative claim by accommodating the representative. (Dkt. 16 at 15.) But *Kim* construed PAGA's *statutory* standing requirement in state court; it cannot relieve a federal plaintiff of Article III's independent requirement that she show her own concrete and particularized injury for each form of relief. *Spokeo*, 578 U.S. at 339; *TransUnion*, 594 U.S. at 431. State law may define who may sue as the State's proxy, but it cannot create an Article III case or controversy where the representative faces no actual or imminent injury that a federal injunction would redress.

**2. Section 16600 Cannot Serve as a PAGA Predicate.**

Only Labor Code violations can support a PAGA claim, and section 16600 appears in the Business and Professions Code. Hull cannot bootstrap it into PAGA through Lab. Code § 432.5.

Federal district courts in California have repeatedly held that "Section 16600 cannot be the predicate for a Labor Code section 432.5 violation because Section 16600 makes the provision void rather than prohibited by law . . ." whereas Labor Code section 432.5 prohibits employers from requiring employees to sign an agreement that is "unlawful." *Hamilton v. Juul Labs*, 2020 WL 5500377, at *7 (N.D. Cal. Sep. 11, 2020). *See also Luminate Home Loans, Inc. v. Better Mortg. Co.*, 2026 WL 102686, *8–9 (S.D. Cal. Jan. 14, 2026) (dismissing claim under Section 432.5 based on alleged unenforceable noncompete and non-solicitation provisions because Section 16600 makes such agreements void but not unlawful); *Beebe v. Mobility, Inc.*, 2008 WL 474391, at *3 (S.D. Cal. Feb. 20, 2008) (granting motion to dismiss a claim under Section 432.5 where the underlying term was void but not unlawful); *Fleming v. Matco Tools Corp.*, 2021 WL 4945190, at *5 (N.D. Cal. July 9, 2021) ("Section 16600 does not 'prohibit' or 'forbid [employers and employees] by law' from entering into non-competes; it provides that, when they do, the offending provision is 'of no legal effect.'") (quoting Black's Law Dictionary (11th ed. 2019)).[6]

Hull cannot prevail on her PAGA claim to the extent premised on alleged violations of Cal. Bus. & Prof. Code § 16600.

**3. Epic's Customer Agreements Do Not Support a Labor Code Violation.**

Hull's customer-contract theory fails under PAGA for an additional, independent reason. PAGA reaches violations committed by an "alleged violator" against persons it "employed." Cal. Lab. Code § 2699(c)(1). Epic's license agreements are contracts between Epic and its customers; no employee is a party to them, and no employee is required to agree to them in writing as a condition of employment. (Dkt. 17, ¶ 8, Exs. 7–11; Dkt. 17–7 through 17–11.) They therefore cannot be a term

[6] Plaintiff's Motion argues that non-competes are unlawful under Section 16600.1. (Dkt. 16, at 18:14–15.) But that provision only makes the employer's conduct unlawful—the clause or agreement itself remains only void under Section 16600(a). Section 16600.1(c) confirms this by further providing that "[a] violation of this section constitutes an act of unfair competition"—not an unlawful business practice—under the UCL. *See* Cal. Bus. & Prof. Code §§ 16600(a) (referring to barred noncompete agreements as "void"); 16600.5 (same).

an employer "require[d]" an employee to agree to under Section 432.5, and Hull identifies no other Labor Code provision they violate. Any challenge to those agreements arises, if at all, under the Business and Professions Code, which PAGA does not enforce. *See supra* Section V.B.2.

**4. Hull's Remaining PAGA Predicates Are Deficient On Their Face.**

*First*, Hull's anti-gag predicates under Labor Code sections 232, 232.5, and 1197.5(k) (Dkt. 16 at 17) fail. Those statutes bar an employer from requiring an employee to refrain from disclosing wages or working conditions. Section 2 of the Boost Employment Agreement is directed at trade secrets and proprietary business information, not an employee's own wages or working conditions (Dkt. 18-2, § 2), and Hull identifies no instance in which Epic invoked it to restrict such disclosures. At a minimum, whether Section 2 reaches protected wage and working-condition information is a contested question of contract interpretation that cannot support a clear showing on a preliminary record.

*Second*, Hull's Seventh Claim for Relief challenges an invention-assignment clause that reaches only works generated in conjunction with assigned work, using Epic Group facilities or computers, and inventions made "in the course of your duties." (Dkt. 18-2, § 3.) Those categories track the exceptions to Labor Code section 2870(a), making the clause legal.

