CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
DEBORAH SCHWARTZ, State Bar No. 208934
dschwartz@bakerlp.com
BAKER DOLINKO & SCHWARTZ, P.C.
220 Montgomery Street, Suite 1094
San Francisco, CA 94104
Telephone: (415) 433-1064

Attorneys for Plaintiff
ANDREA HULL

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**DIVISION: OAKLAND**

ANDREA HULL, an individual,

Plaintiff,

v.

EPIC SYSTEMS CORPORATION, a Wisconsin corporation; BOOST, INC., a Wisconsin corporation,

Defendants.

Case No. 4:26-cv-07702-AMO

**PLAINTIFF ANDREA HULL'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Hearing Date: January 7, 2027
Hearing Time: 2:00 p.m.
Courtroom: 5, 2nd Floor, 1301 Clay St., Oakland
Judge: Hon. Araceli Martínez-Olguín

## TABLE OF CONTENTS


INTRODUCTION ........ 1

ARGUMENT ........ 1

I. Epic Has Not Mooted Ms. Hull's Claims ........ 1

A. Epic's Standing Argument Is a Mootness Argument, and the Burden of Proof Is on Epic ........ 1

B. Epic's Waivers Are Partial, Conditional, and Revocable ........ 2

C. Epic's Restraints Continue to Injure Ms. Hull ........ 4

D. Epic's Promise Does Not Remove the Need for an Injunction ........ 5

II. Ms. Hull Faces Irreparable Harm, and the Timing of Her Motion Confirms It ........ 6

III. The Order Ms. Hull Seeks Is Proper in Kind and Scope ........ 7

A. An Order That Bars Enforcement Is Prohibitory ........ 7

B. Complete Relief for Ms. Hull Requires an Order Directed at Epic's Policy ........ 8

C. The Relief Is Also Public Injunctive Relief, and It Requires No Class ........ 9

D. PAGA Independently Authorizes Relief for Epic's Other California Employees ........ 11

IV. Epic's Other Arguments Fail ........ 12

V. The Court Should Decide This Motion Before Epic's Motion to Compel Arbitration ........ 14

VI. Objections to the Peterson Declaration ........ 15

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Cases**

*Alberto v. Cambrian Homecare*,
91 Cal. App. 5th 482 (2023)........ 14

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013)........ 2

*Am. Encore v. Fontes*,
152 F.4th 1097 (9th Cir. 2025)........ 2

*Amato v. Abbott Labs.*,
2026 WL 2725660 (C.D. Cal. Sept. 14, 2026)........ 6

*Application Grp., Inc. v. Hunter Grp., Inc.*,
61 Cal. App. 4th 881 (1998)........ 9, 13

*Arc of Cal. v. Douglas*,
757 F.3d 975 (9th Cir. 2014)........ 6

*Arias v. Superior Court*,
46 Cal. 4th 969 (2009)........ 11

*Ariz. Dream Act Coal. v. Brewer*,
757 F.3d 1053 (9th Cir. 2014)........ 6, 7

*Bayer v. Neiman Marcus Grp., Inc.*,
861 F.3d 853 (9th Cir. 2017)........ 10

*Beverly Glen Music, Inc. v. Warner Commc'ns, Inc.*,
178 Cal. App. 3d 1142 (1986)........ 11

*Boardman v. Pac. Seafood Grp.*,
822 F.3d 1011 (9th Cir. 2016)........ 6

*Bresgal v. Brock*,
843 F.2d 1163 (9th Cir. 1987)........ 8

*Brown v. TGS Mgmt. Co.*,
57 Cal. App. 5th 303 (2020)........ 14

*Cal. Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024)........ 10

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
92 F.3d 1486 (9th Cir. 1996)........ 8

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023)........ 6, 9, 10

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)........ 1, 2

*FTC v. Nat'l Lead Co.*,

352 U.S. 419 (1957) ........ 12

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) (en banc) ........ 8

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ........ 7

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ........ 7, 8

*Hines v. Stamos*, 111 F.4th 551 (5th Cir. 2024) ........ 15

*Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348 (2014) ........ 13

*Khan v. Coinbase, Inc.*, 115 Cal. App. 5th 518 (2025) ........ 10

*Khan v. K2 Pure Sols., LP*, 2013 WL 6235572 (N.D. Cal. Dec. 2, 2013) ........ 11

*L.A. Press Club v. Noem*, 171 F.4th 1179 (9th Cir. 2026) ........ 2, 8

*Lackey v. Stinnie*, 604 U.S. 192 (2025) ........ 14

*Landers v. Curran & Connors, Inc.*, 2006 WL 8431018 (N.D. Cal. Feb. 2, 2006) ........ 4

*Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668 (9th Cir. 2021) ........ 11

