CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
DEBORAH SCHWARTZ, State Bar No. 208934
dschwartz@bakerlp.com
BAKER DOLINKO & SCHWARTZ, P.C.
220 Montgomery Street, Suite 1094
San Francisco, CA 94104
Telephone: (415) 433-1064

Attorneys for Plaintiff
ANDREA HULL

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**DIVISION: OAKLAND**

| | |
|---|---|
| ANDREA HULL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>EPIC SYSTEMS CORPORATION, a Wisconsin corporation; BOOST, INC., a Wisconsin corporation,<br><br>Defendants. | Case No. 4:26-cv-07702-AMO<br><br>**PLAINTIFF ANDREA HULL'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Hearing Date: January 7, 2027<br>Hearing Time: 2:00 p.m.<br>Courtroom: 5, 2nd Fl, 1301 Clay St, Oakland<br>Judge: Hon. Araceli Martínez-Olguín |

## TABLE OF CONTENTS

INTRODUCTION ..... 1
STATEMENT OF ISSUES ..... 2
STATEMENT OF FACTS ..... 3
I. The E[R]A ..... 3
II. The MAA ..... 4
ARGUMENT ..... 5
I. Under Any Analysis, The Court Must Decide the PI Motion Before the Arbitration Motion ..... 5
II. Plaintiff's Claims Fall Outside the Scope of the Arbitration Agreement. ..... 6
A. Under the E[R]A, All Claims Concerning the Enforceability of Epic's Employee Restraints Belong In Court ..... 6
1. The E[R]A and MAA Must Be Read Together As a Combined Agreement ..... 6
2. Claims Concerning The E[R]A Require A Court Action ..... 7
B. Under the MAA, All Representative Claims Belong in Court ..... 9
1. The PAGA claims ..... 9
2. The claims for public injunctive relief ..... 11
C. Under the MAA, Claims That Do Not Depend on Plaintiff's Employment Belong in Court ..... 12
III. Questions of Arbitrability Belong to the Court ..... 14
A. There Is No Clear and Unmistakable Waiver ..... 14
B. If Questions of Arbitrability Are Delegated to the Arbitrator, then the Delegation Provision Is Unconscionable ..... 15
IV. If the Combined Agreement Requires Plaintiff to Arbitrate Any of Her Claims, Then the MAA Is Unconscionable ..... 16
A. The Combined Agreement Was Imposed as a Condition of Employment ..... 16
B. The Terms Are One-Sided and Unlawful ..... 16
1. If Section 7 of the E[R]A Only Applies to Claims Brought by Epic, Then the Combined Agreement Is Impermissibly One-Sided ..... 16
2. The Confidentiality Covenant Keeps the Employee from Proving Her Claims ..... 17
3. The Discovery Limits Create Unreasonable Barriers to Necessary Discovery ..... 18

4. Section II Prohibits the Employee and the Arbitrator from Discovering and Considering Relevant Evidence ........ 19

5. The Choice of Wisconsin Law Violates the Labor Code ........ 20

6. The MAA Denies Other Employees the Benefit of any Ruling ........ 20

C. The Defects Cannot Be Severed ........ 21

V. The Court Should Not Stay Any Claims ........ 21

CONCLUSION ........ 22

## TABLE OF AUTHORITIES

**Cases**

*Alberto v. Cambrian Homecare*,
91 Cal. App. 5th 482 (2023)........ 17, 18

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ........ 9, 16, 19, 21

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023)........ 16

*Blair v. Rent-A-Center, Inc.*,
928 F.3d 819 (9th Cir. 2019)........ 12, 21

*Cal. Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) ........ 11

*Carmona v. Lincoln Millennium Car Wash, Inc.*,
226 Cal. App. 4th 74 (2014)........ 17

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ........ 5

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) ........ 15

*Cook v. Univ. of S. Cal.*,
102 Cal. App. 5th 312 (2024)........ 14

*DeMarinis v. Heritage Bank of Commerce*,
98 Cal. App. 5th 776 (2023)........ 9, 10

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ........ 14

*Fitz v. NCR Corp.*,
118 Cal. App. 4th 702 (2004)........ 18, 19

*Fuentes v. Empire Nissan, Inc.*,
19 Cal. 5th 93 (2026) ........ 6, 7, 16

*Howard v. Goldbloom*,
30 Cal. App. 5th 659 (2018)........ 13

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023)........ 13

*Johnson v. Lowe's Home Centers, LLC*,
93 F.4th 459 (9th Cir. 2024)........ 11

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ........ 21

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ........ 21

*Lumbo v. Kelly Services Global, LLC*,
2024 WL 3886275 (Cal. Ct. App. Aug. 21, 2024) ........ 10

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017) ........ 11, 12, 21

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
571 U.S. 191 (2014) ........ 8

*Mercuro v. Superior Court*,
96 Cal. App. 4th 167 (2002) ........ 17

*Mohamed v. Uber Technologies, Inc.*,
848 F.3d 1201 (9th Cir. 2016) ........ 15

*Murrey v. Superior Court*,
87 Cal. App. 5th 1223 (2023) ........ 20

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995) ........ 12

*Optum, Inc. v. Smith*,
360 F. Supp. 3d 52 (D. Mass. 2019) ........ 5

*Ortega v. UnitedHealth Group, Inc.*,
2024 WL 4495817 (N.D. Cal. Oct. 15, 2024) ........ 11

*Pinela v. Neiman Marcus Group, Inc.*,
238 Cal. App. 4th 227 (2015) ........ 2, 15, 16

*Ramirez v. Charter Commc'ns, Inc.*,
16 Cal. 5th 478 (2024) ........ 17, 19

*Rimler v. Ripple Junction Design Co.*,
2020 WL 13469576 (E.D.N.Y. Jan. 14, 2020) ........ 8

*Ruiz v. Kelly Servs. Glob., LLC*,
2026 WL 64283 (9th Cir. Jan. 8, 2026) ........ 15

*Sandler v. Modernizing Medicine, Inc.*,
170 F.4th 1209 (9th Cir. 2026) ........ 15

*Sandquist v. Lebo Auto., Inc.*,
1 Cal. 5th 233 (2016) ........ 8, 10

*Silva v. Cross Country Healthcare, Inc.*,
111 Cal. App. 5th 1311 (2025) ........ 17, 21

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
871 F.3d 791 (9th Cir. 2017) ........ 12

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) .......... 5

*Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022) .......... 9, 10

*Wainwright v. Goode*, 464 U.S. 78 (1983) .......... 7

*Westmoreland v. Kindercare Education LLC*, 90 Cal. App. 5th 967 (2023) .......... 10

