MICHAEL BEST & FRIEDRICH LLP
David Szwarcsztejn, Cal. Bar No. 272371
david.szwarcsztejn@michaelbest.com
11812 San Vicente Blvd., Suite 380
Los Angeles, CA 90049
Telephone: 424.299.8900
Facsimile: 877.398.5240

Attorneys for Defendants
EPIC SYSTEMS CORPORATION and
BOOST, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA HULL,<br><br>Plaintiff,<br><br>v.<br><br>EPIC SYSTEMS CORPORATION and BOOST, INC.,<br><br>Defendants. | Case No. 4:26-cv-07702-AMO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Hearing Date: January 7, 2027<br>Hearing Time: 2:00 p.m.<br>Courtroom: 5, 2nd Floor<br><br>Honorable Araceli Martínez-Olguín |

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. LEGAL ARGUMENT ........ 1

A. Hull Concedes Formation, FAA Coverage, and Boost's Status as a Party.

B. The Parties Clearly and Unmistakably Delegated Arbitrability. ........ 2

1. Incorporation of the AAA Rules Is Clear and Unmistakable Delegation. ........ 2

2. The MAA's Carve-Outs Confirm Delegation. ........ 4

3. Hull's Choice-of-Law Challenge Fails. ........ 5

C. Regardless, Hull's Individual Claims Are Covered Claims. ........ 5

1. The Employment Agreement's Irreparable Harm Clause Is Not a Forum Clause. ........ 6

2. Hull's Customer-Contract and Post-Employment Claims Exist Only Because of Her Employment with Epic. ........ 8

3. Neither PAGA Nor Hull's Injunction Request Takes Her Individual Claims Out of Arbitration. ........ 9

D. The MAA Is Not Unconscionable. ........ 10

1. The MAA Binds Both Sides Equally. ........ 11

2. Hull's Remaining Objections Recast Merits Claims. ........ 12

3. Any Objectionable Term Should Be Severed. ........ 14

E. The MAA Does Not Require the Court to Decide the PI Motion First. ........ 14

F. The Court Should Stay the Action Pending Arbitration. ........ 15

III. CONCLUSION ........ 15

CERTIFICATION OF LEAD TRIAL COUNSEL RE: ARTIFICIAL INTELLIGENCE ........ 17

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alba v. Harbor Freight Tools USA, Inc.*,
2026 WL 2161637 (N.D. Cal. July 27, 2026) .......... 2, 10, 12, 13

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) .......... 12

*Blair v. Rent-A-Center, Inc.*,
928 F.3d 819 (9th Cir. 2019) .......... 10

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......... 3, 4, 10

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......... 5

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
338 F. Supp. 3d 995 (N.D. Cal. 2018) .......... 2

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) .......... 15

*Cocom v. ABM Aviation, Inc.*,
179 F.4th 1168 (9th Cir. 2026) .......... passim

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) .......... 5

*Cook v. Univ. of S. Cal.*,
102 Cal. App. 5th 312 (2024) .......... 9

*Donovan v. Coinbase Glob., Inc.*,
649 F. Supp. 3d 946 (N.D. Cal. 2023) .......... 6

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .......... 13

*Fuentes v. Empire Nissan, Inc.*,
19 Cal. 5th 93 (2026) .......... 7, 8, 10, 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .......... 3

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) .......... 10

*Johnson v. Lowe's Home Ctrs., LLC*,
93 F.4th 459 (9th Cir. 2024) ............ 9

*Khan v. Figma, Inc.*,
2026 WL 1270046 (N.D. Cal. May 8, 2026) ............ 3, 4

*Landis v. N. Amer. Co.*,
299 U.S. 248 (1936) ............ 15

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979) ............ 15

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ............ 15

*Lumbo v. Kelly Servs. Glob., LLC*,
2024 WL 3886275 (Cal. Ct. App. Aug. 21, 2024) ............ 9, 10

*Ly v. Tesla, Inc.*,
757 F. Supp. 3d 1033 (N.D. Cal. 2024) ............ 12

*Martinez v. Wells Fargo Bank, N.A.*,
__F. Supp. 3d.__, 2026 WL 1494030 (N.D. Cal. May 27, 2026) ............ 11, 12, 13

*Mercuro v. Super. Ct.*,
96 Cal. App. 4th 167 (2002) ............ 12

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ............ 4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ............ 5

*Ortega v. UnitedHealth Grp., Inc.*,
2024 WL 4495817 (N.D. Cal. Oct. 15, 2024) ............ 9

*Pinela v. Neiman Marcus Grp., Inc.*,
238 Cal. App. 4th 227 (2015) ............ 5

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) ............ 14

*Retsloff v. Smith*,
79 Cal. App. 443 (1926) ............ 7

*Rocha v. U-Haul Co. of Cal.*,
88 Cal App. 5th 65 (2023) ............ 15

*Ruiz v. Kelly Servs. Glob., LLC*,
2026 WL 64283 (9th Cir. Jan. 8, 2026) ....................3