*Third*, Hull's Eighth Claim for Relief challenges the Arbitration Agreement's representative-action waiver under Civil Code sections 1668 and 3513, which are not Labor Code provisions. (FAC, ¶ 125.) *See* Cal. Lab. Code § 2699(a). As explained in Defendants' Motion to Compel Arbitration, the definition of covered claims excludes matters that cannot be compelled to arbitration as a matter of law and contains a severability clause. (Dkt. 30, at 3:7–8.) The Arbitration Agreement, moreover, routes representative claims to court if the waiver is unenforceable. (1st Peterson Decl., Ex. A, § XI.)

**5. Hull's Definition of "Aggrieved Employees" Exceeds the Statute.**

Hull's PAGA claims also reach far beyond the persons the statute permits her to represent. An "aggrieved employee" is a person who (1) was employed by the alleged violator, (2) personally suffered each violation alleged, and (3) suffered those violations within the one-year limitations period applicable to penalty actions under Civ. Proc. Code § 340. *See* Cal. Lab. Code § 2699(c)(1). Because the definition is anchored to employment, non-employees fall outside it entirely. Hull

nonetheless seeks PAGA relief governing Epic's customers, consultants, partners, and prospective employers, none of which is an employee of Epic or Boost. (FAC, ¶¶ 102, 111; Dkt. 16 at 21–23.) PAGA supplies no basis for relief on their behalf.

Hull's definition also sweeps in employees who did not work in California. The FAC defines the aggrieved employees as all current and former employees of Defendants and the Epic Group who "resided in California or worked in California — whether virtually or in person." (FAC, ¶ 111.) But California presumes that its statutes do not operate outside the State. *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1059 (1999). "The structure and history of the Labor Code, therefore, reinforce the presumption against extraterritoriality." *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1006 (N.D. Cal. 2014).

PAGA has no extraterritoriality analysis of its own; the court instead asks whether the underlying Labor Code provision reaches the conduct at issue. *Gunther v. Alaska Airlines, Inc.*, 72 Cal. App. 5th 334, 344 (2021). Hull has not shown that the provisions on which she relies—including Labor Code section 432.5 and, through it, Business and Professions Code section 16600.1(a)—extend to employees who reside or primarily work outside California, and no authority squarely so holds. Courts applying the underlying-provision inquiry have declined to extend Labor Code protections to work with a limited California nexus. In *Oman v. Delta Air Lines, Inc.*, the court refused to apply certain Labor Code requirements to California-resident flight attendants who spent 14% or less of their time in California, worked for an employer not based in California, and worked in multiple jurisdictions within a single pay period or day. 230 F. Supp. 3d 986, 993 (N.D. Cal. 2017). And in *Shook v. Indian River Transp. Co.*, a PAGA action, the court held that California's wage and rest-break laws did not apply to the drivers' work outside California and entered judgment for the employer on all causes of action for that work. 236 F. Supp. 3d 1165, 1172 (E.D. Cal. 2017).

Epic is headquartered in Wisconsin, and Hull herself spent the vast majority of her tenure outside California. (Hull Decl. ¶¶ 2–3.) Whether the Labor Code provisions Hull invokes reach Epic employees who merely "worked in California . . . virtually," or who resided in California while working primarily elsewhere, is at minimum an unsettled question that would have to be resolved employee by employee. Such a claim cannot support a mandatory preliminary injunction on behalf

of an undefined, multistate group of employees.

**6. Hull's LWDA Notice Does Not Support the Representative Relief She Seeks.**

Hull's LWDA notice also does not support the representative relief she now seeks. Defendants acknowledge that PAGA's notice requirement is not "particularly stringent" and that a notice need not formally define the "aggrieved employees." *Ibarra v. Chuy & Sons Labor, Inc.*, 102 Cal. App. 5th 874, 882–83 (2024); *LaCour v. Marshalls of Cal., LLC*, 94 Cal. App. 5th 1172, 1193 (2023). But it "is not an empty formality either." *LaCour*, 94 Cal. App. 5th at 1193. The notice must supply "facts and theories to support the alleged violation"; bare allegations and paraphrased statutory language are insufficient. *Id.* at 1193–94. A PAGA plaintiff's proxy authority extends only to the claims her notice describes, *id.* at 1195–97; a notice that refers only to the individual plaintiff does not give fair notice of a representative action, *Khan v. Dunn-Edwards Corp.*, 19 Cal. App. 5th 804, 809 (2018); and a notice is defective as to any theory whose specific facts it does not describe, *Uribe v. Crown Bldg. Maint. Co.*, 70 Cal. App. 5th 986, 1004–05 (2021) (notice describing unreimbursed shoe and uniform expenses could not support later cell-phone expense theory).