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) ........ 9

*Mendia v. Garcia*, 768 F.3d 1009 (9th Cir. 2014) ........ 5

*Nat'l TPS All. v. Noem*, 150 F.4th 1000 (9th Cir. 2025) ........ 8

*Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762 (2020) ........ 13

*Robinson v. U-Haul Co. of Cal.*, 4 Cal. App. 5th 304 (2016) ........ 4

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415 (9th Cir. 1984) ........ 6, 14

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........ 6

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........ 15

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
316 F.2d 804 (9th Cir. 1963) ........ 7

*Tesar v. Hallas*,
738 F. Supp. 240 (N.D. Ohio 1990) ........ 3

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ........ 8

*United States v. W.T. Grant Co.*,
345 U.S. 629 (1953) ........ 5

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) ........ 14

*Ward v. United Airlines, Inc.*,
9 Cal. 5th 732 (2020) ........ 13

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
395 U.S. 100 (1969) ........ 5

**Statutes**

2023 Cal. Stat. ch. 157, § 1 (S.B. 699) ........ 10
Cal. Bus. & Prof. Code § 16600 ........ 5, 10
Cal. Bus. & Prof. Code § 16600.1 ........ 8, 10, 12
Cal. Bus. & Prof. Code § 16600.5 ........ 3, 6, 12, 13
Cal. Bus. & Prof. Code § 17203 ........ 13
Cal. Lab. Code § 432.5 ........ 12
Cal. Lab. Code § 2699 ........ 11
Wis. Stat. § 813.02 ........ 14

**Rules**

Civil L.R. 7-3 ........ 15
Fed. R. Evid. 602 ........ 15
Fed. R. Evid. 1002 ........ 6, 15

## INTRODUCTION

Defendants Epic Systems Corporation and Boost, Inc. (together, "Epic") oppose Plaintiff Andrea Hull's motion for a preliminary injunction on a single premise. Epic says it has stopped enforcing its employment restraints against Ms. Hull, so nothing remains to enjoin. Opp. (ECF 39) at 1:13–21.

The premise is false. Epic has not stopped. It has made a series of partial and conditional announcements, each timed to a step in this lawsuit. The latest is a sentence in its opposition brief, in which Epic promises not to enforce some of its restraints against Ms. Hull "while she remains in California." *Id.* at 8:7–11. That condition is itself an unlawful geographic restraint forbidden under California law. Moreover, Epic's counsel's representation does not reach Epic's consultants and partners, its perpetual covenants, or any of the more than 15,000 other people who signed its agreements. Epic defends its restraints as "mutual limitations" and asks the Court to leave them in place. *Id.* at 24:21–22.

A defendant that still claims the right to do what the law forbids has not mooted anything, and the danger that it will do so again is plain. The Court should grant the motion, and it should do so before it takes up Epic's motion to compel arbitration.

## ARGUMENT

### I. Epic Has Not Mooted Ms. Hull's Claims

#### A. Epic's Standing Argument Is a Mootness Argument, and the Burden of Proof Is on Epic

Epic begins with Article III. It argues that Ms. Hull's injuries "lie in the past" and that its written commitments foreclose "any prediction of recurrence." Opp. at 6:11–16. This confuses standing with mootness.

Standing is measured when the complaint is filed. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189–91 (2000). When Ms. Hull sued, she was locked out of UserWeb, Abbott had pulled her from the Epic work she was hired to do, and Epic had told her in writing that her agreement "hasn't been modified" and that the hiring provisions in its customer

contracts "would still apply." Hull Decl. (ECF 18) ¶¶ 40–44, Ex. 6. Epic does not dispute any of these facts. Opp. at 9:5–9, 22:15–16.

Everything Epic relies on came after the complaint, with one exception. The exception is an email dated September 30, 2025, which Epic's declarant says "was sent" to Ms. Hull. Peterson Decl. (ECF 40) ¶ 4. Ms. Hull does not recall receiving it. Hull Decl. ¶ 50. The email said, in any event, that "[t]he rest of the provisions continue to apply." Peterson Decl. Ex. A. And Epic acted as though the email meant nothing. Six months after its date, Epic denied Ms. Hull a UserWeb account, and a month after that it told her that her agreement had not been modified. Hull Decl. ¶¶ 40, 44.

Events after the complaint raise mootness, and on mootness the burden belongs to the defendant. It is a "formidable burden," and the two doctrines are not the same: "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Laidlaw*, 528 U.S. at 190. Epic's own authorities confirm that Ms. Hull has standing. A plaintiff may seek prospective relief when the defendant's past conduct has "continuing, present adverse effects." *L.A. Press Club v. Noem*, 171 F.4th 1179, 1187 (9th Cir. 2026) (citation omitted). A defendant's "failure to modify" a challenged provision after its legality is questioned "reasonably indicates an intent to enforce" it. *Am. Encore v. Fontes*, 152 F.4th 1097, 1118 (9th Cir. 2025). Epic does not claim to have modified its form employment agreement or any customer contract. *See* Peterson Decl. ¶¶ 4–9.