**Statutes**

9 U.S.C. § 3 .......... 21
9 U.S.C. § 4 .......... 22
9 U.S.C. § 16 .......... 5
Cal. Bus. & Prof. Code § 16600 .......... 13
Cal. Bus. & Prof. Code § 16600.5 .......... 8, 17
Cal. Civ. Code § 1641 .......... 7
Cal. Civ. Code § 1642 .......... 6
Cal. Civ. Code § 1643 .......... 9, 14
Cal. Civ. Code § 3513 .......... 19
Cal. Civ. Code § 3521 .......... 6
Cal. Civ. Proc. Code § 22 .......... 7
Cal. Civ. Proc. Code § 1859 .......... 8, 11
Cal. Lab. Code § 232 .......... 18
Cal. Lab. Code § 925 .......... 16, 20
Cal. Lab. Code § 1197.5 .......... 18
Cal. Lab. Code § 2699 .......... 17
Wis. Stat. § 813.02 .......... 5

## INTRODUCTION

Defendants Epic Systems Corporation and Boost, Inc. (together, "Epic") ask the Court to send Plaintiff Andrea Hull's claims to a private arbitrator, to let that arbitrator decide the terms of Epic's arbitration agreement, and to stay everything else in this case until the arbitration ends. Epic misreads the law, its Employee [Restraints] Agreement ("E[R]A" for short) and its Mutual Arbitration Agreement ("MAA").

First, before there is any decision on Epic's arbitration motion – even a decision not to decide – the Court must rule on Plaintiff's preliminary injunction motion. Section IV of MAA requires it: "Nothing in this agreement prohibits me or Epic from seeking emergency or temporary injunctive relief in a court of law . . . (however, *after* the court has issued a ruling concerning [this] relief, Epic and I are required to submit the dispute to arbitration pursuant to this agreement)." MAA § IV (emphasis added). If the Court rules on Epic's arbitration motion first, Epic can prevent the Court from deciding the PI motion through a stay on appeal.

Second, Plaintiff's claims fall outside the scope of the MAA. Specifically: (1) Plaintiff alleges that various provisions of Epic's E[R]A are illegal. The E[R]A requires that these allegations – which concern the E[R]A's enforceability -- be resolved via a court action (E[R]A § 7); (2) Plaintiff alleges unwaivable representative claims under PAGA and the unfair competition law. The MAA declares a court "the exclusive forum for such claims" (MAA §§ IV, XI), and it forbids arbitration of "any form of a . . . representative proceeding." (3) The MAA also limits arbitration to claims that relate to or arise from Plaintiff's employment or Plaintiff's termination from employment. Plaintiff's claims concerning Epic's third-party employment restraints and Epic's post-employment conduct fall outside this scope.

Epic's response to all this is, maybe so, but the AAA Rules delegate such decisions to the arbitrator. This is not true. The MAA makes clear that the AAA Rules only apply to Covered Claims. (MAA § VI.2) These Rules have no role in determining if a claim is covered in the first place. Moreover, the Combined Agreement expressly assigns certain disputes to the Court, e.g., actions to enforce the E[R]A, representative proceedings, and preliminary injunctive relief. Because it does so, there has been no clear and unmistakable delegation of arbitrability to the arbitrator.

Regardless, a delegation of authority to the arbitrator is unconscionable when it requires the arbitrator to construe the arbitration agreement under non-California law when applied to a California employee (*Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 246–50 (2015)), and Epic's MAA does exactly that.

Epic's fall back response is Plaintiff misreads the E[R]A and MAA. But if Epic is right about that, it means the MAA is unenforceable because it is unconscionable. Specifically: (1) If the E[R]A enforceability provision is not mutual, then Epic may litigate the enforceability of its employment restraints in court, with an injunction, an advance concession of irreparable harm, and its attorneys' fees, while the employee must litigate the enforceability of the same restraints in arbitration with all its limitations; (2) the E[R]A forbids an employee to disclose or gather facts she needs to prove her claims in arbitration, and the MAA's exception for a party preparing a claim does not reach the E[R]A; (3) the MAA replaces the AAA's discovery rules with limits that prevent the employee from proving their claim; (4) the MAA bars employees from participating in one another's claims and bars the arbitrator from notifying others of a claim, which keeps the employee from her witnesses; (5) both agreements select Wisconsin law for a California employee, in violation of the Labor Code; and (6) the MAA makes every award confidential and without effect in any other employee's case. These terms cannot be lawfully severed without rewriting the agreement, which a court may not do.

The bottom line is that the Court must first decide Plaintiff's PI Motion. After that decision, the Court should deny Epic's arbitration motion because either: (1) Plaintiff's claims are not covered by the MAA; or (2) the MAA is unconscionable and thus unenforceable; or (3) some combination of (1) or (2). All paths lead to the same place: Plaintiff's claims being finally resolved in this Court (after, no doubt, a lengthy appeal process).

A final note. Because there is nothing to arbitrate there is nothing to stay. If, however, the Court finds that some of Plaintiff's claims are arbitrable, it should not stay the remainder.

## STATEMENT OF ISSUES

1. Whether the Court should decide the PI Motion before Epic's motion to compel arbitration.

2. Whether Ms. Hull's claims fall outside the scope of the MAA.

3. Whether the Court or an arbitrator decides if a claim is arbitrable.

4. Whether the MAA is enforceable.

5. Whether any claim should be stayed.

**STATEMENT OF FACTS**

Ms. Hull worked for Epic and its subsidiaries for more than eleven years. Hull Decl. (ECF 18) ¶ 2. In June 2025, Epic required her to sign a packet of documents as a condition of her transfer to its subsidiary Boost in California. *Id.* ¶¶ 29–30; Peterson Decl. (ECF 31) ¶ 5. She signed them on one day, in one DocuSign envelope. Hull Decl. ¶ 30 & Ex. 2 (ECF 18-2). She was given no opportunity to negotiate any of them and had no lawyer. *Id.* ¶ 30. The packet contained an "Employment Agreement" that consists almost entirely of employment restraints (hence Employee [Restraint] Agreement (E[R]A)), as well as the MAA. *Id.* Ex. 2 at 2–4 (E[R]A), 9–10 (MAA). This opposition refers to the two together as the "Combined Agreement."

Ms. Hull worked for Epic from her home in Concord, California from July 2025 until she resigned on March 9, 2026. Hull Decl. ¶¶ 2, 31; FAC (ECF 13) ¶ 41.