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ....................6, 8

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022) ....................9

**STATUTES**

Cal. Civ. Code § 1641 ....................7

Cal. Civ. Code § 1643 ....................7

Cal Lab. Code § 925 ....................5

Cal. Lab. Code § 925(b) ....................5

Federal Arbitration Agreement, Section 3 ....................2, 13, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 65 ....................14

## I. INTRODUCTION

Plaintiff Andrea Hull ("Hull") concedes the points that decide this Motion. She does not dispute that she signed the Arbitration Agreement, that the FAA governs it, that Boost is a party to it, or that it incorporates the AAA Employment Arbitration Rules. (Opp. at 3–4; Dkt. 30 ("Mot.") at 2–5.)[1] Those rules delegate to the arbitrator the power to decide "the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim." (RJN, Ex. 1 (AAA Emp. Arb. R. 7(a)).) Hull agreed to that allocation when she signed the Arbitration Agreement (the "MAA") on June 19, 2025. (Peterson Decl. ¶ 5, Ex. A; Hull Decl. ¶ 30.) Her Opposition now asks the Court to decide those delegated questions—whether her claims are covered and whether the MAA is enforceable—by recasting the Employment Agreement's "Irreparable Harm" provision as a forum clause, which it plainly is not. (Opp. at 6–9, 14–16.) Hull never explains why AAA Rule 7(a) does not mean what it says. That omission is dispositive.

Hull agreed to arbitrate. The Court should hold her to that agreement, compel her individual claims, including her individual PAGA claims, to arbitration, and stay this action.

## II. LEGAL ARGUMENT

Hull concedes formation, FAA coverage, and Boost's status as a party. (*See* Part II.A.) On the questions that remain, the Opposition fails for four reasons:

*First,* the parties delegated arbitrability. By incorporating the AAA Rules, the MAA sends scope, validity, and enforceability to the arbitrator. Its narrow carve-outs confirm that delegation, and Hull's choice-of-law challenge is speculation, not a showing. (Part II.B.)

*Second,* Hull's individual claims are Covered Claims. The "Irreparable Harm" clause in the Employment Agreement is Epic's remedy when an employee breaches—not a forum clause for an employee's claims. Her customer-contract and post-employment claims exist only because she worked for Epic, and neither PAGA nor her injunction request takes her individual claims out of arbitration. (Part II.C.)

---

[1] Capitalized terms not defined in this reply have the meanings given in Defendants' opening Memorandum of Points and Authorities (Dkt. 30). "Opp." refers to Plaintiff's Opposition (Dkt. 43), cited by the page numbers at the foot of each page. "Employment Agreement" refers to the Boost Employment Agreement that Plaintiff calls the "E[R]A." (Hull Decl., Ex. 2.)

*Third*, the MAA is not unconscionable. Hull's challenges belong to the arbitrator and fail on the merits regardless: the MAA binds both sides equally, Hull offers no evidence for her remaining objections, and any doubtful term must be severed. (Part II.D.)

*Fourth*, Section IV of the MAA preserves interim relief only; it does not require the Court to decide Hull's PI Motion before arbitrability. (Part II.E.)

Each ground compels the same result: Hull's individual claims belong in arbitration, and the rest of the action should be stayed under Section 3 of the FAA. (Part II.F.)

### A. Hull Concedes Formation, FAA Coverage, and Boost's Status as a Party.

Hull agrees she signed the MAA on June 19, 2025, in the DocuSign packet for her transfer to Boost. (Opp. at 3; Hull Decl. ¶ 30 & Ex. 2.) She does not respond to the Motion's showing that the FAA governs by the MAA's express terms and because the employment involved interstate commerce. (Mot. at 4–5; MAA § XII.) Nor does she dispute that the MAA defines "Epic" to include Boost. (Opp. at 7; MAA, § I.) Those points are conceded. *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 338 F. Supp. 3d 995, 1005 (N.D. Cal. 2018) (treating the plaintiffs' failure to address an argument in their opposition as an effective concession of that argument's validity); *see also Alba v. Harbor Freight Tools USA, Inc.*, 2026 WL 2161637, at *2, *5–6 (N.D. Cal. July 27, 2026) (compelling arbitration and staying the action where the plaintiffs "ma[d]e no argument regarding, and therefore concede[d]," the movant's arguments).

### B. The Parties Clearly and Unmistakably Delegated Arbitrability.

Hull does not dispute that the MAA expressly incorporates the AAA rules, or that those Rule 7(a) delegates to the arbitrator the power to determine "the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim." (Opp. at 14.) Instead, she proposes a puzzling (and implausible) reading of the MAA and the Employment Agreement to support her argument that any claims concerning the Employment Agreement "belong in court." (Opp. at 6–9.) In the alternative, she argues that the delegation is unconscionable. (*Id.* at 14–16.) Each argument lacks merit.