Hull's June 10, 2026, notice is built around a single instrument: the "Boost Agreement" that Hull executed on June 19, 2025. (Baker Decl. Ex. 5, Dkt. 17-5, at 2.) Its section 432.5 theory rests on "requiring Ms. Hull and every other California-based employee to sign the Boost Agreement," and it identifies the aggrieved employees as "California-based employees" who were required to sign or comply with that agreement or substantially similar provisions. (*Id.* at 6–7.) The notice does not describe any facts concerning no-hire, waiting-period, or work-assignment provisions in Epic's contracts with customers, consultants, or partners; any twelve-month UserWeb "waiting period"; or any of the enforcement conduct on which Hull's Motion principally relies. (*See generally id.*) Its passing reference to "third-party agreements" as one means by which Epic "enforces its agreements" (*Id.* at 2) identifies no agreement, provision, or violation, and is precisely the kind of generalized reference *Uribe* holds insufficient. The notice cannot support PAGA relief premised on those uncited theories.

Nor can Hull use her First Amended Complaint or her Motion to expand her PAGA claims

beyond what her notice described. A plaintiff may not add claims under different Labor Code provisions in an amended complaint when the prelitigation notice did not include them. *Brown v. Ralphs Grocery Co.*, 28 Cal. App. 5th 824, 838 (2018). Yet the First Amended Complaint enlarges the aggrieved-employee group from the notice's "California-based employees" to anyone who "resided in California or worked in California — whether virtually or in person" (*compare* Dkt. 17-5 at 7, *with* FAC, ¶ 111), and the Motion seeks PAGA injunctive relief directed at customer, consultant, and partner contracts and at UserWeb access practices that the notice never mentions. (Dkt. 16 at 17–18, 21–23.) To the extent Hull's requested PAGA relief rests on violations, theories, or employee groups outside her notice, she has not exhausted, and she cannot show a likelihood of success.

#### 7. Hull Offers No Evidence Regarding the Agreements of, or Alleged Harm to, Any Other Employees.

Hull has not established the statutory predicate for PAGA injunctive relief on behalf of anyone else. Section 2699(k)(1) permits an aggrieved employee to be "awarded injunctive relief in a civil action . . . filed on behalf of the employee and other current or former employees *against whom a violation of the same provision was committed*." Cal. Lab. Code § 2699(k)(1) (emphasis added). Hull has not met that element—let alone *Winter*'s requirements—as to anyone but herself. The only agreements in the record are her own. (Hull Decl. Exs. 2, 8–11.) Her assertion that "[m]y understanding is that all Epic employees sign the same form agreements" is speculation, not evidence. (*Id.* ¶ 12.) Nor has Hull offered any evidence of imminent, irreparable harm to any other employee; her showing addresses only her own experience, and it is conclusory and speculative. (Dkt. 16 at 18–20.) *Am. Passage Media Corp. v. Cass Comm'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (finding insufficient evidence of irreparable harm where supporting affidavits were "conclusory and without sufficient support in facts").

### C. Hull Cannot Establish Irreparable Harm.

Even if a movant establishes a likelihood of success, a court may not infer irreparable harm. *Inari Med., Inc. v. Imperative Care, Inc.*, 806 F. Supp. 3d 937, 957 (N.D. Cal. 2025). "Harm is irreparable if it cannot be compensated by a final judgment – assuming that the plaintiff ultimately

prevails on the merits," and it must be imminent, not remote or speculative. *Id.* at 958. A plaintiff must "*demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Concord Music Grp., Inc. v. Anthropic PBC*, 772 F. Supp. 3d 1131, 1138 (N.D. Cal. 2025) (emphasis in original) (quoting *Boardman*, 822 F.3d at 1022). An injunction must be "grounded in [ ] evidence," not based on what harm a plaintiff "might suffer." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013). And where "there is no evidence that [the] Defendant even intends to enforce the non-compete agreement against" the plaintiff, there is no irreparable harm. *Amato v. Abbott Labs.*, 2026 WL 2725660, at *1 (C.D. Cal. Sep. 14, 2026).