### B. Epic's Waivers Are Partial, Conditional, and Revocable

A defendant claiming mootness must show that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Laidlaw*, 528 U.S. at 190). Epic invokes *Already* and says that a covenant that is "unconditional and irrevocable" carries that burden. Opp. at 8:12–14. Ms. Hull has no quarrel with the standard. Epic does not satisfy it. Epic's commitment is one sentence in its brief:

> To remove any doubt, Epic repeats what it has already told Hull and hereby stipulates that while she remains in California: (i) the noncompete provisions in Section 4 of Hull's Epic and Boost agreements are void and will not be enforced against her, and (ii)

> Epic waives, and will not enforce, any no-hire, waiting-period, or similar provision in any customer agreement as to Hull.

*Id.* at 8:7–11. This sentence fails Epic's own test in four ways.

First, it is conditional. It lasts only "while she remains in California." California law contains no such condition. A void restraint "is unenforceable regardless of where and when the contract was signed," and an employer may not attempt to enforce one "regardless of whether the contract was signed and the employment was maintained outside of California." Cal. Bus. & Prof. Code § 16600.5(a)–(b). A waiver that expires when Ms. Hull moves, or takes a position based in another state, is a restraint on where she may live and work (i.e., she cannot leave California). It is a geographic restraint. If Abbott assigned her to a project in another state, Epic's restraints would return. A California employer that might otherwise hire her will not because it cannot transfer her out of state for career growth or any other reason. *Cf. Tesar v. Hallas*, 738 F. Supp. 240, 242–43 (N.D. Ohio 1990) (statute that discourages persons from leaving a state for a different job burdens commerce). Epic's condition is further proof that nothing is moot.

Second, it is incomplete. It covers "the noncompete provisions in Section 4" and "any customer agreement." It says nothing about Epic's agreements with consultants, although Epic's own departure materials say that "customers and consultants likely have agreements with Epic in regards to hiring as well." Hull Decl. Ex. 12. It says nothing about Epic's partners. It says nothing about the stock agreements, which Epic's email says contain "[a] similar provision." Peterson Decl. Ex. A. It says nothing about the perpetual covenants in Section 2 of the employment agreement, which Epic continues to defend. Opp. at 14:25–15:9.

Third, it binds no one. It is a statement by counsel in a brief. Epic has signed nothing, and its history shows why that matters. In June 2025 Epic required Ms. Hull to sign the restraints although it knew she was moving to California. Hull Decl. ¶¶ 29–31. In March 2026 it sent her departure materials reminding her of the "waiting period before working for listed competitors, consultants, and any Epic customers." Hull Decl. Ex. 12. In April it told her the agreement "hasn't been modified." *Id.* Ex. 6. One week after she sued, it sent a "clarification." Peterson Decl. ¶ 7. As her motion was being prepared, Epic waived its restraints as to Abbott alone. *Id.* ¶ 8. Three days before Ms. Hull filed this motion, Epic waived them, as to her alone, for its California customers.

*Id.* ¶ 9. Now, in its opposition, it offers a stipulation. Each announcement arrived when the litigation required one, and each went only as far as Epic felt was the minimum required of it at that time.

Fourth, it concedes nothing. Epic "waives." A party can only waive what it claims to hold. Epic does not say that its customer restraints are void. It calls them "mutual limitations in Epic's contracts with non-parties, even outside of California," says they are "tied to" its customers' access rights, and warns that an injunction would "disrupt" them. Opp. at 23:17–20, 24:21–22. It told fewer than 60 of its more than 15,000 employees that anything had changed, by blind copy. Peterson Decl. ¶¶ 3–4, Ex. A. It told one customer, Abbott, and no other. *Id.* ¶ 8.

The law does not consider conduct of this nature as a genuine cessation. When an employer "has not taken action to bind itself legally to a violation-free future," there is "reason to doubt the bona fides of its newly established law-abiding policy." *Robinson v. U-Haul Co. of Cal.*, 4 Cal. App. 5th 304, 316 (2016). In this District, an employer's statements that it would not enforce a noncompete in California were "ambiguous" about enforcement elsewhere, and the employee's claim under Section 16600 became moot only when counsel committed that the employer would not enforce the covenant "anywhere or anytime." *Landers v. Curran & Connors, Inc.*, 2006 WL 8431018, at *1–2 (N.D. Cal. Feb. 2, 2006). Epic says its stipulation legally binds it to a violation-free future. Opp. at 8:25–27. It does not. It binds Epic to nothing outside California, nothing involving a consultant or partner, and nothing involving anyone but Ms. Hull.