**I. The E[R]A**

The E[R]A contains the restraints at issue in this case. Section 4 is titled "Covenant Not to Compete and Additional Restrictions." For one year after the employment ends, the employee may not work for any company on Epic's list of competitors, for any Epic customer in a role that involves Epic software, or for any of Epic's consultants and partners. E[R]A § 4. Section 2 is a confidentiality covenant with no end date. It forbids the employee ever to disclose, among other things, "financial information about the Epic Group, its employees," and the "identities and talents of specific Epic Group employees." *Id.* § 2. Section 8 selects Wisconsin law. *Id.* § 8.

Section 7 of the E[R]A provides for its enforcement. The employee acknowledges in advance that any breach "will result in irreparable and continuing damage." Epic and Boost "may seek and obtain injunctive relief to enforce the provisions of this agreement," and nothing prevents them "from seeking any other remedies." If Epic or Boost "is successful in any <u>action</u> to enforce this agreement," it recovers "its actual attorneys' fees and costs for such <u>action</u>." *Id.* § 7

(emphasis added). The E[R]A does not mention arbitration. Section 1 provides that Sections 2, 3, 4, 6, 7 and 8 "shall survive the termination of employment." *Id.* § 1.

**II. The MAA**

The MAA requires arbitration of "Covered Claims," which are claims between Epic and the employee "that relate to or arise out of my employment or the termination of my employment." MAA § I. Section IV provides that nothing in the MAA prohibits either side "from seeking emergency or temporary injunctive relief in a court of law," and that the parties must submit the dispute to arbitration "after the court has issued a ruling." *Id.* § IV (emphasis added). Section II of the MAA ( "Waiver of Class and Collective Claims") provides that Covered Claims can be arbitrated only individually, that both sides "waive the right to participate in or receive money or any other relief from any class, collective, or representative proceeding," and that an arbitrator may not "arbitrate any form of a class, collective, or representative proceeding" or "participate in or facilitate notification of others of potential Covered Claims." *Id.* § II (emphasis added). Section XI provides that if the waiver in Section II "is found to be unenforceable, then any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims." *Id.* § XI. Section V provides that "[n]either side is entitled to its attorneys' fees except as provided for by applicable law." *Id.* § V.

The MAA refers to the rules of the American Arbitration Association in a section titled "How to File for Arbitration," and it modifies those rules. *Id.* § VI.2. It limits each side to one interrogatory limited to only the identification of witnesses, twenty-five document requests, and two days of depositions. *Id.* § VI.2.b(3)–(5). It makes the arbitration and the award confidential, provides that no award "shall serve as precedent in other arbitrations," and selects Wisconsin law. *Id.* §§ VI.2.c(2), VIII, XII.

Ms. Hull moved for a preliminary injunction on October 4, 2026. ECF 15–19. Epic moved to compel arbitration on October 30 and noticed its motion for the same day as the injunction hearing. ECF 29, 30 ("Mot."). In opposing the injunction, Epic acknowledged that the MAA permits resort to court for temporary injunctive relief and that it "routes representative claims to

court if the waiver is unenforceable." ECF 39 ("PI Opp.") at 2:4–7, 18:21–22. Epic nonetheless asked the Court to reverse the order of things, and hold the PI Motion in abeyance until the arbitration motion is decided. *Id.* at 2:8–9, 25:20–22.

## ARGUMENT

### I. Under Any Analysis, The Court Must Decide the PI Motion Before the Arbitration Motion

Before anything else, the Court must decide the PI Motion.

If the MAA is enforceable, then Epic is bound by Section IV, which allows either side to seek "emergency or temporary injunctive relief in a court of law" and requires arbitration only "after the court has issued a ruling." MAA § IV (emphasis added). A preliminary injunction is temporary injunctive relief. Wisconsin law, which the MAA selects, calls an injunction granted "during the litigation" a "temporary injunction." Wis. Stat. § 813.02(1)(a). Its purpose "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A federal court construing the same language held that the parties "clearly and unmistakably agreed that a court would have the authority to issue temporary injunctive relief before compelling arbitration." *Optum, Inc. v. Smith*, 360 F. Supp. 3d 52, 56 (D. Mass. 2019), appeal dismissed, 2019 WL 3564709 (1st Cir. Feb. 27, 2019).

If, on the other hand: (1) Plaintiff's claims fall outside the scope of the arbitration or (2) the MAA is unenforceable, then there is nothing to arbitrate, and the PI Motion is a pending motion for injunctive relief based on ongoing irreparable harm.

The order of the two rulings also matters, because any ruling on the arbitration motion stops the case. An order compelling arbitration brings Epic's request for a stay. If the Court denies the requested stay, then Epic can appeal and obtain the stay regardless pending appeal. 9 U.S.C. § 16(a)(1)(A). An order denying arbitration – with or without prejudice – can also be appealed, and the appeal again stays the case automatically. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740–41 (2023). Section IV promises a court ruling on temporary relief. That ruling is possible only if it comes before the ruling on arbitration.

Epic drafted the sequence of proceedings and now asks the Court to help it avoid the sequence by holding the PI Motion in abeyance. PI Opp. at 2:8–9, 25:20–22. A party may not take the benefit of its contract and refuse the burden. Cal. Civ. Code § 3521. Epic's only answer is that the PI Motion seeks too much. PI Opp. at 2:7–8. This is incorrect, and in any event it is an argument about the merits of the PI Motion. It is not a reason to postpone deciding it.

Finally, Epic noticed its October 30, 2026 motion for January 7, 2027, the date of the PI hearing, even though the Court's scheduling page showed, as of October 15, that the earliest available date on the civil motion calendar was February 2027. ECF 23 at 2:20–22. Epic noticed January 7 fifteen days later. The Court's standing order provides that parties "should confirm the Court's availability prior to filing any noticed motion by referring to the Court's scheduling page," and that "[a]ny motion noticed for hearing on a closed hearing date will automatically be re-set by the Court." Civil Standing Order § B (emphasis added). Ms. Hull objects to Epic's attempt to unilaterally "jump in line" and obtain an advanced hearing date in derogation of the Court's standing order. She requests, consistent with the Court's order, that Epic's motion be reset to a later available date.

## II. Plaintiff's Claims Fall Outside the Scope of the Arbitration Agreement.

### A. Under the E[R]A, All Claims Concerning the Enforceability of Epic's Employee Restraints Belong in Court

#### 1. The E[R]A and MAA Must Be Read Together as a Combined Agreement

"Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642. The California Supreme Court applied that rule this year to an arbitration agreement and the companion agreements an employer had the same employee sign. *Fuentes v. Empire Nissan, Inc.*, 19 Cal. 5th 93, 108–09 (2026).