#### 1. Incorporation of the AAA Rules Is Clear and Unmistakable Delegation.

Hull first argues that the MAA's reference to the AAA rules is not a clear and unmistakable

delegation because it appears under the section heading "How to File for Arbitration," after the definition of Covered Claims. (Opp. at 14–15.) Under *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015), however, the MAA's incorporation of the AAA Rules is a clear and unmistakable delegation. (Mot. at 6–7; *see also* AAA Rule 7(a).) The Supreme Court has held that once the parties have delegated arbitrability, a court may not override the parties' agreement, even if the court views the argument for arbitration as "wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68–69 (2019)*;see also Khan v. Figma, Inc.*, 2026 WL 1270046, at *2 (N.D. Cal. May 8, 2026) (enforcing delegation based solely on incorporation of the AAA rules).

Ignoring *Brennan*, Hull relies on an unpublished memorandum disposition to support her puzzling assertion that the MAA's incorporation of the AAA Rules has force only after a court has decided which claims are covered under the MAA. (Opp. at 15 (citing *Ruiz v. Kelly Servs. Glob., LLC*, 2026 WL 64283, at *1 (9th Cir. Jan. 8, 2026)). Her reliance on that disposition is misplaced, because the court's reasoning turned on a specific gap not present in the MAA: the agreement there addressed only which claims were arbitrable and said nothing about disputes over the agreement itself, so the majority found it unclear whether the AAA rules reached threshold questions at all. *Id.* at *1–2; *see also id.* at *2–3 (Bumatay, J., dissenting) (explaining that under *Brennan*, an unqualified statement that the AAA rules will apply ends the inquiry, regardless of where the rules appear or whether the agreement also lists covered and excluded claims).

In *Khan*, the plaintiff relied on the same unpublished disposition to make the same structural argument Hull makes here. 2026 WL 1270046, at *2. The court rejected it, explaining that *Ruiz* involved an agreement that left unclear how to handle disputes about the agreement itself, whereas the terms before the court extended arbitration to disputes related to the terms themselves; arbitrability was therefore encompassed in the agreement, and incorporation of the AAA rules delegated it. *Id.* The court compelled arbitration even though the plaintiff had a strong argument that his claims fell within a carve-out for injunctive relief and held that the arbitrator must decide the carve-out's scope. *Id.* at *1–3.

The MAA leaves no gap and *Brennan* controls. First, like the agreements in *Brennan* and *Khan*, the MAA states without qualification that the AAA rules "will apply," it tells the employee

where to find them, and it does not limit the rules to procedure for filing a demand. (MAA, § VI.2.)

Second, the MAA does not leave disputes about itself unaddressed—it makes arbitration "the only litigation forum" for Covered Claims; directs the arbitrator to follow "the rules as stated in this agreement"; and assigns the arbitrator "all disputes related to discovery and to the agreed limits on discovery." (*Id.*, §§ I, VI.2.b(6).) Naturally, an agreement that charges the arbitrator with applying and interpreting its own terms contemplates that the arbitrator will resolve disputes about those terms.

Third, Hull's own claims put the MAA at issue. Her First Amended Complaint ("FAC", Dkt. 13) seeks declarations concerning agreements she signed as a condition of her employment, including the MAA itself. (Mot. at 8–9 (citing FAC ¶¶ 40, 86–106).) Those claims "relate to" her employment, so they are Covered Claims, and disputes about the MAA are encompassed within it, as in *Khan*.

Finally, the MAA's carve-outs track *Brennan*. In *Brennan*, the clause excluded claims for equitable relief, and the Ninth Circuit held that the exclusion could not be read to override the delegation contained in the same clause. 796 F.3d at 1131. The same is true of the temporary-relief and representative-claim provisions here, as explained further below. Under *Brennan*, that ends the inquiry: the arbitrator, not the Court, decides arbitrability.

**2. The MAA's Carve-Outs Confirm Delegation.**

Hull next argues that because the MAA lets either side seek temporary injunctive relief in court and sends representative claims to court if the class waiver fails, the parties could not have intended to delegate anything to the arbitrator. (Opp. at 15.) The opposite is true. Carve-outs show the parties knew how to reserve a question for a court, and they reserved only two: emergency or temporary relief "in accordance with applicable law," after which the parties "are required to submit the dispute to arbitration," and the forum for claims brought on a representative basis if the class waiver is "found to be unenforceable." (MAA, §§ IV, XI.) Everything else—including whether Hull's individual claims are covered—stays with the arbitrator.

Hull's own authority says so. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016), enforced a delegation despite provisions designating courts for other purposes, applying each court provision only to what it covered. *Brennan* is to the same effect: an exclusion for equitable claims did not override the delegation in the same arbitration clause. 796 F.3d at 1131. *Khan* likewise

held that a provision designating a court for cases not handled by arbitration did not conflict with the delegation, because the arbitrator decides first whether a claim falls within the carve-out, and the court provision applies only if it does. 2026 WL 1270046, at *3.

Hull also asserts that Section 7 of the Employment Agreement creates a conflict with the delegation in the MAA, and she cites *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024), to urge the Court to "decide which contract governs." (Opp. at 15.) Hull is mistaken. In *Suski*, a forum-selection clause in a later contract sent disputes to court, which squarely conflicted with an earlier delegation. *Id.* at 145. Here, by contrast, Section 7 of the Employment Agreement is not a forum-selection clause. It describes the fees available when the Employment Agreement is affirmatively enforced, and it says nothing about arbitration, about who decides arbitrability, or about where any claim must be filed. (Emp. Agr., § 7.) There is no conflict: the carve-outs confirm the delegation; they do not undo it. (*See also* Part II.C.1.)