Monetary losses, however substantial, are not enough, and the availability of compensatory relief later in the litigation weighs heavily against a claim of irreparable harm. *Inari Med., Inc.*, 806 F. Supp. 3d at 958; *see* also *Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060, 1073 (9th Cir. 2014) (denying preliminary injunction where harm could be compensated monetarily through existing licensing agreements).

**1. All Alleged Harms Have Been Remedied.**

The harms Hull describes no longer exist. The UserWeb denial on which much of her Motion turns ended when Epic approved her account on September 28, 2026. (Dkt. 16 at 10–11, 18–19; Hull Decl. ¶ 55.) The Abbott restrictions have been waived, and her manager has told her he will involve her in Epic-related work. (Dkt. 17-1; Hull Decl. ¶ 55.) Any restriction on employment with a California Epic customer has been waived. (2nd Peterson Decl., Ex. C.) Hull has not identified any employer that has refused to hire her, any position she applied for and lost, or any enforcement step Epic has taken against her since September 14, 2026. Her remaining concerns—that a future recruiter might not credit Epic's written waiver, or that a former colleague might hesitate to refer her—are conjecture set forth in conclusory and self-serving allegations, not grounded in any evidence. Conjecture is not irreparable harm. (Hull Decl. ¶¶ 60–66.)

**2. Any Residual Harm Is Economic and Compensable by Damages.**

Hull remains employed at Abbott, where she now has UserWeb access and is being returned to Epic-related work. (*Id.* ¶¶ 36–37, 55.) Her claim that advancement routes "have been delayed by months or lost" describes economic injury. (*Id.* ¶ 55.) Lost income and diminished employment

prospects ordinarily are not irreparable because they can be remedied by damages. *Sampson v. Murray*, 415 U.S. 61, 90–92 (1974). California has supplied precisely that remedy, with mandatory fees. Cal. Bus. & Prof. Code § 16600.5(e); *see supra* Section V.A.6. Hull's authorities concerning the loss of the opportunity to pursue one's chosen profession involve plaintiffs categorically barred from their profession; Hull is working in hers. (Dkt. 16 at 19.)

**3. Hull's Delay Confirms There is No Emergency.**

Hull's months-long delay in seeking preliminary relief demonstrates a lack of urgency and irreparable harm. *Oakland Trib., Inc. v. Chron. Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). In addition, Hull noticed this motion for hearing on January 7, 2027, and by her own account her one-year post-employment restriction would expire in March 2027, roughly two months later. (Dkt. 15; Dkt. 16 at 13.) A litigant who waits this long, and then asks for a hearing months later, after the alleged harms have been remedied, cannot credibly claim that immediate judicial intervention is necessary.

**D. The Balance of Equities Favors Defendants.**

The equities weigh against an injunction, contrary to Hull's claim that "Epic's side of the scale is empty." (Dkt. 16 at 21.)

*First*, the injunction Hull seeks would disrupt Epic's agreements with third-party customers and partners, including those outside the State of California, none of which is before the Court. (Baker Decl. ¶ 8, Exs. 7–10.) Those agreements govern access to Epic's software, support, and confidential information, and the third-party provisions Hull targets are tied to those access rights. (*Id.* ¶ 8(b), (e).) An order compelling Epic to repudiate or renegotiate them would impose substantial burdens on Epic and on non-parties to obtain, at most, a marginal benefit to Hull, who already holds Epic's written waiver.

*Second*, Epic has legitimate, lawful interests in protecting its trade secrets, the confidentiality of its customers' data and patients' health information, and its customer relationships. The confidentiality provisions Hull attacks protect, among other things, software source code, system design, pricing strategies, and patient health information that is protected by law. (Dkt. 18-2, § 2.) California law continues to protect trade secrets. *See* Cal. Civ. Code § 3426 *et seq*. Hull's request that

the Court declare these provisions unenforceable on a preliminary record would strip Epic and its customers of protections that do not restrain anyone from working. (Dkt. 16 at 7, 16–17.) Nothing in the record suggests that Epic has ever invoked its confidentiality provisions against Hull.

*Third*, Hull's side of the scale is light: she is employed, has a UserWeb account, and holds Epic's numerous written commitments. (Hull Decl. ¶¶ 55, 66.) An injunction would add little for her while imposing significant costs on Defendants and others.