### C. Epic's Restraints Continue to Injure Ms. Hull

Epic argues that Ms. Hull has not identified an employer that refused to hire her after its waivers. Opp. at 6:21–22, 22:19–21. That is not the test, and the argument ignores the record.

Epic acknowledges that a plaintiff answers a claim of mootness by showing "sufficiently concrete plans" to engage in activity the defendant's commitment does not cover. *Id.* at 8:15–19. Ms. Hull made that showing before Epic filed its brief, in the paragraphs of her declaration that are under seal. Hull Decl. ¶¶ 56–58, Ex. 13. Epic has read those paragraphs. Its brief does not acknowledge or address them.

Epic next argues that any future harm would be caused by "the independent choices of unidentified third parties." Opp. at 7:11–13. The choices are not independent. Epic wrote the hiring

restraints into its customers' contracts, and it has not removed them. A defendant causes the injury when its conduct is "at least a substantial factor motivating the third parties' actions." *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (citation omitted). Abbott restricted Ms. Hull's work because Epic's license compelled it to do so, and Abbott maintained the restriction until Epic finally told it to do otherwise. Hull Decl. ¶¶ 41–43, 55. Epic identifies no other customer that it has told that its restraints are no longer in effect. Peterson Decl. ¶ 8. Customers apply these terms at intake, without asking about the identity of the applicant. Hull Decl. ¶¶ 42, 65. Epic's waiver therefore works only if Ms. Hull hands a recruiter a letter from her former employer and the recruiter believes it. Epic's answer to that problem is its stipulation. Opp. at 9:10–11. No recruiter will ever read Epic's brief.

Finally, Epic dismisses the restraints on the people around Ms. Hull as an "industry-wide grievance." *Id.* at 7:4–6. An injury does not become abstract because many people share it. The colleagues who would refer her, recruit her, or join her are bound by covenants that Epic has waived, at most, for the fewer than 60 employees it says it contacted by email. Hull Decl. ¶¶ 59–65; Peterson Decl. ¶ 4. A restraint on who may work alongside a person restrains that person, and § 16600 reaches a restraint whether or not the person restrained is a party to the contract. Cal. Bus. & Prof. Code § 16600(c).

**D. Epic's Promise Does Not Remove the Need for an Injunction**

A defendant's statement that it has stopped its unlawful conduct does not end a court's power to enjoin it. The statement is one factor, and the question is whether "there exists some cognizable danger of recurrent violation." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). Neither "quiescence . . . during the litigation nor claims that objectionable conduct would cease" negates a threat that is otherwise clear. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 131 (1969). The danger here is more than cognizable. Epic keeps the restraints in its contracts, defends them as lawful, and has limited every waiver by person, by state, or by contract.

Epic's promise bears on the balance of hardships, and there it favors Ms. Hull. Epic says that it "fully complies with California law." Opp. at 1:13. If that is so, an order requiring compliance does not injure it. The Ninth Circuit affirmed a preliminary injunction on that reasoning where the

defendant "had voluntarily stopped" the challenged conduct "and would therefore not be injured by the injunction." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1418 (9th Cir. 1984).

**II. Ms. Hull Faces Irreparable Harm, and the Timing of Her Motion Confirms It**

Epic argues that any remaining harm is economic and can be remedied in the form of damages. Opp. at 22:25–23:5. Not so. The loss of the opportunity to pursue one's chosen profession is irreparable. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). So is harm to competition. "A lessening of competition constitutes an irreparable injury under our case law." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016). Epic points to the damages remedy in § 16600.5(e) and to *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). Opp. at 15:12–16:14. But the statute authorizes "injunctive relief or the recovery of actual damages, or both," so the Legislature did not regard one as a substitute for the other. Cal. Bus. & Prof. Code § 16600.5(e)(1). The Ninth Circuit has applied *Sonner* to an injunction under the Unfair Competition Law and found legal remedies inadequate where the injury "does not readily lend itself to calculable money damages." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1002–03 (9th Cir. 2023). No damages award restores a career path that was closed or a market that was restrained.

Epic's cases do not suggest otherwise. Opp. at 21:27–22:13. All but one are disputes between businesses. The exception is *Amato v. Abbott Labs.*, 2026 WL 2725660 (C.D. Cal. Sept. 14, 2026), an ex parte application filed six days after an employee resigned. There, the court found "no evidence that Defendant even intends to enforce the non-compete agreement" and no facts that the employer had "in any other way prevented" the plaintiff from working. *Id.* at *1–2. Here, Epic enforced its restraints against Ms. Hull for six months, through her employer and through its own credentialing system. Hull Decl. ¶¶ 40–43, 55. It stopped only in part, and only after she sued.