Civil Code § 1642 applies here. Epic presented the E[R]A and the MAA to Ms. Hull in one envelope, on one day, as conditions of one transfer. Hull Decl. ¶ 30 & Ex. 2. They bind the same parties. Both concern the resolution of disputes arising from her employment. Both were conditions of the same employment. The E[R]A recites that its promises are made "in consideration for

entering or continuing in the employment," and the MAA provides that accepting employment "is deemed to be acceptance" of it. E[R]A § 1; MAA § I. The E[R]A names Epic as a beneficiary entitled to enforce it, and the MAA defines "Epic" to include Boost. E[R]A § 7; MAA § I. The MAA says which claims are arbitrated, and the E[R]A says how that agreement is enforced. The MAA and E[R]A must be read together as a single Combined Agreement.

It follows that the scope of the MAA cannot be decided by reading the MAA alone. The parts of a contract are read together so as to give effect to every part. Cal. Civ. Code § 1641. The MAA describes in general terms the claims that are arbitrated. Section 7 of the E[R]A describes in specific terms how disputes over the enforcement of the E[R]A are brought and heard.

**2. Claims Concerning The E[R]A Require A Court Action**

The E[R]A never references arbitration. Instead, Section 7 of the E[R]A sets forth the terms for "any action to enforce this agreement." E[R]A § 7 (emphasis added).

An "action" is a proceeding in court. *Fuentes* has conclusively decided the point and it has the final say in the interpretation of California contracts. *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). In *Fuentes*, as here, the employer's restraints agreement allowed the employer to seek any remedy at law or in equity and awarded fees to the prevailing party in a "legal action" to enforce the restraints. The Supreme Court read those words in their "ordinary, popular sense, which . . . is a proceeding in court, not an arbitration." 19 Cal. 5th at 108. In doing so, it relied on the statutory definition of the word "action" itself, which is "an ordinary proceeding in a court of justice." Cal. Civ. Proc. Code § 22. It further held that the restraints agreement's "silence about the forum for dispute resolution therefore indicates that the parties did not intend disputes to be subject to mandatory arbitration." 19 Cal. 5th at 109.

The same outcome follows here. The E[R]A awards Epic its "actual attorneys' fees" under the contract in an action to enforce the E[R]A. The MAA, on the other hand, states "[n]either side is entitled to its attorneys' fees except as provided for by applicable law." E[R]A § 7; MAA § V. A proceeding in which Epic recovers contractual fees cannot be an arbitration under the MAA. Nor can it be the proceeding described in Section IV of the MAA, which allows only "emergency or temporary" relief. MAA § IV. Section 7 allows Epic to "seek and obtain" an injunction without

that limit and "any other remedies" besides. The action that Section 7 describes is a court action, carried to judgment. Section 7 is also one of the provisions that, by the E[R]A's own terms, "shall survive the termination of employment." E[R]A § 1. The MAA contains no such term.

A claim that the restraints in the E[R]A are illegal and unenforceable is a dispute over their enforcement. Ms. Hull's claims on the E[R]A present one question, which is whether Sections 2 and 4 (the confidentiality covenant and the covenant not to compete) may be enforced. A suit by Epic under Section 7 would present the same question. The law treats the two as one controversy. A declaratory claim takes its character from the coercive claim it anticipates. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197–98 (2014). The Legislature describes Ms. Hull's claim in the words of Section 7. An employee "may bring a private action to enforce this chapter." Cal. Bus. & Prof. Code § 16600.5(e)(1). And a court construing a clause that governed "any action to enforce any provision of this Agreement" held that it "applies to Plaintiff's claims for relief to declare the NDA null and void and prevent its future enforcement." *Rimler v. Ripple Junction Design Co.*, 2020 WL 13469576, at *6 (E.D.N.Y. Jan. 14, 2020). The text of Section 7 points the same way. Its last sentence does not speak of an action that Epic brings. It speaks of an action in which Epic "is successful," and Epic can be successful in an action over the enforcement of the E[R]A as a plaintiff or as a defendant.

Ms. Hull's claims challenging the E[R]A restraints therefore belong in court. That is her First Claim (the challenge to the restraints in her own E[R]A under Business and Professions Code sections 16600 to 16600.5), and her Third Claim (unfair competition) and Fourth Claim (declaratory relief) to the extent they rest on the E[R]A. FAC ¶¶ 86–91, 96–106.

Epic argues that Covered Claims include every employment claim that the MAA does not expressly exclude. Mot. at 7:27–8:9. But the E[R]A and the MAA are a combined agreement, read together, and when a general and a particular provision are inconsistent, "the latter is paramount to the former." Cal. Civ. Proc. Code § 1859. If any doubt remains, it is resolved against Epic. Where an agreement "has been prepared entirely by the employer," its ambiguities "must be construed against the drafting employer and in favor of the nondrafting employee." *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016).

Epic might also argue that Section 7 applies only when Epic brings the lawsuit, and not when the employee does. That reading cannot be adopted, because it would make the MAA entirely unenforceable. On that reading, Epic would litigate in court whether the restraints may be enforced, and the employee would arbitrate whether the same restraints are unenforceable. An arbitration agreement "lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 120 (2000). A contract is read, where it can be, in the way that makes it lawful. Cal. Civ. Code § 1643. The reading that keeps both sides' claims over the restraints in court is the lawful one.

**B. Under the MAA, All Representative Claims Belong in Court**

**1. The PAGA claims**

The MAA says two things about representative proceedings. The first concerns the forum and limitations on the forum: "Covered Claims will be arbitrated only on an individual basis," and the arbitrator cannot "arbitrate <u>any form</u> of a class, collective, or <u>representative</u> proceeding." MAA § II ("Waiver of Class and Collective Claims") (emphasis added). The second is a blanket waiver: "both Epic and I waive the right to participate in or receive money or any other relief from any class, collective, or representative proceeding." *Id.* The waiver is not limited to Covered Claims or to arbitration, and Epic invokes it in this Court as an (unpersuasive) basis for limiting the scope of Plaintiff's requested preliminary relief. Mot. at 10:5–8; PI Opp. at 10:15–16.

The MAA also says what happens if the blanket waiver is unlawful. Rather than severing the term, it declares the forum in which the unwaivable claims must proceed: "Provided, however, that if the Waiver of Class and Collective Claims is found to be unenforceable, then any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims." MAA § XI ("Savings Clause & Conformity Clause").