**3. Hull's Choice-of-Law Challenge Fails.**

Hull's only specific attack on the delegation is that the Wisconsin choice-of-law clause would force her to fight over governing law before she could invoke California unconscionability doctrine. (Opp. at 15–16 (citing *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 246–50 (2015)).) This premise ignores the plain language of the MAA and is baseless. The MAA directs the arbitrator to "follow the rules of law of the state which is the employee's principal place of work"—here, California. (MAA, § I.) And, even if Labor Code section 925 applied, it independently allows a California employee to void a foreign choice-of-law provision. Cal. Lab. Code § 925(b). Hull's FAC purports to so elect, effectively mooting her challenge. (FAC ¶ 49.) *Pinela* turned on a choice-of-law clause that actually impaired the employee's ability to invoke California law; this one does not. The delegation stands, and every remaining threshold question belongs to the arbitrator.

**C. Regardless, Hull's Individual Claims Are Covered Claims.**

Should the Court reach scope, the Motion explains that the MAA's "relate to or arise out of" language is broad and reaches disputes touching matters the MAA covers. (Mot. at 7–8 (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)).) Doubts about scope are resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1,

24–25 (1983). The factual allegations need only touch matters covered by the contract. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). When arbitrability has been delegated, the court need not address remaining arguments as to the arbitration agreement's scope or enforceability. *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 951 (N.D. Cal. 2023).

Here, Covered Claims include "any statutory or common law legal claims . . . that relate to or arise out of my employment or the termination of my employment." (MAA, § I.) Hull does not dispute that she signed the MAA as a condition of her transfer to Boost. (Opp. at 3.) She argues only that: (1) the Employment Agreement's "Irreparable Harm" clause sends her claims to court; (2) her claims about Epic's customer contracts and post-employment conduct do not relate to her employment; and (3) the savings clause in the MAA sends her individual PAGA claims and her request for injunctive relief to court. (*Id.* at 6–14.) Each argument fails.

**1. The Employment Agreement's Irreparable Harm Clause Is Not a Forum Clause.**

Hull argues that because Section 7 of the Employment Agreement allows Epic or Boost to recover their attorneys' fees if "successful in any action to enforce this agreement," while Section V of the MAA does not allow either party to recover fees "except as provided for by applicable law", it must mean that neither party is required to arbitrate claims related to the Employment Agreement (i.e., Epic for breach or Hull for Declaratory Judgment) and hence parts of her First, Third, and Fourth Claims should remain in court. (Opp. at 6–9.) To make this argument, she quotes Section 7 selectively. The section is titled "Irreparable Harm," and applies only if the employee breaches the agreement and Epic or Boost seek to enforce it, describing the remedies they may seek. The provision does not mention claims by an employee, and it says nothing about forum. At best, if Epic was successful in enforcing a breach claim against Hull in arbitration, the parties would have to contend with whether Epic could recover attorneys' fees only "as provided by applicable law" or as allowed in Section 7. However, this issue is both theoretical and irrelevant here because, as explained throughout Epic's opposition to Hull's PI Motion, Epic is not enforcing and has waived the restrictions in Hull's Employment Agreement. (Dkt. 39 at 8.)

Hull's real strategy is to turn the Employment Agreement and the MAA against each other. She insists the two form a single "Combined Agreement" that must be read together. (Opp. at 6–7.)

But she reads them together only to set one against the other: she treats the Employment Agreement's remedies clause as overriding the MAA's forum provisions (*id.* at 7–9) and then argues that if the remedies clause does not override the forum provisions, the pairing makes the MAA unconscionable (*id.* at 16–17). On her theory, she wins either way. That is a false choice, not contract interpretation. Reading contracts together means harmonizing them, not manufacturing conflict between them so that one can defeat the other. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *see also Retsloff v. Smith,* 79 Cal. App. 443, 452 (1926) ("It is fundamental in the interpretation of contracts that the various terms will be harmonized if possible."). Harmonized, the agreements fit: the Employment Agreement identifies the remedies Epic may seek when an employee breaches, and the MAA identifies where those remedies are pursued—interim relief in court, everything else in arbitration. (Emp. Agr. § 7; MAA, §§ I, IV.) An arbitrator may award the same injunctive relief and other remedies a court could. (MAA, Ex. A, § I.) Nothing in the Employment Agreement says otherwise, and nothing in it mentions forum at all. Hull's reading would create a conflict the text does not contain; the only interpretation that gives effect to both agreements is the one that sends her claims to arbitration. Cal. Civ. Code §§ 1641, 1643.