**E. The Public Interest Does Not Support an Injunction.**

The public interest likewise does not support relief. Defendants do not dispute California's policy favoring employee mobility. That policy, however, is fully served here: Epic has disclaimed its noncompete provisions as to California residents and has waived the customer restrictions Hull identifies as to her. (Hull Decl. Exs. 7, 14; Dkt. 17-1.) The public interest does not support the far broader relief Hull seeks.

The breadth of the requested relief also weighs against the public interest. As shown in Section V.A.3, *supra*, Hull's proposed order is both undefined and universal, and its undefined nature casts a "long shadow" over Hull's request. *Concord*, 772 F. Supp. 3d at 1137 ("the Court does not have unfettered discretion to issue an injunction that may be overbroad"). For example, several provisions expressly apply to non-parties and are broader than necessary to afford "complete relief to the *plaintiff[] before the court*." *L.A. Press Club*, 171 F.4th at 1191 (emphasis in original) (quoting *CASA*, 606 U.S. at 852) (finding preliminary injunction overbroad where it prohibited activity directed at "any person").

Additionally, the sweeping injunction that Hull seeks would stand to invalidate mutual limitations in Epic's contracts with non-parties, even outside of California, raising serious due process concerns. None of the customers, consultants, and partners whose agreements Hull asks the Court to rewrite are parties, and they have not and will not have an opportunity to be heard. *See* Fed. R. Civ. P. 65(d)(2), 19(a)(1)(B). Hull's own authority confirms the limitation: a federal court "may not attempt to determine the rights of persons not before the court." *Zepeda*, 753 F.2d at 727. *See also League of Women Voters of Ariz. v. Reagan*, 2018 WL 4467891, at *6 (D. Ariz. Sep. 18, 2018) ("Federal courts are 'powerless' to issue preliminary injunctions against non-parties"); *Additive*

*Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1395 (Fed. Cir. 1996) (entities that "were never made parties to the underlying action and thus never had an opportunity to contest the findings of liability" were "not subject to being enjoined or held in contempt").

**F. Hull's Request for Judicial Notice and a Nominal Bond Should be Denied.**

Hull asks the Court to judicially notice copies of Epic customer agreements and Epic's UserWeb terms. (Dkt. 16 at 23.) By her counsel's own description, the California agreements are drafts or unsigned agenda attachments, two are with non-party affiliates, and one is a non-California SEC exhibit. (Baker Decl. ¶ 8.) Whether any of them is executed, operative, or applicable to Hull is precisely what is disputed, and judicial notice cannot establish it.

Should the Court grant any relief, Rule 65(c) requires security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). Hull proposes a $1,000 bond. An order requiring Epic to alter its agreements with non-party customers, consultants, and partners across California and beyond, and to send notices to its workforce, would impose costs far exceeding that figure. Any bond should be set at an amount commensurate with those costs.

**VI. CONCLUSION.**

Hull already has what she sought: written waivers, UserWeb access, and continued employment in her chosen field. What remains is an effort to obtain sweeping relief for others that she lacks standing to pursue, in a forum she agreed not to use. For the foregoing reasons, Defendants respectfully request that the Court deny Hull's Motion for Preliminary Injunction or, in the alternative, defer ruling and hold the motion in abeyance pending resolution of Defendants' Motion to Compel Arbitration and Stay Proceedings.

Dated: November 6, 2026

**MICHAEL BEST & FRIEDRICH LLP**

By: */s/David Szwarcsztejn*
David Szwarcsztejn

Attorneys for Defendants
EPIC SYSTEMS CORPORATION and
BOOST, INC.

CERTIFICATION OF LEAD TRIAL COUNSEL RE: ARTIFICIAL INTELLIGENCE

Pursuant to Section H.4 of the Court's Standing Order for Civil Cases Before District Judge Araceli Martínez-Olguín, I, David Szwarcsztejn, lead trial counsel for Defendants Epic Systems Corporation and Boost, Inc., certify that: (1) I have personally verified the accuracy of the contents of this submission, and (2) counsel is maintaining records of prompts and inquiries submitted to generative artificial intelligence tools in connection with this matter.

Dated: November 6, 2026

**MICHAEL BEST & FRIEDRICH LLP**

By: */s/David Szwarcsztejn*
David Szwarcsztejn

Attorneys for Defendants
EPIC SYSTEMS CORPORATION and
BOOST, INC.