Epic also argues that Ms. Hull waited too long. Opp. at 23:6–13. Delay is "but a single factor," and it is "not particularly probative in the context of ongoing, worsening injuries." *Arc of Cal. v. Douglas*, 757 F.3d 975, 990–91 (9th Cir. 2014). Imminent does not mean vegetables rotting on a dock. Ms. Hull's injury is not a single event that has already happened. It is a restraint that operates every day and compounds with each opportunity that passes. She also did not sit idle. She

gave notice to the State in June, sued in July, and moved in October, after Epic's September announcements showed how little Epic was willing to give up. "[W]aiting to file for preliminary relief until a credible case for irreparable harm can be made is prudent rather than dilatory." *Id.* at 991. She noticed the motion for the Court's first available hearing date. ECF 23 at 2:11–13.

Epic's remaining point is that Ms. Hull's one-year covenants expire in March 2027. Opp. at 23:9–10. That date ends only the one-year covenants in her own Section 4. It does not end Section 2, which has no end date. It does not end the hiring restraints in Epic's contracts with customers, consultants, and partners, or the covenants of any colleague. And Epic's own motion supplies the urgency. Epic has asked the Court to send this case to arbitration and to stay what remains. ECF 29. If Epic obtains any part of that relief, or appeals its denial, a final adjudication will be far in the future, and Epic's restraints will operate the entire time. Preliminary relief exists for this situation.

## III. The Order Ms. Hull Seeks Is Proper in Kind and Scope

### A. An Order That Bars Enforcement Is Prohibitory

Epic asks the Court to apply the heightened standard for mandatory injunctions. Opp. at 5:10–13. It points to the amended complaint and to her opening memorandum. The motion asks for one thing. It asks that Epic be enjoined "from attempting to enforce or enforcing" its employment restraints. ECF 15 at 3:3–8.

An order of that kind is prohibitory. "[L]ike other injunctions that prohibit enforcement of a new law or policy, Plaintiffs' requested injunction is prohibitory." *Ariz. Dream Act*, 757 F.3d at 1061. An order that prevents future violations is "a classic form of prohibitory injunction," and that is so even when the rule enjoined is longstanding. *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017). The status quo that a preliminary injunction preserves is "the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). It is not the state of affairs the defendant's challenged conduct created. Before Epic enforced its restraints, Ms. Hull was a California resident free to work for an Epic customer on Epic software. The order restores that status and requires Epic to do nothing of an affirmative nature.

Epic's cases involved orders that compelled a defendant to act. In *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc), the order required Google "to take affirmative action—to remove (and to keep removing)" a film from its platform. An order that tells Epic to refrain is a different thing. The motion asks that Epic be barred from enforcing its restraints "directly or indirectly." ECF 15 at 3:3–8. Epic enforces them indirectly. Its customers follow the hiring terms in their contracts because Epic insists on them. Abbott restricted Ms. Hull's work for that reason and stopped only when Epic told it to. Hull Decl. ¶¶ 41–43, 55. Epic stops enforcing when it tells its customers that it will not enforce. Notice is how Epic complies with the prohibition. It asks nothing of the customer. As to employees, it is also no more than the law already requires. Epic has been obliged since February 14, 2024 to notify its current employees, and former employees employed after January 1, 2022, individually and in writing, that the noncompete clause is void. Cal. Bus. & Prof. Code § 16600.1(b). The proposed order lodged with this reply sets forth the notice provision in a separate paragraph, so that the Court may consider it separately. *See Hernandez*, 872 F.3d at 999.

**B. Complete Relief for Ms. Hull Requires an Order Directed at Epic's Policy**

Epic relies on *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), for the rule that an injunction should give complete relief to the plaintiff before the court. Opp. at 11:4–11. Complete relief is one measure of an injunction, and the order Ms. Hull seeks satisfies it. The question is what complete relief for her requires.

The Ninth Circuit answered that question after *CASA*, in a case Epic cites, and on review of a preliminary injunction. An injunction may protect "non-parties whose protection Plaintiffs have shown necessary to give relief to Plaintiffs." *L.A. Press Club*, 171 F.4th at 1191 (vacating in part an injunction that went beyond that category). "There is no rule, however, that nonparties must remain unaffected by the court's order." *Id.* (quoting *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1028 (9th Cir. 2025)). That disposes of Epic's argument that *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996), and *Bresgal v. Brock*, 843 F.2d 1163 (9th Cir. 1987), apply only after final judgment. Opp. at 11:12–21.

Ms. Hull's injury is a restraint on the market in which she sells her labor. Epic's policy is to write employment restraints into its contracts on every side of that market. An order limited to her own contract leaves the market as it is. Every employer that would hire her still holds an Epic contract that says it may not. Every colleague who would refer her or join her is still bound. In *Epic Games*, one developer proved that Apple's contractual rule harmed it by restraining other developers and their users. The Ninth Circuit affirmed an injunction that protected every developer, "because the scope is tied to Epic's injuries," and because "an injunction limited to Epic's subsidiaries would fail to address the full harm." 67 F.4th at 1003. The same reasoning applies here. The benefit to others is the ordinary consequence of restoring the market in which the plaintiff is injured.