*Every* PAGA action is representative, because the plaintiff sues as the agent of the State. *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 648 (2022); *DeMarinis v. Heritage Bank of Commerce*, 98 Cal. App. 5th 776, 790 (2023). As a result, no part of any PAGA action falls outside

the scope of Epic's blanket waiver. And a waiver of the right to bring a PAGA action is unenforceable in every form, "either in its individual or nonindividual sense." *DeMarinis*, 98 Cal. App. 5th at 786–87; *Viking River*, 596 U.S. at 662. Epic does not defend its waiver. Epic asks the Court to sever it. Mot. at 11:4–12. Because the waiver is unenforceable, the proviso in Section XI of the MAA (the savings clause) requires that every part of the PAGA action be heard in court. It sends to court "any claim brought on a . . . representative action basis." A recent California Court of Appeal case construing the same language at issue here has already reached this obvious conclusion. The employee's PAGA claims, "both individual and non-individual," were "excluded from arbitration." *Lumbo v. Kelly Services Global, LLC*, 2024 WL 3886275, at *3 (Cal. Ct. App. Aug. 21, 2024) (unpublished); *see* also *Westmoreland v. Kindercare Education LLC*, 90 Cal. App. 5th 967, 979–82 (2023).

The arbitration agreement in *Viking River* differs from the one here. The arbitration agreement in *Viking River* permitted the submission of an individual PAGA claim to arbitration because the agreement permitted arbitration of a PAGA claim to the extent the claim was based on violations personally suffered by the individual employee. In other words, the agreement there sent representative actions to court if its waiver failed but added that any "portion" of the waiver that remained valid would be "enforced in arbitration." The Supreme Court sent the individual PAGA claim to arbitration "[b]ased on this clause." 596 U.S. at 647, 662. The MAA has no such sentence. If the MAA is ambiguous on the point, it is read against Epic. *Sandquist*, 1 Cal. 5th at 248.

In response to this straightforward analysis, Epic makes two, not entirely coherent, arguments. The first is that Section IV of the MAA ("Claims not Covered by this Agreement") excludes "any claims that cannot be required to be arbitrated as a matter of law," so that the non-individual PAGA claims were never covered and no waiver has failed. Mot. at 11:1–4. The argument fails whichever way the law is read. If an agreement may require arbitration of non-individual PAGA claims, *see Viking River*, 596 U.S. at 656–57, then Section IV does not exclude them. They are Covered Claims, for which "arbitration is the only litigation forum," MAA § I, but which the arbitrator may not hear, because he may not "arbitrate any form of a class, collective, or representative proceeding." *Id.* § II. If an agreement may not require arbitration of all PAGA claims,

the blanket waiver still bars Ms. Hull from taking part in a PAGA court action or receiving relief from it, because the waiver is not limited to Covered Claims. Under either view the waiver remains unenforceable.

Epic's second argument is that the Court should sever the waiver and send the "individual" PAGA claim to arbitration. Mot. at 11:4–12. Section XI of the MAA (the savings clause) forecloses that. Its first sentence states the general rule of severance. Its second sentence, which begins "Provided, however," states the rule applicable to the representative waiver. It is a blanket waiver of all representative claims, and a particular provision controls a general one. Cal. Civ. Proc. Code § 1859. Neither of Epic's cases construed a sentence like it. *Johnson v. Lowe's Home Centers, LLC*, 93 F.4th 459, 464 (9th Cir. 2024); *Ortega v. UnitedHealth Group, Inc.*, 2024 WL 4495817, at *8 (N.D. Cal. Oct. 15, 2024).

**2. The claims for public injunctive relief**

Ms. Hull's claims under the Business and Professions Code seek an injunction against Epic's restraints on competition. An injunction with the "primary purpose and effect" of prohibiting unlawful acts that threaten future injury to the public is public injunctive relief. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017). An injunction against an agreement not to compete is relief of that kind, because it "would provide diffuse benefits to the public by potentially bolstering competition." *Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1036–37 (N.D. Cal. 2024). The same order also frees Ms. Hull. That a public and private injunctive relief is co-extensive does not make either unattainable or off limits. Epic answers that the relief benefits only "a defined group." Mot. at 10:1–4. An order against restraints that bind every Epic employee, customer, consultant, and partner, and that keep Epic's competitors from hiring, benefits everyone who hires or is hired in that market.

Epic reads the waiver in Section II of the MAA to bar any relief that reaches beyond Ms. Hull, and it asks this Court to strike that relief. Mot. at 9:4–10:8; PI Opp. at 10:15–16. On that reading the waiver applies in every forum. A contract that waives the right to seek public injunctive relief "in any forum" is unenforceable, and the Federal Arbitration Act does not preempt that rule.

*McGill*, 2 Cal. 5th at 952, 961; *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 827–31 (9th Cir. 2019). As Epic reads it, then, the waiver is unenforceable.

The MAA says where the claim goes in that event. If the waiver "is found to be unenforceable, then any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction." MAA § XI (the savings clause). The Ninth Circuit enforced a clause of this kind in *Blair*. The agreement there barred any dispute from being arbitrated as a "representative action," and the court held that the bar "precludes the arbitrator from awarding public injunctive relief." 928 F.3d at 831. The agreement also provided that a claim the bar could not lawfully reach "must be severed from the arbitration and may be brought in court." *Id.* The whole claim went to court. *Id.* at 831–32.

Epic cannot avoid Section XI by denying that the request is a representative one. The waiver reaches only "class, collective, or representative" proceedings, and Epic invokes it against these claims, which it describes as ones that "seek relief on behalf of others." PI Opp. at 9:27, 10:15–16. If the request is representative, the waiver reaches it, the waiver fails under *McGill*, and Section XI sends the claims to court.

### C. Under the MAA, Claims That Do Not Depend on Plaintiff's Employment Belong in Court

The MAA covers only claims that "relate to or arise out of my employment or the termination of my employment." MAA § I (the agreement to arbitrate). The Supreme Court has warned against reading "relate to" to "the furthest stretch of its indeterminacy," because "relations stop nowhere." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). Here, the relations stop at claims that depend on the employment relationship or its terms. The test applied to determine the scope of the Covered Claim definition is whether a person who never worked for Epic could bring the same claim. It is not enough that the claim would not have arisen but for the employment.