Hull's claims are Covered Claims because they "relate to" her employment and the agreements she signed as a condition of it. (Opp. at 3; Peterson Decl. ¶ 5.) *Fuentes v. Empire Nissan, Inc.*, 19 Cal. 5th 93 (2026), does not hold otherwise. Hull says *Fuentes* "conclusively decided" that her claims belong in court. (Opp. at 7.) It decided nothing of the kind, for three reasons.

First, *Fuentes* asked a different question. The employee there argued that later-signed confidentiality agreements gave the *employer* a one-sided court carve-out for its own claims, rendering the arbitration agreement substantively unconscionable. *Fuentes*, 19 Cal. 5th at 107–08. The court never suggested that an employee's own claims escape a mutual arbitration agreement because a companion contract describes the employer's remedies.

Second, *Fuentes* did not hold that the confidentiality agreements controlled. Reading the agreements in isolation, the majority found that they might contemplate court enforcement, but reading them together with the arbitration agreement, it found only an ambiguity—and it remanded

for factual findings rather than resolving it. *Id.* at 109–11.

Third, the ambiguity in *Fuentes* arose from features absent here. The confidentiality agreements were signed after the arbitration agreement and expressly superseded all prior agreements on their subjects; the employee had five minutes to review an almost illegible arbitration form, which triggered close scrutiny and construction against the drafter. *Id.* at 100–01, 109–10. Here, by contrast, Hull signed both agreements the same day, in the same DocuSign packet, after more than a decade with Epic. (Hull Decl. ¶ 30 & Ex. 2; Peterson Decl. ¶ 4.) The Employment Agreement contains no supersession clause. (Emp. Agr., §§ 1–8.) And unlike the agreements in *Fuentes*, the MAA here speaks directly to court proceedings for injunctive relief: either side may seek emergency or temporary relief in court, after which the dispute must be arbitrated. (MAA, Ex. A, § IV.) There is no silence to construe and no ambiguity to resolve. The MAA makes arbitration the only litigation forum for every claim relating to Hull's employment. (*Id.*, § I.) Section 7 of the Employment Agreement is a remedy for Epic, not an exit from arbitration for Hull (or Epic).

**2. Hull's Customer-Contract and Post-Employment Claims Exist Only Because of Her Employment with Epic.**

Hull argues that her Second Claim and her claims about Epic's post-employment conduct fall outside the MAA because someone who never worked for Epic could bring them. (Opp. at 12–14.) The customer and partner hiring provisions restrict Hull only because she is a former Epic employee, and the denial of UserWeb access she challenges applied to her as a recent former employee. (FAC ¶¶ 57–62, 77–78, 92–95.) Those claims originate in her employment and bear a significant relationship to it, which is all a broad clause requires. *Simula*, 175 F.3d at 721. Hull concedes as much: if this conduct was enforcement of the Employment Agreement's restrictive covenants, she says, it is a dispute over her Employment Agreement. (Opp. at 14.)

Hull's temporal argument—that the coverage clause in the MAA reaches claims unrelated to employment without limit in time—fails for the same reason. Covered Claims include those that "arise or have arisen" from "the termination of my employment"—language that necessarily reaches claims asserted after the employment ends. (MAA, § I.) *Cook v. Univ. of S. Cal.*, 102 Cal. App. 5th 312, 322 (2024), involved an agreement covering claims "whether or not arising out of" the employment; this MAA is expressly tethered to employment and the termination of that employment.

*See Cocom v. ABM Aviation, Inc.*, 179 F.4th 1168, 1175–78 (9th Cir. 2026) (distinguishing *Cook* and holding agreement limited to employment-related claims was not indefinite in duration because such claims "stop accruing when the employment relationship ends"). Each of these claims traces back to Hull's employment, and each is a Covered Claim.

**3. Neither PAGA Nor Hull's Injunction Request Takes Her Individual Claims Out of Arbitration.**

Hull argues that the savings clause in the MAA sends all of her PAGA claims, and her request for public injunctive relief, to court. (Opp. at 9–12.) Both arguments share a flaw: each treats her individual claims as representative ones. The savings clause reaches only "any claim brought on a class, collective, or representative action basis." (MAA, § XI.) As the Motion explains, Hull's individual PAGA claims are arbitrable under *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), and her non-individual PAGA claims fall within the MAA's exclusion of claims that cannot be required to be arbitrated, so they remain in this Court—exactly the split the Ninth Circuit and this District have adopted. (Mot. at 10–11 (citing *Johnson v. Lowe's Home Ctrs., LLC*, 93 F.4th 459, 464 (9th Cir. 2024), and *Ortega v. UnitedHealth Grp., Inc.*, 2024 WL 4495817, at *8 (N.D. Cal. Oct. 15, 2024)).) Hull's only contrary authority, *Lumbo v. Kelly Servs. Glob., LLC*, 2024 WL 3886275 (Cal. Ct. App. Aug. 21, 2024)[2], does not change that result. Its reasoning rests on a premise the Ninth Circuit has not adopted: that even an individual PAGA claim is a representative proceeding, so that a waiver of representative proceedings excludes it from arbitration. *Id.* at *2–3. *Johnson* applies *Viking River*'s division between individual and non-individual claims and compels the former to arbitration. 93 F.4th at 464. And *Lumbo* considered the agreement's waiver and savings clauses; it did not address an exclusion like Section IV here, which removes non-individual PAGA claims from the MAA at the outset, so there is no waiver of a PAGA representative claim and the savings clause's court-forum requirement is never triggered. *Lumbo*, 2024 WL 3886275, at *3; MAA, §§ IV, XI.