Epic's remaining objections to scope are makeweights. Opp. at 13:14–14:24, 24:21–25:3. The order would bind only Epic and those in active concert with it. ECF 15 at 2. No customer, consultant, or employee is ordered to do anything, and none loses a right that California law recognizes. The employee restraints are quoted, one by one, in Appendix A to the motion, and five of Epic's customer contracts are in the record. ECF 17-7 to 17-11. Epic does not deny its standard employment restraints. And the order is tied to California. By its terms it protects persons residing, working, or seeking employment in California, employers headquartered or incorporated in California, and foreign employers doing business here "with respect to such business." ECF 15 at 3:3–8; *see Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 905 (1998).

**C. The Relief Is Also Public Injunctive Relief, and It Requires No Class**

Epic argues that relief reaching beyond Ms. Hull requires a certified class, that her arbitration agreement waived it, and that the relief is "private" because the people it protects are similarly situated to her. Opp. at 10:3–18, 12:7–13:13. Epic makes the same arguments in its motion to compel arbitration, where it asks the Court to strike the relief sought by Ms. Hull. ECF 30 at 9:4–10:8. Each argument fails.

Public injunctive relief requires no class. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 959–61 (2017). Relief is public when its "primary purpose and effect" is to prohibit unlawful acts that threaten future injury to the general public. *Id.* at 955. An order that stops a company from enforcing

agreements not to compete is public relief, because it "would provide diffuse benefits to the public by potentially bolstering competition." *Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1036–37 (N.D. Cal. 2024). The Legislature has said the same thing. It has declared the use of these restraints "unlawful" and "an act of unfair competition." Cal. Bus. & Prof. Code § 16600.1(a), (c). It has found that they "stifle economic development, limit firms' ability to hire and depress innovation and growth." 2023 Cal. Stat. ch. 157, § 1(c). And it has extended § 16600 to restraints in contracts to which the person restrained is not a party. Cal. Bus. & Prof. Code § 16600(c).

The beneficiaries of this order are not a closed group of Epic employees. They include every health system, consultant, and device maker in California that would hire an Epic professional and is forbidden by an Epic contract from doing so. Epic's own authority holds that relief is public when it is not limited to "a discrete class of persons." *Khan v. Coinbase, Inc.*, 115 Cal. App. 5th 518, 534–35 (2025). The order here changes how Epic deals with every employer in the California market for Epic professionals. That the order also makes Ms. Hull whole does not change its character. The relief that frees the market is the relief that frees her. Private and public relief often result from the same order, as *Epic Games* shows.

Epic's reliance on the waiver in the arbitration agreement fares no better. That provision governs how covered claims are arbitrated. It does not limit the remedies this Court may order in a matter properly before it. Ms. Hull addresses the point in her opposition to Epic's motion to compel arbitration, filed today. Epic's argument that a former employee may not seek an injunction against an employer's practices also misses the mark. Opp. at 10:10–14. The rule Epic cites concerns pay and promotion practices that no longer touch an employee who has left. Post-employment restraints operate only on people who have left. If a former employee could not challenge them, no one could. A former employee may seek prospective relief when she has a personal need for it. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864–65 (9th Cir. 2017) (former employee has no claim for injunctive relief "absent a reasonably certain basis for concluding he or she has some personal need for prospective relief"). Ms. Hull has that need. Epic has already enforced this agreement against her. A court in this District found that former employees lacked standing to challenge their noncompetes only after the covenants had expired, the employer conceded they were void, and its

chief executive swore they would never be enforced. *Khan v. K2 Pure Sols., LP*, 2013 WL 6235572, at *3 (N.D. Cal. Dec. 2, 2013). None of those things is true here.

**D. PAGA Independently Authorizes Relief for Epic's Other California Employees**

The Private Attorneys General Act is a separate ground for the part of the order that protects Epic's other employees. Since 2024, an aggrieved employee may be awarded injunctive relief "on behalf of the employee and other current or former employees against whom a violation of the same provision was committed." Cal. Lab. Code § 2699(k)(1). A PAGA action requires no class. *Arias v. Superior Court*, 46 Cal. 4th 969, 975 (2009).

Epic's response is that state law cannot supply Article III standing. Opp. at 16:20–27. Ms. Hull does not need it to. She personally suffered the violation. Epic required her to sign restraints it knew to be unlawful, and Epic continues to assert those writings against her. A PAGA plaintiff who personally suffered the violation has standing in federal court. *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 678 (9th Cir. 2021). The relief the State needs is also relief Ms. Hull needs, because the covenants of her former colleagues restrain her as well.