The Ninth Circuit so held under a clause broader than Epic's, one that covered claims "having any relationship or connection whatsoever" with the employment. Claims do not relate to employment "simply because the assault occurred at the plaintiff's workplace or would not have

occurred but for the plaintiff's employment." *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017). California applies the same test. A clause like Epic's does not reach wrongs whose harm is "not measured by or dependent on the terms of [the] employment," where a person who had never been employed there "could bring the same claims." *Howard v. Goldbloom*, 30 Cal. App. 5th 659, 669–70 (2018). So does *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1102 (9th Cir. 2023), which kept in court claims that persons outside the contract "could likely assert" as well. An employer's argument that a claim relates to the employment because the employment came first "proves too much." *Howard*, 30 Cal. App. 5th at 670. "If his former employer fraudulently gained access to his account two years later and looted it, no reasonable person would argue that an action to recover that money was one rooted in the employment relationship simply because the money in the account came from the employee's salary." *Id.* at 670–71.

Ms. Hull's Second Claim, which challenges the no-hire and waiting-period terms in Epic's contracts with its customers, consultants, and partners, does not depend on her employment. FAC ¶¶ 77–78, 92–95. Ms. Hull did not sign those contracts, and they do not turn on the terms of her employment. California law gives a person restrained by such a contract the right to challenge it whether or not she is a party to it. Cal. Bus. & Prof. Code § 16600(c). Section 16600 reaches every contract by which "anyone" is restrained, and it protects third parties as well as the parties to the contract. *Id.* § 16600(a), (c). The health systems, consultants, and partners are restrained by their own contracts with Epic in whom they may hire, and none of them ever worked for Epic. They are restrained again by the E[R]A, which forbids Epic's employees to work for them, and Epic's competitors are restrained by the E[R]A in the same way. Any of them could bring the same challenge to the same terms. It does not matter that Ms. Hull came to be restrained because she once worked for Epic. In *Howard* the plaintiff had received much of his stock as compensation for his employment, and the claim still was not arbitrable, because any shareholder could have brought it. 30 Cal. App. 5th at 669–70.

The same is true of Ms. Hull's claims on what Epic did after March 9, 2026, when it denied her access to its UserWeb and her new employer restricted her work because of its business

relationship with Epic. FAC ¶¶ 57–60; Hull Decl. ¶¶ 40–45. Epic acted toward another company's employee, and its explanation was that its "customer contracts often include provisions related to hiring." FAC ¶ 62. Epic may argue that this conduct was enforcement of Section 4 of the E[R]A (the covenant not to compete). If so, the outcome is the same. A dispute over the enforcement of the E[R]A belongs in court under Section 7 of the E[R]A (the enforcement clause), for the reasons in Part II.A.

The text of the Combined Agreement confirms that the MAA does not follow a former employee indefinitely. Covered Claims are claims that "arise or have arisen." MAA § I. The E[R]A, by contrast, provides that its restraints and its enforcement clause "shall survive the termination of employment." E[R]A § 1 (the contract clause). The MAA has no such sentence. Epic knew how to make a term outlive the employment, and it did so in the E[R]A alone.

Epic argues that the MAA reaches its "alleged post-employment enforcement conduct" and the "rights she claims as a former employee." Mot. at 8:4–7. On that reading the words "relate to" reach any claim by a person who once worked for Epic. A clause that reaches claims unrelated to the employment, without limit in time, is unconscionable. *Cook v. Univ. of S. Cal.*, 102 Cal. App. 5th 312, 321–26 (2024). A contract is read to avoid that result. Cal. Civ. Code § 1643. The Second Claim (the challenge to Epic's contracts with its customers, consultants, and partners), and the Third Claim (unfair competition) and Fourth Claim (declaratory relief) to the extent they rest on those contracts, are not Covered Claims.

## III. Questions of Arbitrability Belong to the Court

### A. There Is No Clear and Unmistakable Waiver

A court decides whether a dispute is arbitrable unless there is "clea[r] and unmistakabl[e]" evidence that the parties agreed an arbitrator would. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations in original). The MAA has no delegation clause. Epic relies on its reference to the AAA rules. Mot. at 7:10–16. This reference is not a clear and unmistakable delegation.

First, the reference appears in the section titled "How to File for Arbitration," after the MAA has defined the Covered Claims and listed the exclusions. MAA § VI.2. The rules therefore apply

once a Covered Claim is in arbitration. They do not decide whether a claim is a Covered Claim in the first place. The Ninth Circuit so held this year on an agreement built the same way. That structure "suggests the rules apply only to the universe of 'Covered Claims,' not to any initial disputes about who decides the scope of arbitration." *Ruiz v. Kelly Servs. Glob., LLC*, 2026 WL 64283, at *1 (9th Cir. Jan. 8, 2026) (unpublished).

Second, the Combined Agreement assigns the disputes at issue here to a court. The reference to the AAA rules appears only in the MAA. The E[R]A provides for a court "action" to enforce it and says nothing of arbitrators or their rules. E[R]A § 7 (the enforcement clause). Where parties have two contracts, one of which sends questions of arbitrability to an arbitrator and the other of which sends them to a court, "a court must decide which contract governs." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024). The MAA's savings clause provides that if the class waiver "is found to be unenforceable," representative claims "must be filed in a court of competent jurisdiction," which is "the exclusive forum for such claims." MAA § XI. A claim that must be filed in court is before a court when that finding is made. And the MAA leaves requests for temporary injunctive relief to "a court of law." *Id.* § IV (the list of claims not covered). An agreement that sends these disputes to a court has not clearly and unmistakably sent the question of their arbitrability to an arbitrator. *See Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (delegation did not reach questions the agreement reserved for a court). Epic's lead case concerns a general severability clause. *Sandler v. Modernizing Medicine, Inc.*, 170 F.4th 1209, 1212–13 (9th Cir. 2026). This case does not turn on a general severability clause.

### B. If Questions of Arbitrability Are Delegated to the Arbitrator, then the Delegation Provision Is Unconscionable

If, as Epic argues, the reference to the AAA Rules constitutes a delegation to the arbitrator of questions concerning arbitrability, then the delegation itself is unconscionable. Specifically:

The California Court of Appeal has held a delegation unconscionable where the agreement selected another State's law, because the choice of law impaired the employee's ability to argue to the arbitrator that the agreement was unconscionable under California law. *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 246–50 (2015). A party may challenge a delegation on

that ground, and may rely on other terms of the agreement to do so, as long as she explains how those terms make the delegation itself unfair. *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009–12 (9th Cir. 2023).

*Pinela* applies here. The MAA selects Wisconsin law. MAA § XII. Epic's motion applies California law "for purposes of this Motion only" and reserves the right to argue that Wisconsin law governs. Mot. at 6 n.1. Whether an arbitration agreement is enforceable is a question of state contract law. If an arbitrator decided that question, the arbitrator would first have to decide which State's law applies. Ms. Hull would have to win that dispute before she could invoke the California law of unconscionability on which this opposition rests. An employer may not require an employee who lives and works in California to agree to a provision that would deprive her of the protection of California law. Cal. Lab. Code § 925(a)(2).