The same is true of Hull's claimed public injunction. As the Motion explains, relief that primarily benefits a defined group is private injunctive relief that may be arbitrated. (Mot. at 9–10 (citing *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541–49 (9th Cir. 2021)).) Hull's

[2] *Lumbo* is also unpublished and not binding. Epic addresses it here only to respond to Hull's citation of this decision.

own description—relief running to Epic's employees, customers, consultants, and partners—identifies exactly such a group. (Opp. at 11.) *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019), which Hull relies on (Opp. at 12), does not help her. The consumer agreement there expressly barred the arbitrator from awarding relief affecting anyone other than the consumer while requiring arbitration of all claims, so it waived public injunctive relief in every forum. 928 F.3d at 823, 831. The MAA contains no such bar; the arbitrator may award "the same damages and other relief that would have been available in court." (MAA, § I.) And *Blair* undercuts Hull's effort to invoke the savings clause: it recognized that a plaintiff seeking a public injunction sues on her own behalf, not as a representative of others, and need not satisfy class procedures. 928 F.3d at 828–29. A request for public injunctive relief is therefore not a claim "brought on a class, collective, or representative action basis" that the savings clause sends to court. (MAA, § XI.) Hull's individual claims—including her individual PAGA claims and her permanent injunction requests—belong in arbitration.

**D. The MAA Is Not Unconscionable.**

Hull's unconscionability arguments are not properly before the Court. Apart from her choice-of-law objection, none is directed at the delegation itself; each attacks the MAA as a whole. (Opp. at 16–21.) When a party challenges the agreement generally rather than the delegation specifically, the court must treat the delegation as valid and leave the challenge to the arbitrator. *Brennan*, 796 F.3d at 1132–33. That rule disposes of every unconscionability argument Hull makes.

If the Court reaches the merits, Hull's arguments still fail. Hull bears the burden of proving both procedural and substantive unconscionability. *Cocom*, 179 F.4th at 1173. Motions to compel arbitration are decided under a standard akin to summary judgment, and a party who offers no competent evidence to support her factual assertions fails to create a genuine dispute. *Alba*, 2026 WL 2161637, at *2–3 (rejecting opposition that rested on speculation rather than evidence).

*Cocom* is instructive. There, the Ninth Circuit reversed an unconscionability finding as to a materially similar arbitration agreement—one signed as a condition of employment that adopted the AAA Employment Rules, waived representative claims, and allowed severance—holding that no challenged term was substantively unconscionable and that any doubtful term could be severed. *Cocom*, 179 F.4th at 1172–73, 1179–80. Because that conclusion was dispositive, the court never

reached procedural unconscionability. *Id.* at 1173. The Court should follow the same course. Hull's procedural showing would not change the result anyway. Her only evidence is her own statement that the MAA was a non-negotiable condition of her transfer. (Hull Decl. ¶ 30; Opp. at 16.) Even accepting that as true, adhesion alone establishes only a minimal degree of procedural unconscionability. *Martinez v. Wells Fargo Bank, N.A.*, __F. Supp. 3d.__, 2026 WL 1494030, at *3 (N.D. Cal. May 27, 2026) (compelling arbitration of employment claims under an onboarding agreement adopting the AAA Employment Rules). And Hull is no airport janitor alleging he was rushed through paperwork, *Cocom*, 179 F.4th at 1172–73, nor an applicant handed a five-minute, nearly illegible form, *Fuentes*, 19 Cal. 5th at 100–01. She signed after more than a decade with Epic, in the same packet as her transfer documents. (Peterson Decl. ¶ 4; Hull Decl. ¶ 30 & Ex. 2.)

Hull does not dispute that the MAA binds both sides to arbitrate Covered Claims or that it contains a severability clause. (Opp. at 16–21; MAA, §§ I, XI.) She argues only that: (1) the Employment Agreement makes the MAA one-sided; (2) the confidentiality, discovery, class-waiver, choice-of-law, and non-precedential-award terms are substantively unconscionable; and (3) the defects cannot be severed. (Opp. at 16–21.) Each argument again fails.

**1. The MAA Binds Both Sides Equally.**

Hull argues that the MAA lacks mutuality because the Employment Agreement lets Epic pursue its claims in court while she must arbitrate hers. (Opp. at 16–17.) Not so. The obligations are identical. Both Hull and Epic must arbitrate Covered Claims, both waive class and representative proceedings, and both may seek temporary injunctive relief in court. (MAA, §§ I, II, IV.) Having failed to show that the "Irreparable Harm" clause in the Employment Agreement is a forum clause (Part II.C.1.), Hull now argues that it makes the MAA one-sided. It does not. The clause identifies the remedies Epic may seek if an employee breaches; it does not say where Epic must seek them. (Emp. Agr., § 7.) Section IV of the MAA answers that question: either party may go to court only for temporary relief, and the dispute then returns to arbitration. (MAA, § IV.)