PAGA relief must also reach Epic's contracts with its customers, consultants, and partners, because the two sets of restraints are halves of one restraint. In Section 4(d) of the employment agreement, the employee promises not to be "employed or engaged by, directly or indirectly," an Epic customer, consultant, or partner. Hull Decl. Ex. 2, § 4(d). Epic's contracts with those companies carry the matching promise. Epic tells departing employees that "customers and consultants likely have agreements with Epic in regards to hiring as well," and it told Ms. Hull that its "customer contracts often include provisions related to hiring, which would still apply." *Id.* Exs. 6, 12. An order that barred Epic from enforcing Section 4(d) against its employees and left it free to enforce the same restraint through their prospective employers would accomplish nothing. "Whether plaintiff proceeds against [the employee] directly or against those who might employ her, the intent is the same: to deprive [her] of her livelihood . . . ." *Beverly Glen Music, Inc. v. Warner Commc'ns, Inc.*, 178 Cal. App. 3d 1142, 1145 (1986). An order that stops a violation need not be confined "to the narrow lane the transgressor has traveled." It may "close all roads to the

prohibited goal, so that its order may not be bypassed with impunity." *Cf.* FTC v. Nat'l Lead Co., 352 U.S. 419, 429 (1957) (agency order) (citation omitted). The order should therefore bar Epic from enforcing the employee restraints directly or indirectly, including by invoking any agreement with a customer, consultant, or partner.

Epic also argues that there is no evidence other employees signed the same provision. Opp. at 21:11–24. Epic's own declarant supplies it. Jennifer Peterson, who works in Epic's human resources department, states that Epic emailed the employees who had moved or were moving to California to tell them that "these noncompete provisions," in their employment agreements and stock agreements, were void. Peterson Decl. ¶¶ 4–5. Epic would not have sent that email to people who had not signed the provisions.

**IV. Epic's Other Arguments Fail**

First, Epic argues that Labor Code § 432.5 cannot rest on § 16600 because a noncompete is "void" and so is not "prohibited by law." Opp. at 17:1–18. Three of Epic's four cases were decided before 2024. The fourth follows them without mentioning the statutes enacted that year. Since January 1, 2024, it "shall be <u>unlawful</u> to include a noncompete clause in an employment contract, or to require an employee to enter a noncompete agreement, that does not satisfy an exception in this chapter." Cal. Bus. & Prof. Code § 16600.1(a). An employer that enters into such a contract or attempts to enforce it "commits a civil violation." *Id.* § 16600.5(d). A term that the Legislature has declared unlawful to include in a contract is a term prohibited by law. Epic's footnote concedes that § 16600.1 "makes the employer's conduct unlawful." Opp. at 17 n.6. Section 432.5 is directed at the employer's conduct. Epic also knew the law. By its own account, it began informing employees in June 2025 that these provisions were void under Assembly Bill 1076. Peterson Decl. ¶ 4. That is the same month in which it required Ms. Hull to sign them. Hull Decl. ¶ 30.

Epic's defense of the waiver of representative proceedings in its arbitration agreement, which Ms. Hull challenges under § 432.5, fails as well. FAC ¶ 112(e); Opp. at 18:17–19. Epic says the agreement "routes representative claims to court if the waiver is unenforceable." *Id.* at 18:21–22. But Epic invokes the waiver in this Court, where it says the waiver "bars class relief." *Id.* at 10:15–16. In its motion to compel arbitration, Epic asks the Court to "sever the waivers of

representative PAGA claims." ECF 30 at 11:6–7. If the waiver reaches PAGA claims and must be severed, it is unlawful, *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 383–84 (2014). A lawful term is enforced, not severed.

Second, Epic argues that Ms. Hull's notice to the State does not describe its customer contracts. Opp. at 20:16–27. The notice describes the employee's own covenant not to be "employed or engaged by" an Epic customer, consultant, or partner, and it identifies the employees who were required to sign it. ECF 17-5 at 4, 8. Epic concedes that the notice requirement is not "particularly stringent." Opp. at 20:4–6. Ms. Hull's challenge to the customer contracts themselves rests on §§ 16600.5 and 17203, which require no notice.

Third, Epic argues that the order and the PAGA claims reach people who do not work in California, and it objects to the words "virtually or in person." Opp. at 14:10–24, 18:23–20:1. Remote work in California is work in California. The Labor Code protects work performed in this State whatever the worker's residence and wherever the employer is based. *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 740, 759 (2020); *Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762, 773 (2020). An Epic employee who works from a home in Concord works in California, although Epic's campus is in Wisconsin. Section 16600 reaches further, because a restraint on employment operates where the restrained work would be done. A person who performs services for California employers and California customers is "employed in California," wherever she lives. *Application Grp.*, 61 Cal. App. 4th at 905. That is why a void restraint is unenforceable "regardless of where and when the contract was signed." Cal. Bus. & Prof. Code § 16600.5(a). Epic sells to California health systems and staffs their projects with people who work remotely. Its restraints on those people restrain trade here in California.