## IV. If the Combined Agreement Requires Plaintiff to Arbitrate Any Of Her Claims, then the MAA Is Unconscionable

An agreement is unenforceable if it is both procedurally and substantively unconscionable. The two are weighed on a sliding scale, so that the more of one is present, the less of the other is required. *Armendariz*, 24 Cal. 4th at 114.

### A. The Combined Agreement Was Imposed as a Condition of Employment

The Combined Agreement was a condition of Ms. Hull's transfer. Epic's own declarant says so. Peterson Decl. ¶ 5; Hull Decl. ¶ 30. Ms. Hull had no opportunity to negotiate it and no lawyer. Hull Decl. ¶ 30. It is a contract of adhesion. Where an agreement is imposed in that way, a court scrutinizes its terms closely for one-sidedness and resolves ambiguities against the party that wrote it. *Fuentes*, 19 Cal. 5th at 104, 106.

### B. The Terms Are One-Sided and Unlawful

#### 1. If Section 7 of the E[R]A Only Applies to Claims Brought by Epic, then the Combined Agreement is Impermissibly One-Sided

Section 7 of the E[R]A (the enforcement clause) provides for a court action (Part II.A.2). The remaining question is whose action. If Section 7 applies only when Epic sues, then the Combined Agreement lacks mutuality, and the agreement to arbitrate cannot be enforced.

An agreement lacks mutuality if it requires one party, but not the other, to arbitrate claims arising out of the same transaction. *Armendariz*, 24 Cal. 4th at 117–20. Ms. Hull claims that Sections 2 and 4 of the E[R]A (the confidentiality covenant and the covenant not to compete) are unenforceable, and she seeks an injunction, a declaration, and her fees. FAC ¶¶ 86–91, 104–06. Epic's claim under Section 7 would be that the same sections are enforceable and were breached, and Epic would seek an injunction, damages, and its fees. E[R]A § 7. The two claims arise out of one transaction. They concern the same contract, the same clauses, and the same question, and each is the defense to the other. On Epic's reading, Ms. Hull's side of that dispute goes to arbitration and Epic's side goes to court. An employer may not "avoid a corresponding obligation to arbitrate" its own claim against the employee "by the simple expedient of requesting injunctive or declaratory relief." *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 176 (2002).

Epic has no justification that California law accepts. Temporary relief from a court is already available to both sides under Section IV of the MAA (the list of claims not covered), and a carve-out that reaches "a permanent injunction" "goes beyond" that need. *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 499 (2024). An agreement "lacks mutuality when it presumes harm" to the employer alone. *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 89 (2014). And a one-way fee term "is still unconscionable as written," *Silva v. Cross Country Healthcare, Inc.*, 111 Cal. App. 5th 1311, 1328 (2025), and is contrary to the statutes on which Ms. Hull sues, which award fees to a prevailing employee. Cal. Bus. & Prof. Code § 16600.5(e)(2); Cal. Lab. Code § 2699(k)(1).

The defect is not Section 7 standing alone, which a court could strike. It is the pairing of a court for Epic's claim with arbitration for the employee's, and no deletion cures that without adding terms (Part IV.C).

### 2. The Confidentiality Covenant Keeps the Employee from Proving Her Claims

A term that violates the Labor Code is unconscionable, and it bears on arbitration when it impairs the employee's ability to bring her claims. *Alberto v. Cambrian Homecare*, 91 Cal. App. 5th 482, 493–94 (2023). The employer in *Alberto* required the employee to sign an arbitration

agreement and a confidentiality agreement that treated compensation and other employee information as confidential. The court refused to enforce the arbitration agreement.

Section 2 of the E[R]A (the confidentiality covenant) is broader than the term in *Alberto*. It forbids an employee, forever and without exception, to disclose financial information about Epic's employees and the "identities and talents" of her co-workers. E[R]A § 2. California prohibits an employer from requiring an employee to refrain from disclosing her wages or discussing the wages of others. Cal. Lab. Code §§ 232, 1197.5(k)(1). Section 2 keeps an employee from proving her claims in three ways. She cannot identify her witnesses, because the people who know how Epic applies its restraints are her co-workers, and she may not disclose who they are. She cannot show how she was treated compared with others, because she may not disclose what they are paid or what they do. And she cannot prove a claim brought for other employees, because that claim depends on showing who signed the same terms and what happened to them. Section 2 makes no exception for a disclosure to the employee's own lawyer, to an arbitrator, or to the State.

The MAA does not cure the problem. Its confidentiality section contains an exception for a party "investigating, preparing for, or presenting or defending against Covered Claims." That exception applies by its terms to "[t]his [the MAA's] confidentiality provision," which is the MAA's alone. MAA § VIII. Nothing in either document relieves the employee of her Section 2 obligations when she prepares her case.

**3. The Discovery Limits Create Unreasonable Barriers to Necessary Discovery**

An employee who must arbitrate statutory claims is entitled to discovery adequate to prove them. *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 717–19 (2004). The AAA rules that Epic invokes direct the arbitrator to manage discovery so as to safeguard each party's opportunity to fairly present its claims and defenses, and they allow the arbitrator to order electronic documents produced in another form for good cause. ECF 32-1 at 17–18 (Rule 21). The MAA replaces those rules with its own. It allows one interrogatory, limited to the identification of witnesses, twenty-five document requests, and two days of depositions. It forbids broad collection of electronic information unless the requesting party shows "compelling need," and even then it excludes metadata. It allows the

arbitrator to condition production on the requesting party's advancing the other side's costs. Anything further requires a showing of "substantial need." MAA § VI.2.b (the discovery terms).

The California Court of Appeal held unconscionable a discovery framework that used the same "compelling need" standard. In *Fitz*, the arbitration agreement allowed two depositions and conditioned further discovery on "compelling need." 118 Cal. App. 4th at 716–18. Limits of that kind fall on the employee even when they apply to both sides, because the employer already holds the documents and employs the witnesses. *Id.* at 716. And "the burden the [agreement] imposes on the requesting party is so high and the amount of discovery the [agreement] permits by right is so low that employees may find themselves in a position where not only are they unable to gain access to enough information to prove their claims, but are left with such scant discovery that they are unlikely to be able to demonstrate to the arbitrator a compelling need for more discovery." *Id.* at 717–18. Epic's standards also fall below the minimum that California sets for the arbitration of unwaivable statutory rights. An employee who must arbitrate such a claim is "at least entitled to discovery sufficient to adequately arbitrate [the] statutory claim, including access to essential documents and witnesses." *Armendariz*, 24 Cal. 4th at 106. Ms. Hull's rights under section 16600 and the Labor Code exist for a public reason and cannot be waived by private agreement. *See id.* at 100–01; Cal. Civ. Code § 3513.