*Martinez* rejected the exact theory Hull is arguing here. There, a companion trade-secrets agreement called for immediate injunctive relief, but it did not create a one-sided carve-out because the arbitration agreement permitted either party to seek temporary injunctive relief in court. *Martinez*,

2026 WL 1494030, at *4; *see also Ly v. Tesla, Inc.*, 757 F. Supp. 3d 1033, 1046 (N.D. Cal. 2024) (holding a carve-out allowing either side to seek interim injunctive relief in court is not one-sided, even if employers are more likely to use it, because it applies equally to both). The same is true here.

Nor does Hull offer evidence that Epic has ever sued, or threatened to sue, her or any other employee outside arbitration. An imagined lawsuit is not evidence of one-sidedness. *See Alba*, 2026 WL 2161637, at *3. And *Cocom* holds that an employment-limited agreement is not one-sided merely because it operates differently for employer and employee, because employees are far more likely to sue the employer and its affiliates than the reverse. 179 F.4th at 1178.

Hull's authorities are inapposite. Unlike *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 117–20 (2000), and *Mercuro v. Super. Ct.*, 96 Cal. App. 4th 167, 176 (2002), nothing here exempts the employer's claims from arbitration. And unlike the later-signed, superseding confidentiality agreements in *Fuentes*, nothing in the Employment Agreement purports to displace the MAA. *See supra*, Part II.C.1. The MAA binds Hull and Epic to the same terms, and that ends the mutuality challenge.

**2. Hull's Remaining Objections Recast Merits Claims.**

Hull argues that the MAA is substantively unconscionable because of the Employment Agreement's confidentiality covenant, the discovery limits, the class-waiver restrictions on participation and notice, the Wisconsin choice-of-law clause, and the confidentiality and non-precedential effect of arbitration awards. (Opp. at 17–20.) Every one of these objections is a prediction about what might happen in an arbitration that has not begun. Hull reads restrictions into the confidentiality covenant that simply are not there. The covenant prevents disclosure of Epic's "trade secrets and proprietary information" (Emp. Agr., § 2); it does not, by providing an illustrative list, prevent employees from testifying, particularly under a protective order likewise designed to protect proprietary information. She also speculates that the discovery limits in the MAA will keep her from proving her claims. (Opp. at 18–19.) She submits no declaration, document, or other evidence that any of this has happened or would happen, nor does she identify a witness she cannot reach, a document she cannot obtain, or a disclosure Epic has sought to prevent. Argument is not evidence, and speculation cannot carry her burden. *Alba*, 2026 WL 2161637, at *3. The objections

also fail on their own terms, because they fall into two categories.

First, several are merits claims. Her attack on the Employment Agreement's confidentiality covenant in the FAC (¶¶ 86–91) and her opposition (pp. 17-18) ignore the severance provision in Section 8 of that Agreement. Moreover, the attack can be decided by the arbitrator; it is not a defect in the MAA. The MAA's own confidentiality provision expressly permits disclosures for investigating, preparing, or presenting Covered Claims, and the arbitrator may enter protective orders. (MAA, § VIII.) And a companion confidentiality agreement signed alongside an arbitration agreement does not automatically make the arbitration agreement unenforceable. *Martinez*, 2026 WL 1494030, at *1–2, *4 (compelling arbitration where employee signed arbitration agreement and confidentiality and trade-secrets agreement in the same onboarding packet).

Second, the rest target ordinary features of individual arbitration. The bar on the arbitrator facilitating notice to others is standard class-waiver content the FAA requires courts to enforce, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502, 524–25 (2018); *see also Martinez*, 2026 WL 1494030, at *1 (enforcing employment class-action waiver), and does not bar Hull from calling co-workers as witnesses. As previously stated, the arbitrator must apply California law. (MAA, § I.) And the limit on the precedential effect of awards is not unconscionable; *Cocom* rejected the identical challenge, holding that a provision denying arbitration awards preclusive or precedential effect in other proceedings merely restates California's default rule that private arbitration awards lack nonmutual preclusive effect. 179 F.4th at 1179. The MAA says the same thing: an award may be used to preclude re-arbitration of the same claim between the same parties but serves as no precedent otherwise. (MAA § VI.2.c(2).)

The discovery provisions are likewise adequate. Each side receives one interrogatory, twenty-five document requests, and two days of depositions, and the arbitrator "shall decide all disputes related to discovery and the agreed limits on discovery" and may order additional discovery upon a showing of substantial need or of an inability to pursue or defend claims without it. (MAA, § VI.2.b(3)–(6).) Hull conflates that standard with the "compelling need" threshold that applies only to broad document collection. (Opp. at 18–19.) And she offers no evidence of what discovery her claims require or why the arbitrator's authority to order more would be inadequate. *See Poublon v. C.H.*

*Robinson Co.*, 846 F.3d 1251, 1270 (9th Cir. 2017) (rejecting argument that limitations on discovery are substantively unconscionable). Hull's objections are speculations, not proof, and none shows a substantively unconscionable term.