Fourth, Epic defends its confidentiality covenant as protection for "trade secrets and proprietary information." Opp. at 14:25–15:9. The covenant goes far beyond that. It forbids a former employee, forever, to use or disclose the "identities and talents of specific Epic Group employees" and "customer and prospect lists and identities." Hull Decl. Ex. 2, § 2; MPA at 16. A person who may not identify her colleagues or say which customers she served cannot recruit, refer, or present her own experience to a new employer. It also covers "financial information" about

employees, with no exception for wages. A confidentiality agreement that covers employee pay is unlawful on its face. *Alberto v. Cambrian Homecare*, 91 Cal. App. 5th 482, 493–94 (2023). Epic answers that "proprietary" means "owned by Epic." Opp. at 15 n.5. The term "proprietary" can also means "information that a company or other entity wishes to keep confidential,"[1] and that is how the E[R]A clearly uses the term. After all, Epic does not *own* the "identities and talents" of its employees, yet it seeks to keep that information confidential. Overbroad confidentiality provisions are employment restraints and they are illegal. *Brown v. TGS Mgmt. Co.*, 57 Cal. App. 5th 303, 319 (2020).

Fifth, Epic objects to judicial notice of its public customer contracts and asks for a substantial bond. Opp. at 25:4–15. Epic's own declarant admits that its license agreements contain the hiring restraints. Peterson Decl. ¶¶ 8–9. And Epic cannot say with a straight face that it already complies with California law and simultaneously state that an order to do so will be costly.

Finally, the equities and the public interest favor Ms. Hull. Epic has no lawful interest in enforcing a void restraint, and it does "not dispute California's policy favoring employee mobility." Opp. at 24:8–9.

## V. The Court Should Decide This Motion Before Epic's Motion to Compel Arbitration

Epic asks the Court to deny this motion or hold it "in abeyance" until its motion to compel arbitration is decided. Opp. at 2:4–9, 25:19–22. It says the arbitration agreement permits resort to court "only" for emergency or temporary relief. The word "only" is Epic's. The agreement provides that "[n]othing in this agreement prohibits me or Epic from seeking emergency or temporary injunctive relief in a court of law," and that the parties must arbitrate "after the court has issued a ruling concerning the emergency or temporary injunctive relief." ECF 31-1, § IV. A preliminary injunction is temporary relief. It is "a temporary order designed to preserve the status of the parties," and a plaintiff who obtains one "has achieved only temporary success." *Lackey v. Stinnie*, 604 U.S. 192, 201 (2025). Its purpose "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Wisconsin, whose law Epic chose, calls the same order a "temporary injunction." Wis. Stat. § 813.02(1). A ruling on

[1] See https://legaldictionary.net/proprietary-information/

it is not the "complete merits ruling" Epic describes. "A preliminary injunction, of course, is not a preliminary adjudication on the merits . . . ." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). Epic's agreement puts the Court's ruling first.

Epic's own arguments require the same order of decision. Epic contends that Ms. Hull lacks standing to seek injunctive relief and that her request is moot. Those are questions about this Court's jurisdiction, and a federal court resolves its jurisdiction before it does anything else. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). That includes compelling arbitration, because "a court cannot rule on arbitrability without subject-matter and personal jurisdiction." *Hines v. Stamos*, 111 F.4th 551, 565 (5th Cir. 2024). Epic has told the Court that it will raise standing "before this Court with respect to non-arbitrable claims or matters." ECF 30 at 8 n.2. It has now done so, in opposing this motion. The Court should decide the motion, including Epic's jurisdictional objections, and then take up Epic's motion to compel.

## VI. Objections to the Peterson Declaration

Under Civil Local Rule 7-3(c), Ms. Hull objects to two statements in the Peterson declaration. She objects to the last sentence of paragraph 4, in which the declarant says she "confirmed by reviewing company records" that the September 30, 2025 email "was sent" to Ms. Hull. The declarant does not say that she sent the email or saw it sent, and the records are neither attached nor described. The statement lacks foundation and offers the contents of records that are not before the Court. Fed. R. Evid. 602, 1002. The exhibit shows only a blind-copy line with no recipients. She also objects to paragraph 5, where the declarant describes Epic's "intent" in sending emails that someone else wrote. She offers no basis for that knowledge. Fed. R. Evid. 602.

## CONCLUSION

Ms. Hull respectfully asks the Court to preliminarily enjoin Epic's unlawful conduct.

Dated: November 13, 2026

BAKER DOLINKO & SCHWARTZ, P.C.

By: /s/ Chris Baker
Chris Baker
*Attorneys for Plaintiff* ANDREA HULL