The limits also fall on the employee alone. In deciding whether discovery limits are unconscionable, a court considers "any asymmetries between the parties with regard to discovery." *Ramirez*, 16 Cal. 5th at 506. On Epic's reading of Section 7 of the E[R]A (the enforcement clause), the claims Epic is most likely to bring go to court, where the ordinary rules of discovery apply, and the claims an employee is most likely to bring go to arbitration under these limits. The limits are mutual on paper and one-sided in effect.

#### 4. Section II Prohibits the Employee and the Arbitrator from Discovering and Considering Relevant Evidence

Section II of the MAA (the class waiver) contains two more terms that are mutual on paper and fall on the employee alone. In the first, each employee waives "the right to participate in" any representative proceeding. MAA § II. To participate is to take part, whether as a party, a witness,

or a source of information (Part II.B.1). The witnesses to Epic's practices are Epic's employees. A term that keeps them out of one another's cases costs Epic nothing and costs the employee her proof. In the second, the arbitrator may not "participate in or facilitate notification of others of potential Covered Claims." *Id.* A subpoena to a co-worker tells her that a claim like hers has been made. So does an order that Epic produce what other employees signed and what happened to them. On its face the term forbids the arbitrator to issue either. Epic needs no subpoena to reach its own employees or its own records. The employee has no other way to reach them.

**5. The Choice of Wisconsin Law Violates the Labor Code**

Both agreements select Wisconsin law. E[R]A § 8; MAA § XII. An employer may not require an employee who primarily resides and works in California to agree, as a condition of employment, to a provision that would deprive her of the substantive protection of California law. Cal. Lab. Code § 925(a)(2). Epic required Ms. Hull to agree to these provisions as a condition of working in California, and it has reserved the right to argue that Wisconsin law governs the MAA. Mot. at 6 n.1. While the MAA directs the arbitrator to follow the law of the State where the employee principally works in deciding her claims, MAA § I, that does not cure the violation. The MAA states the MAA itself (as opposed to the claims being arbitrated) "shall be governed under" Wisconsin law, so Wisconsin law decides whether the MAA may be enforced. The same is true of the E[R]A, which demands Wisconsin law without condition. A term that violates a statute enacted to protect employees is unconscionable.

**6. The MAA Denies Other Employees the Benefit of any Ruling**

Terms that favor the party that arbitrates repeatedly are one-sided. The MAA provides that no arbitrator's decision "shall serve as precedent in other arbitrations" except between the same parties. MAA § VI.2.c(2). A ruling that Epic's restraints are unlawful therefore binds Epic in no other employee's case. The MAA also makes the proceeding, the testimony, and the award "private and confidential." *Id.* § VIII. Terms of this kind favor the repeat player, because "[f]uture employees cannot take advantage of findings in past arbitrations." *Murrey v. Superior Court*, 87 Cal. App. 5th 1223, 1255 (2023). Each employee must prove the same violation again, without knowing that another has already proved it.

### C. The Defects Cannot Be Severed

A court may sever an unlawful term in limited circumstances. A lack of mutuality cannot be cured by severance, because "there is no single provision a court can strike or restrict in order to remove the unconscionable taint," and a court may not reform an agreement "by augmenting it with additional terms." *Armendariz*, 24 Cal. 4th at 124–25. Where an employer keeps a court for its own claims through a companion agreement, the defect "permeates and pervades the entire Arbitration Agreement." *Silva*, 111 Cal. App. 5th at 1331. An agreement with several unlawful terms that all favor the party that wrote it also shows a purpose to gain an advantage and not merely to choose a forum. That is the situation here. It is yet another reason why the MAA cannot be enforced.

## V. The Court Should Not Stay Any Claims

If no claim is sent to arbitration, the statute on which Epic relies for a stay does not apply. It requires a stay only where an issue in the case is "referable to arbitration." 9 U.S.C. § 3. Where some claims are referable to arbitration, and others are not, the defendant is "not entitled to a stay under § 3 for any of the other claims." *Blair*, 928 F.3d at 832. Instead, a stay of the remaining claims would rest on the Court's discretion, and the party seeking it "must make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Epic identifies none. Its only argument is that an arbitrator's ruling on Ms. Hull's individual PAGA claim might end her standing to pursue the rest. Mot. at 12:1–5. That argument assumes the individual PAGA claim will be arbitrated, and under Section XI of the MAA (the savings clause) it will not be. The harm a stay would do is plain. A stay is inappropriate where the plaintiff "seeks injunctive relief against ongoing and future harm." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). The claims that must remain in this Court seek to stop restraints that operate now, and an arbitration of one individual claim would decide none of them.

For the same reasons the Court should deny Epic's alternative request to strike any relief that benefits others. Mot. at 10:6–8. An injunction that protects the public is relief on the plaintiff's own claim and requires no class. *McGill*, 2 Cal. 5th at 959–61. And whatever the Court orders on

this motion, any preliminary injunction should remain in force, because Section IV of the MAA gives the ruling on temporary relief to the Court.

**CONCLUSION**

Every route through Epic's motion ends in this Court. If Section 7 of the E[R]A (the enforcement clause) applies to both sides, the claims on the E[R]A are court actions. If it applies to Epic alone, the Combined Agreement lacks mutuality and the MAA cannot be enforced. The waiver of representative proceedings in Section II of the MAA cannot be enforced as to PAGA or as to public injunctive relief, so Section XI of the MAA (the savings clause) makes this Court the exclusive forum for those claims. If the MAA does not delegate arbitrability, the Court decides these questions. If it does, the delegation is unconscionable, and the Court still decides them.

The Court should decide Ms. Hull's motion for a preliminary injunction first. It should then deny Epic's motion. If the Court compels arbitration of any claim, it should keep the remaining claims in this Court without a stay, direct that the arbitration proceed in this District (*see* 9 U.S.C. § 4), and leave any injunction in force until the Court orders otherwise.

Dated: November 13, 2026

BAKER DOLINKO & SCHWARTZ, P.C.

By: /s/ Chris Baker____________________
Chris Baker
*Attorneys for Plaintiff* ANDREA HULL