**3. Any Objectionable Term Should Be Severed.**

Hull argues that the MAA's defects cannot be severed because they permeate the agreement and could be cured only by rewriting it. (Opp. at 21.) But if the Court finds any term unconscionable, the MAA directs that it "be automatically severed and the remainder of the agreement shall not be affected." (MAA, § XI.) *Cocom* held severance appropriate for an agreement like the MAA. There, the parties' central purpose was to arbitrate employment-related claims; the PAGA and public-injunction waivers were collateral to that purpose; striking them required no additions to the contract; nothing suggested a systematic effort to secure an advantaged forum; and the severability clause expressed the parties' intent that a curable agreement be enforced. 179 F.4th at 1179–80. Each of those points applies here. The MAA's central purpose is the arbitration of claims relating to or arising out of Hull's employment (MAA, § I); the terms Hull challenges are collateral procedural provisions that can be struck without adding anything; and Section XI expressly directs severance. (*Id.*, § XI.) The remedy for any defective term is severance, not refusal to enforce the MAA.

**E. The MAA Does Not Require the Court to Decide the PI Motion First.**

Hull contends that Section IV of the MAA requires a ruling on her PI Motion before any ruling on arbitration. (Opp. at 5–6.) The Section simply preserves a party's ability to seek interim relief; it does not require the Court adjudicate merits questions that belong to the arbitrator or deprive the Court of control over its docket. Defendants do not dispute that the Court may rule on temporary injunctive relief in accordance with Fed. R. Civ. P. 65. (Dkt. 39 at 2.) But as Defendants have explained, Hull's PI Motion fails to establish any imminent, irreparable harm and seeks broad relief on behalf of non-parties that goes far beyond preserving the status quo. (*Id.* at 2, 9–10.) The efficient and logical course is to decide both motions together on January 7, 2027.

Hull's objection to the hearing date is likewise misplaced. Defendants noticed the Motion for the same date as the PI hearing so the Court could address related issues together.

**F. The Court Should Stay the Action Pending Arbitration.**

Section 3 of the FAA requires a stay of the arbitrable claims; the Court should exercise its inherent authority to stay the remaining claims.

A stay of the nonarbitrable claims is particularly appropriate because the arbitration may resolve a threshold issue concerning Hull's standing to pursue those claims. The Ninth Circuit expressly recognizes that a district court may stay proceedings pending resolution of an independent arbitral proceeding that "bear[s] upon the case," even when the issues to be decided in arbitration are not necessarily controlling. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). Here, the connection is stronger still: if Hull fails to prove that she suffered a Labor Code violation, she will no longer qualify as an "aggrieved employee" and would not have PAGA standing for representative PAGA claims. *See Rocha v. U-Haul Co. of Cal.*, 88 Cal App. 5th 65, 76-77, 80-82 (2023). A stay will therefore promote the "orderly course of justice" by simplifying the issues that remain for the Court after arbitration. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)[3].

**III. CONCLUSION**

For these reasons, Defendants respectfully request that the Court enter an order: (a) compelling Hull to arbitrate her individual claims, including her individual PAGA claims, on an individual basis; (b) referring all disputes over the MAA's scope, validity, and enforceability to the arbitrator; and (c) staying this action, including Hull's non-individual PAGA claims, under 9 U.S.C. § 3 pending completion of arbitration. In the alternative, if the Court concludes that any issue was not delegated, Defendants request that the Court compel arbitration of all arbitrable claims and stay the balance of the action, together with such other and further relief as the Court deems just.

[3]Hull misstates the holding in *Lockner.* (Opp. at 21.) Merely seeking injunctive relief for non-arbitrable claims does not make a stay inappropriate. Rather, the competing interests which will be affected by a stay must be weighed, including "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockner*, at 1110, quoting *CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962), and citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (which stated, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.")

**MICHAEL BEST & FRIEDRICH LLP**

Dated: November 20, 2026

By: */s/David Szwarcsztejn*
David Szwarcsztejn
Attorneys for Defendants
EPIC SYSTEMS CORPORATION and
BOOST, INC.

**CERTIFICATION OF LEAD TRIAL COUNSEL RE: ARTIFICIAL INTELLIGENCE**

Pursuant to Section H.4 of the Court's Standing Order for Civil Cases Before District Judge Araceli Martínez-Olguín, I, David Szwarcsztejn, lead trial counsel for Defendants Epic Systems Corporation and Boost, Inc., certify that: (1) I have personally verified the accuracy of the contents of this submission, and (2) counsel is maintaining records of prompts and inquiries submitted to generative artificial intelligence tools in connection with this matter.

Dated: November 20, 2026

**MICHAEL BEST & FRIEDRICH LLP**

By: */s/David Szwarcsztejn*
David Szwarcsztejn

Attorneys for Defendants
EPIC SYSTEMS CORPORATION and
BOOST, INC.